**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | |
|---|---|
| **STATE OF OKLAHOMA**, <br><br> **JOHN M. O'CONNOR**, in his official capacity as Attorney General of Oklahoma, and <br><br> **STEVE KUNZWEILER**, in his official capacity as District Attorney for District 14 of Oklahoma (Tulsa County) <br><div align="right">*Plaintiffs*,</div><br> v. <br><br> **HERIBERTO TELLEZ**, in both his official capacity as Regional Director of the South Central Region of the Federal Bureau of Prisons, and his individual capacity, <br><br> **COLETTE S. PETERS**, in both her official capacity as Director of the Federal Bureau of Prisons, and her individual capacity, <br><br> **S.R. GRANT**, in both his official capacity as Acting Complex Warden of FCC Pollock, and his individual capacity, and <br><br> **FEDERAL BUREAU OF PRISONS**, <br><div align="right">*Defendants.*</div> | Civil Action No:_____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
**AND PETITION FOR WRIT OF HABEAS CORPUS**

## I.   INTRODUCTION

1.      Executive officers act *ultra vires* when they deny that the enforcement of a death sentence is in the public interest and, as a result, refuse to transfer an inmate to state custody. That policy decision is not entrusted to the discretion of an unelected official in the Federal Bureau of Prisons ("BOP").

2.      Although transfers of inmates from federal to state custody were originally a matter of comity committed to the Attorney General, Congress substantially constrained that discretion by writing a statute that addresses transfers. *See* 18 U.S.C. § 3623. In particular, Congress has mandated that the Bureau of Prisons "shall order" the transfer of a federal inmate to state custody when state officials comply with certain procedures and the transfer is "in the public interest." *Id.* It is indisputable that the public interest favors timely enforcement of the death penalty—at both the state and federal levels. If the public interest is freely avoided or redefined, then the statute is a nullity and executive authority is unconstrained.

3.      Plaintiffs believe the transfer statute has meaning and that the public interest obviously *requires* transfer here. Accordingly, Plaintiffs believe that the executive officers sued here have retained custody of inmate John Hanson in violation of the laws of the United States and have acted *ultra vires* in denying the transfer of John Hanson. Plaintiffs seek a writ of habeas corpus or appropriate declaratory and injunctive relief from this Court.

## II.   JURISDICTION AND VENUE

4.      Jurisdiction is proper in this United States District Court under 28 U.S.C. § 1331, 28 U.S.C. § 1346, 28 U.S.C. § 2201, 28 U.S.C. § 2202, and 28 U.S.C. § 2241.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because several Defendants—custodians of inmate John Hanson—reside in this District. The Wichita Falls Division of the Northern District of Texas is approximately halfway between the BOP Defendants living in

2

the Northern District of Texas and the State of Oklahoma Plaintiffs residing in Oklahoma City, Oklahoma.

### III.    PARTIES

6.    Plaintiff State of Oklahoma is a sovereign state, which has a compelling interest in the timely enforcement of its criminal judgments.

7.    Plaintiff John M. O'Connor is the Attorney General of Oklahoma.

8.    Plaintiff Steve Kunzweiler is the District Attorney for District 14 of Oklahoma (Tulsa County).

9.    Heriberto Tellez is the Regional Director of the South Central Region of the Federal Bureau of Prisons. His region includes Texas, Oklahoma, and Louisiana, and he is a custodian of inmate John Hanson. His office is located in Grand Prairie, Texas, in the Northern District of Texas. Plaintiffs also believe that he resides in this District. He is sued both in his official capacity and in his individual capacity because legal authorities are unclear on whether the *ultra vires* claim in this suit proceeds against an officer in official or individual capacity.

10.    Collette S. Peters is the Director of the Federal Bureau of Prisons. She is a custodian of inmate John Hanson. She is sued both in her official capacity and in her individual capacity because legal authorities are unclear on whether the *ultra vires* claim in this suit proceeds against an officer in official or individual capacity.

11.    S.R. Grant is the Acting Complex Warden of the Federal Correctional Complex ("FCC") Pollock in Grant Parish, Louisiana. He is a custodian of inmate John Hanson. He is sued both in his official capacity and in his individual capacity because legal authorities are unclear on whether the *ultra vires* claim in this suit proceeds against an officer in official or individual capacity.

12.    Defendant Federal Bureau of Prisons is the agency that employs the other defendants. The office responsible for transfer of the inmate from federal to state custody is the South Central

3

Regional Field Office of the BOP in Grand Prairie, Texas. The agency is sued because the D.C. Circuit has previously indicated that *ultra vires* claims proceed against the agency directly but the Fifth Circuit has not expressed a view on that issue.

### IV.     BACKGROUND

*Inmate John Fitzgerald Hanson (aka George John Hanson)*

13.     Inmate John Hanson committed a series of crimes in August and September of 1999.

14.     A federal court tried him under the name George John Hanson. *See* No. 4:99-CR-125 (N.D. Okla.). The crimes at issue included robberies of liquor stores, a bank, and a video store, and possession of a firearm during those robberies. *See id.* After a federal jury convicted him on several counts, the district court sentenced him to life in prison for possession of a firearm after former conviction of a felony, with several lesser sentences for other counts. *See id.*

15.     The federal government currently has inmate Hanson in custody in FCC Pollock, in Louisiana, under the BOP Register Number 08585-062.

16.     An Oklahoma state court tried Hanson under the name John Fitzgerald Hanson. *See* No. CF-99-4583 (Tulsa Cty. Dist. Ct.). Oklahoma prosecuted Hanson for carjacking, kidnapping, and executing 77-year-old Mary Bowles, and for murdering innocent bystander Jerald Thurman, a 44- year-old small business owner beloved in the Owasso, Oklahoma community who tried to intervene to help Mary. *See Hanson v. Sherrod*, 797 F.3d 810, 853 (10th Cir. 2015). After the Oklahoma jury convicted Hanson of murder in the first degree, it recommended the death sentence, which the court imposed. *See id.*

17.     Hanson has exhausted all of his appeals and post-conviction remedies from his Oklahoma convictions. His direct appeal was resolved in 2009. After his initial conviction, the Oklahoma Court of Criminal Appeals ("OCCA") affirmed his murder convictions but remanded for resentencing due to errors at the penalty phase. *Hanson v. State*, 2003 OK CR 12, ¶1, 72 P.3d 40, 45.

4

Following the resentencing hearing, the jury recommended the death penalty for Hanson, which the OCCA ultimately affirmed. *Hanson v. State*, 2009 OK CR 13, ¶ 59, 206 P.3d 1020, 1036. The Supreme Court denied certiorari. *Hanson v. Oklahoma*, 558 U.S. 1081 (2009).

18.     Subsequently, Hanson filed a federal habeas petition with the United States District Court for the Northern District of Oklahoma, which denied the petition on all grounds. *Hanson v. Sherrod*, 2013 WL 3307111, at *5. This decision was affirmed by the Tenth Circuit, *Hanson v. Sherrod*, 797 F.3d 810, 853 (10th Cir. 2015), and certiorari was denied by the Supreme Court. 578 U.S. 979 (2016).

19.     Hanson has also unsuccessfully challenged Oklahoma's execution protocol and method of execution under the U.S. Constitution, as part of a group of death row inmates. He lost those claims at summary judgment and at a federal bench trial earlier this year. *See* No. 14CV665 (W.D. Okla.). He then declined to appeal all but one issue of those rulings, and on the one issue he did appeal, the Tenth Circuit recently ruled against him and the other inmates. *See* No. 22-6100 (10th Cir.).

20.     After the federal district judge ruled against him earlier this year, the Oklahoma Court of Criminal Appeals scheduled Hanson's execution. *See* Order Setting Execution Dates, D-2006-126 (Okla. Ct. Crim. App. Jul. 1, 2022). The court ordered his sentence be carried out on December 15, 2022. *Id.*

*The Transfer Statute*

21.     Prior to the existence of a federal statute, the U.S. Supreme Court held that the Attorney General of the United States has "the power and discretion to practice the comity" of transfers from federal to state authority. *Ponzi v. Fessenden*, 258 U.S. 254, 261–62 (1922).

22.     In the 1940s, Congress enacted the statute that it ultimately codified as 18 U.S.C. § 4085, which provided for transfer of federal inmates to state custody for a pending indictment or information or to serve existing state felony convictions. *See* 62 Stat. 683, 850 (June 25, 1948). The

statute provided that the Attorney General "shall . . . cause such person, prior to his release, to be transferred" on three conditions: (1) upon the request of "the Governor or the executive authority" of the state, (2) "upon the presentation of a certified copy of such indictment, information, or judgment," and (3) "if he finds it in the public interest." *Id.*

23.    In the 1980s, Congress repealed the former statute in favor of 18 U.S.C § 3623. *See* Pub. L. 98-473, § 235(a)(1) (setting effective dates). The current statute designates the Director of the Bureau of Prisons to handle transfer requests from states. *See* 18 U.S.C § 3623. The statute provides that the Director "shall order that a prisoner who has been charged in an indictment or information with, or convicted of, a State felony, be transferred to an official detention facility within such State prior to his release from a Federal prison facility. *Id.* It adds three criteria for when this transfer shall occur: "(1) the transfer has been requested by the Governor or other executive authority of the State; (2) the State has presented to the Director a certified copy of the indictment, information, or judgment of conviction; and (3) the Director finds that the transfer would be in the public interest." *Id.*

24.    Although the statute gives authority to the BOP Director, the BOP has further delegated that authority. BOP policy provides that "[t]he respective Regional Director is the delegated authority to approve transfers to State officials." BOP Program Statement 5140.35, ¶ 5(b). BOP policy further provides that "[i]f the Regional Director denies the transfer, the Warden must inform the requesting State of the denial and the reason." *Id.* ¶ 7(b).

*The Public Interest in the Death Penalty*

25.    It is well-established that the public interest favors timely enforcement of a properly-imposed and federally-confirmed death sentence.

26.    As a corollary, it is also well-established that the public interest disfavors delay of a properly-imposed and federally-confirmed death sentence.

27.     The public has a compelling interest in having timely enforcement of the death penalty because delay defeats the public interests in retributive justice and deterrence that underpin the use of the death penalty. *Cf. Gregg v. Georgia*, 428 U.S. 153, 183 (1976) (discussing those interests).

28.     The public also has a compelling interest in timely enforcement of the death penalty in order to prevent harm to families and communities of the victims from undue delay.

29.     These compelling public interests attach fully once direct appeal and postconviction remedies have confirmed that the conviction and sentence are valid.

30.     After direct appeal and postconviction remedies are exhausted, any *de facto* commutation of a death sentence to life imprisonment—outside of the proper state executive branch authority—is indisputably contrary to the public interest because of the profound injury it inflicts on the public interest.

<p align="center">*Plaintiff DA Kunzweiler's Transfer Request*</p>

31.     On August 4, 2022, DA Kunzweiler submitted a transfer request to the warden of United States Penitentiary, Pollock, on behalf of Oklahoma. *See* Ex. 1 at 2. The transfer request advised Defendants that Hanson's presence was necessary for his clemency hearing on November 9, 2022, and his scheduled execution on December 15, 2022. *Id.* The request also included a certified copy of the judgment of conviction. *Id.*

32.     DA Kunzweiler received the return receipt for his transfer request on August 15, 2022. *See* Ex. 2.

33.     In early September 2022, after receiving no response, DA Kunzweiler submitted a nearly identical request to Defendant Peters. *See* Ex. 2. Staff for Defendant Peters signed the return receipt on September 12, 2022, and DA Kunzweiler received the return receipt on September 15, 2022. *See id.*

*The BOP's Decision*

34.      On September 28, 2022, Defendant Grant authored a letter to DA Kunzweiler denying the request for transfer. *See* Ex. 1 at 1. DA Kunzweiler did not receive the letter until October 12, 2022—nearly 70 days after DA Kunzweiler submitted his original request, and less than a month before the scheduled clemency hearing

35.      Defendant Grant's letter stated that "The Designation and Sentence Computation Center (DSCC) has denied the request for transfer, as it is not in the public's best interest." Ex. 1 at 1. No further explanation was given. *See id.*

36.      On October 14, 2022, Oklahoma Attorney General John O'Connor sent a further request to Defendant Tellez, the Regional Director in Grand Prairie, Texas. *See* Ex. 2. General O'Connor observed that BOP policy delegates to the Regional Director the authority over transfer to State officials. *Id.* Because the defendant warden's letter mentioned a decision of staff in Grand Prairie instead of a decision of the Regional Director, General O'Connor asked Defendant Tellez to confirm whether the answer from his warden (and his other staff in Grand Prairie) is Defendant Tellez's answer to the State's request. *Id.* The request also included a certified copy of the judgment of conviction. *Id.*

37.      On October 17, 2022, Defendant Tellez authored a letter confirming that he endorsed his staff's decision to deny the transfer of Hanson to Oklahoma for a clemency hearing and potential execution. *See* Ex. 3. General O'Connor first received a copy of the letter on October 21, 2022.

38.      In his letter, Defendant Tellez stated that "transfer to state authorities for state execution is not in the public interest" because "inmate Hanson is presently subject to a Life term imposed in Federal Court" and because "[i]nmate Hanson is in the primary jurisdiction of federal authorities." *Id.*

39.      Defendant Tellez thus denied the transfer. *See id.*

## V.   CLAIMS FOR RELIEF

### COUNT ONE: WRIT OF HABEAS CORPUS—28 U.S.C. § 2241

40.     Plaintiffs adopt and incorporate by reference all preceding allegations.

41.     The writ of habeas corpus is proper when a federal prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3).

42.     In denying transfer of inmate Hanson, Defendants have violated 18 U.S.C. § 3623, a law of the United States, by either (1) considering factors other than the public interest when denying transfer, or (2) unlawfully rejecting the clear public interest in the death penalty, or both.

43.     Accordingly, the Court should issue a writ of habeas corpus requiring the surrender of inmate John Hanson to state authorities because his continued federal custody is in violation of the laws of the United States.

### COUNT TWO: *ULTRA VIRES* VIOLATION OF 18 U.S.C. § 3623

44.     Plaintiffs adopt and incorporate by reference all preceding allegations.

45.     "There is a 'strong presumption' that Congress intends there to be judicial review of administrative agency action." *Kirby Corp. v. Pena*, 109 F.3d 258, 261 (5th Cir. 1997). Courts "ordinarily presume that Congress intends the executive to obey its statutory commands and, accordingly, that it expects the courts to grant relief when an executive agency violates such a command." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 681 (1986).

46.     Even when a statute exempts agency action from administrative review under the Administrative Procedures Act, judicial review is favored when executive officials are charged with acting beyond their authority. *Fed. Express Corp. v. United States Dep't of Com.*, 39 F.4th 756, 763, 766 (D.C. Cir. 2022). While Congress precluded review here under the APA, *see* 18 U.S.C. § 3625, it did not preclude all judicial review of transfer decisions.

47.     When a case or controversy exists, a court of equity may grant relief "to prevent an injurious act by a public officer, for which the law might give no adequate redress." *Carroll v. Safford*, 44 U.S. 441, 463 (1845); *see also, e.g.*, *Harmon v. Brucker*, 355 U.S. 579, 581-82 (1958) ("Generally, judicial relief is available to one who has been injured by an act of a government official which is in excess of his express or implied powers.").

48.     In particular, when an executive officer commits a "clear mistake of law," injunctive relief is appropriate. *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110–11 (1902). "Otherwise, the individual is left to the absolutely uncontrolled and arbitrary action of a public and administrative officer, whose action is unauthorized by any law." *Id.* at 110.

49.     The ability to enjoin "violations of federal law by federal officials" is "the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015); *see also Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318 (1999) ("[T]he equity jurisdiction of the federal courts is the jurisdiction in equity exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act." (internal quotation marks and citations omitted)).

50.     Federal district courts still retain power to review agency action that is *ultra vires*. *See, e.g.*, *BNSF Ry. Co. v. Equal Emp. Opportunity Comm'n*, 385 F. Supp. 3d 512, 519 n.6 (N.D. Tex. 2018).

51.     Legal authorities are unclear on whether *ultra vires* suits proceed against officers in their official or individual capacity. *Compare, e.g.*, *Texas v. Biden*, No. 2:21CV67, 2021 WL 4552547, at *5 (N.D. Tex. July 19, 2021) (official capacity), *with Ala. Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1226 (5th Cir. 1976) (suggesting individual capacity).

10

52.     The D.C. Circuit has also stated that *ultra vires* review is available against an agency and not just its executive officers. *See, e.g.*, *Mittleman v. Postal Regul. Comm;n*, 757 F.3d 300, 307–08 (D.C. Cir. 2014).

53.     Defendants' decision to deny the transfer of inmate Hanson is an *ultra vires* act. Congress has mandated that prisoners be transferred to States, and it has confined any discretion given to Defendants to refuse to the "public interest" as the sole factor for consideration. Because the public interest favors timely implementation of properly-imposed death sentences, the statute requires transfer here.

54.     By denying transfer of inmate Hanson, Defendants have acted outside of their delegated authority by either (1) considering factors other than the public interest when denying transfer, or (2) unlawfully rejecting the clear public interest in the death penalty, or both.

55.     The statute does not delegate *unfettered* discretion, and any interpretation that conferred such discretion would change the meaning of the statute.

56.     Plaintiffs will suffer irreparable injury if inmate Hanson is not in state custody before November 9, 2022. As Plaintiffs have informed Defendants, inmate Hanson has a clemency hearing scheduled for November 9, 2022. Additionally, under Oklahoma's execution protocol, the inmate must begin the 35-day process leading up to the execution on November 10, 2022, for a timely execution on December 15, 2022.

57.     Moreover, Plaintiffs will suffer irreparable injury if inmate Hanson is never transferred to state custody before completion of his federal sentence. Because inmate Hanson has a life sentence from the federal government, that will not be completed until he dies in federal custody, precluding the state sentence.

58.     The remaining equitable factors are controlled by the merits. The federal government's interest merges with the public interest when it is the opposing party. *Nken v. Holder*, 556 U.S. 418,

11

435 (2009). Because the public interest indisputably favors the transfer, it also indisputably favors an injunction effecting the transfer.

## COUNT THREE: DECLARATORY RELIEF

59.     Plaintiffs adopt and incorporate by reference all preceding allegations.

60.     "Any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

61.     In denying transfer of inmate Hanson, Defendants have violated 18 U.S.C. § 3623 by either (1) considering factors other than the public interest when denying transfer, or (2) unlawfully rejecting the clear public interest in the death penalty, or both.

62.     Accordingly, Plaintiffs seek a declaration that they are entitled to the transfer of inmate Hanson to state custody under 18 U.S.C. § 3623, preferably prior to November 9, 2022.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

a)   A writ of habeas corpus requiring the surrender of inmate John Hanson to Oklahoma state authorities;

b)   A preliminary and permanent injunction enjoining Defendants from violating 18 U.S.C. § 3623;

c)   A declaration that Defendants have unlawfully refused to transfer inmate Hanson to state custody under 18 U.S.C. § 3623 and accompanying Order that Defendants do so, preferably before November 9, 2022;

d)   A judgment for costs as appropriate under 28 U.S.C. § 2412; and

e)   Such other relief as the Court may deem just and proper.

12

Dated: October 25, 2022                           Respectfully submitted,

                                                  /s/ John C. Sullivan
                                                  John C. Sullivan
                                                  S|L LAW PLLC
                                                  Texas Bar Number: 24083920
                                                  610 Uptown Blvd., Suite 2000
                                                  Cedar Hill, TX 75104
                                                  Phone: (469) 523-1351
                                                  Facsimile: (469) 613-0891
                                                  john.sullivan@the-sl-lawfirm.com

                                                  Bryan Cleveland*
                                                    *Chief, Reserved Powers Protection Unit*
                                                  Will Flanagan*
                                                    *Assistant Solicitor General*
                                                  OKLAHOMA ATTORNEY GENERAL'S OFFICE
                                                  313 NE 21st Street
                                                  Oklahoma City, OK 73105
                                                  Phone: (405) 521-3921
                                                  bryan.cleveland@oag.ok.gov
                                                    *pro hac vice motion forthcoming*

                                                  *Counsel for Plaintiffs*