**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | |
|---|---|
| **STATE OF OKLAHOMA**, | |
| | |
| **JOHN M. O'CONNOR**, in his official capacity as Attorney General of Oklahoma, and | |
| | |
| **STEVE KUNZWEILER**, in his official capacity as District Attorney for District 14 of Oklahoma (Tulsa County) | |
| *Plaintiffs*, | |
| | |
| v. | Civil Action No: _____ |
| | |
| **HERIBERTO TELLEZ**, in both his official capacity as Regional Director of the South Central Region of the Federal Bureau of Prisons, and his individual capacity, | |
| | |
| **COLETTE S. PETERS**, in both her official capacity as Director of the Federal Bureau of Prisons, and her individual capacity, | |
| | |
| **S.R. GRANT**, in both his official capacity as Acting Complex Warden of FCC Pollock, and his individual capacity, and | |
| | |
| **FEDERAL BUREAU OF PRISONS**, | |
| *Defendants.* | |

**BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION FOR A WRIT OF HABEAS CORPUS OR, IN THE
ALTERNATIVE, A TEMPORARY RESTRAINING ORDER/PRELIMINARY
INJUNCTION**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**................................................................................................ii

**INTRODUCTION** ........................................................................................................1

**BACKGROUND** .........................................................................................................2

    I. Federal Law (18 U.S.C § 3623) Mandates Transfers to State Authority.................................2

    II. Hanson's Execution for Mary Bowles' Murder is Imminent. .......................................3

    III. Defendants Delayed and Denied Transfer for Unlawful Reasons. .................................5

**PRELIMINARY INJUNCTION STANDARD**....................................................................6

**ARGUMENT** .............................................................................................................6

    I. Because Defendants' Refusal to Transfer a Lawfully Convicted Inmate
    Contradicts the Public Interest, Plaintiffs are Likely to Succeed on the Merits
    of Their Claims. ............................................................................................6

        A.  The Public Interest Favors Timely Completion of Hanson's Death Sentence.............8

        B.  Congress Has Confirmed That the Public Interest Favors the Death Penalty ............9

        C.  Defendants' Decision That Hanson's Transfer is Not in the Public Interest is a Clear
            Legal Error that Constitutes an Abuse of Discretion. .................................................10

    II. The Remaining Factors Favor a Preliminary Injunction Here.............................................13

**CONCLUSION**...........................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Alabama v. Bozeman,*
  533 U.S. 146 (2001 ................................................................................................................7

*Am. Sch. of Magnetic Healing v. McAnnulty,*
  187 U.S. 94 (1902) ........................................................................................................ 7, 13

*Armstrong v. Exceptional Child Ctr., Inc.,*
  575 U.S. 320 (2015) ...............................................................................................................7

*BNSF Ry. Co. v. Equal Emp. Opportunity Comm'n,*
  385 F. Supp. 3d 512 (N.D. Tex. 2018) .................................................................................7

*Bowles v. Desantis,*
  934 F.3d 1230 (11th Cir. 2019) ......................................................................................9, 10

*Calderon v. Thompson,*
  523 U.S. 538 (1998) .....................................................................................................9, 10, 11

*Fresenius Kabi USA, LLC v. Nebraska,*
  No. 4:18CV3109, 2018 WL 3826681 (D. Neb. Aug. 10, 2018) .........................................9

*Gomez v. Fierro,*
  519 U.S. 918 (1996) ...............................................................................................................9

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.,*
  527 U.S. 308 (1999**)** ...........................................................................................................7

*Hanson v. Oklahoma,*
  558 U.S. 1081 (2009) .............................................................................................................4

*Hanson v. Sherrod,*
  2013 WL 3307111 .................................................................................................................4

*Hanson v. Sherrod,*
  797 F.3d 810 (10th Cir. 2015) .........................................................................................1, 4

*Hanson v. State,*
  2009 OK CR 13, 206 P.3d 1020 ...........................................................................................4

*Hibbs v. Winn,*
  542 U.S. 88 (2004) .................................................................................................................7

*Jones v. Allen,*
  485 F.3d 635 (11th Cir. 2007) ..............................................................................................9

*Knapp v. U.S. Dep't. of Agriculture,*
  796 F.3d 445, (5th Cir. 2015) ...............................................................................................7

*Lawrence v. Florida,*
  421 F.3d 1221 (11th Cir. 2005) ............................................................................................9

*Lincoln v. Vigil,*
  508 U.S. 182 (1993) ...............................................................................................................8

*Little v. Swenson,*
    282 F. Supp. 333 (W.D. Mo. 1968) ...................................................................5

*Martel v. Clair,*
    565 U.S. 648 (2012) ..........................................................................................8

*Martinez v. Mathews,*
    544 F.2d 1233 (5th Cir. 1976) ..........................................................................6

*Martinez v. Quarterman,*
    No. 02CV718, 2009 WL 10710035 (S.D. Tex. Jan. 28, 2009) .......................10

*McNair v. Allen,*
    515 F.3d 1168 (11th Cir. 2008) .........................................................................9

*Midlantic Nat. Bank v. New Jersey Dep't of Env't Prot.,*
    474 U.S. 494 (1986) ........................................................................................12

*Nken v. Holder,*
    556 U.S. 418 (2009) ........................................................................................14

*Ochoa v. Collier,*
    802 F. App'x 101 (5th Cir. 2020) .......................................................................8

*Ponzi v. Fessenden,*
    258 U.S. 254 (1922) ........................................................................................11

*Rhoades v. Reinke,*
    830 F. Supp. 2d 1046 (D. Idaho 2011) ..............................................................8

*Roark v. Individuals of Fed. Bureau of Prisons, Former & Current,*
    558 F. App'x 471 (5th Cir. 2014) .......................................................................6

*Rutherford v. McDonough,*
    466 F.3d 970 (11th Cir. 2006) ...........................................................................9

*Schwab v. Sec'y, Dep't of Corr.,*
    507 F.3d 1297 (11th Cir. 2007) .........................................................................9

*Texas v. Biden,*
    No. 2:21CV067, 2021 WL 4552547 (N.D. Tex. July 19, 2021) .......................7

*Thompson v. Wainwright,*
    714 F.2d 1495 (11th Cir. 1983) .........................................................................9

*Topletz v. Skinner,*
    7 F.4th 284 (5th Cir. 2021) ................................................................................6

*United States v. Vialva,*
    976 F.3d 458 (5th Cir. 2020) .............................................................................8

*Williams v. Allen,*
    496 F.3d 1210 (11th Cir. 2007) .........................................................................9

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ..............................................................................................6

**Statutes**

18 U.S.C. § 3591 .................................................................................................................. 10

18 U.S.C. § 3622 .................................................................................................................... 8

18 U.S.C. § 3623 ................................................................................. 1, 2, 3, 7, 8, 11, 15

18 U.S.C. § 3625 .................................................................................................................... 5

28 U.S.C. § 2241 .................................................................................................................... 6

28 U.S.C. § 2255 .................................................................................................................. 10

74 O.S. § 18 ........................................................................................................................... 3

iv

## INTRODUCTION

In 1999, at the Promenade Mall in Tulsa, Oklahoma, John Hanson carjacked and kidnapped 77-year-old Oklahoman Mary Bowles, a "volunteer at Saint Francis's hospital, who frequently walked around the Promenade Mall for exercise." *Hanson v. Sherrod*, 797 F.3d 810, 819 (10th Cir. 2015). Hanson and his accomplice then drove Bowles to an isolated area near a dirt pit, where his accomplice shot and killed an innocent bystander named Jerald Thurman and Hanson blasted Bowles "multiple times with his 9 millimeter semiautomatic pistol," killing her. *Id.* at 819–20. For murdering Bowles, an Oklahoma jury sentenced Hanson to death.

Now, however, on the cusp of his execution for this heinous crime, Hanson's sentence is being collaterally attacked by bureaucrats in the federal executive branch. Hanson is in federal custody—from a conviction for possession of a firearm during a series of robberies, No. 4:99CR125 (N.D. Okla.)—and the Regional Director of the Federal Bureau of Prisons ("BOP") is refusing to transfer Hanson to State custody. The Regional Director has brusquely informed the State of Oklahoma that a transfer of Hanson would be against the "public interest."

This is demonstrably false. Congress has mandated that such transfers take place, and only permits the denial of transfers to state custody if transfer is not in the public interest. *See* 18 U.S.C. § 3623. As both the courts and Congress have long held, the public interest favors the timely completion of a properly issued death sentence. Defendants' contrary claim—that it is in the public interest for Hanson to serve out his life sentence in federal prison for lesser crimes—nullifies the transfer statute and would mean that Hanson will *never* face justice for his murder of Bowles. On the other hand, if Hanson is transferred, state and federal justice will both be achieved. Hanson's execution by the State of Oklahoma is consistent with any public interest in seeing that Hanson never be released from custody during his lifetime.

1

The public has no interest in which sovereign keeps Hanson in custody during that lifetime, and the public certainly has no interest in allowing a murderer to escape the death penalty because he also happened to commit robberies prosecutable under federal law. Defendants' denial of a transfer is a clear violation of a law of the United States and an *ultra vires* act that exceeds their authority. Mary Bowles deserves far better than to have the current administration commute Hanson's sentence. The public spoke loud and clear when the jury sentenced Hanson to death for ending Bowles' life; their voice—their interest—should be heeded.

Moreover, Defendants' unreasonable delay in issuing their "public interest" decision on Hanson's transfer has rendered the state's irreparable injury imminent. Accordingly, a temporary restraining order or a preliminary injunction is necessary to prevent federal executive officials from lawlessly delaying or cancelling imposition of Oklahoma's death penalty on inmate John Hanson. If Oklahoma receives custody before November 9, 2022, it can begin its 35-day process leading up to the execution, and the parties can litigate to a final judgment before the execution is carried out.

With this suit, Plaintiffs seek a writ of habeas corpus, or, in the alternative, a ruling that Defendants have acted *ultra vires* in refusing to transfer Hanson to Oklahoma's custody and an injunction ordering transfer of Hanson to Oklahoma.[1] The Court should grant Plaintiffs' motion.

## BACKGROUND

**I.   Federal Law (18 U.S.C § 3623) Mandates Transfers to State Authority.**

Congress has provided that the Director of the BOP "**shall**" order that a prisoner who has been charged in an indictment or information with, or convicted of, a State felony, be transferred to

---

[1] Plaintiffs do not bring an APA claim in light of 18 U.S.C. § 3625. Nevertheless, while Congress chose to allow the BOP some discretion in transfers, it also contemplated challenges such as this one could arise in extreme facts. As the Senate reports state, a public interest decision could be overturned in cases where there was "extraordinary circumstances" constituting "an abuse of the [Director]'s discretion," *Little v. Swenson*, 282 F. Supp. 333, 337 (W.D. Mo. 1968); *see* S. Rep. No. 98-223, Sept. 14, 1983, at 141 (citing *Little*). That discretion has been abused here by Defendants' lawless reimagination of the "public interest" portion of the statute.

an official detention facility within such State prior to his release from a Federal prison facility." 18 U.S.C § 3623 (emphasis added). Congress added three criteria for when this transfer shall occur: "(1) the transfer has been requested by the Governor or other executive authority of the State; (2) the State has presented to the Director a certified copy of the indictment, information, or judgment of conviction; and (3) the Director finds that the transfer would be in the public interest." *Id.* The BOP Director has chosen to delegate that statutory power to "[t]he respective Regional Director." BOP Program Statement 5140.35, ¶ 5(b). Here, the relevant regional director is Defendant Heriberto Tellez of the South Central Region of the BOP.

For the formal request contemplated in § 3623(1), the term "other executive authority" is not defined by statute. Nevertheless, both Tulsa District Attorney (DA) Steve Kunzweiler and Oklahoma Attorney General John M. O'Connor are elected officials who exercise executive authority in Oklahoma. *See, e.g.,* 74 O.S. § 18 ("The Attorney General shall be the chief law officer of the state."). Thus, by plain meaning, either one would qualify to satisfy the first criteria. In a transfer request involving a conviction, the second criteria would merely require a "certified copy of the . . . judgment of conviction." 18 U.S.C. § 3623(2). That has been provided to Defendants. The third criteria, regarding the public interest, is the one at issue in this case. *Id.* § 3623(3).

## II.   Hanson's Scheduled Execution for Mary Bowles' Murder is Imminent.

Inmate John Hanson committed a series of crimes in August and September of 1999. The federal government currently has Hanson in custody in the United States Penitentiary, Pollock, in Louisiana, under the BOP Register Number 08585-062, for a sentence of life imprisonment for several of those crimes.

A federal court tried Hanson under the name George John Hanson. *See* No. 4:99CR125 (N.D. Okla.). The crimes at issue in that trial included robberies of liquor stores, a bank, and a video store, and possession of a firearm during those robberies. *See id.* After the jury convicted him, the district

3

court sentenced him to life in prison for possession of a firearm after a former conviction of a felony, with several lesser sentences for other counts. *See id.*

An Oklahoma state court tried him under the name John Fitzgerald Hanson. *See* No. CF-99-4583 (Tulsa Cty. Dist. Ct.). He was convicted for the carjacking, kidnapping, and execution of the 77-year-old Bowles, along with the murder of innocent bystander Thurman, a 44-year-old small business owner from Owasso, Oklahoma, who tried to intervene to help Mary. *See Hanson*, 797 F.3d at 853. After the jury convicted him of murder, it recommended the death sentence for killing Bowles, which the court imposed. *See id.* Following a resentencing hearing, a jury again recommended the death penalty for Hanson, which the Oklahoma Court of Criminal Appeals affirmed. *Hanson v. State*, 2009 OK CR 13, ¶ 59, 206 P.3d 1020, 1036. The Supreme Court denied certiorari. *Hanson v. Oklahoma*, 558 U.S. 1081 (2009).

Hanson then filed a federal habeas petition with the Northern District of Oklahoma, which was denied on all grounds. *Hanson v. Sherrod*, 2013 WL 3307111, at *5. That decision was affirmed by the Tenth Circuit, *Hanson*, 797 F.3d at 853, and certiorari was denied by the Supreme Court. 578 U.S. 979 (2016). Hanson also unsuccessfully challenged his method of execution, No. 14CV665 (W.D. Okla.), and then declined to appeal that ruling, No. 22-6100 (10th Cir.). The Oklahoma Court of Criminal Appeals subsequently scheduled Hanson's execution for December 15, 2022. *See* Order Setting Execution Dates, D-2006-126 (Okla. Ct. Crim. App. Jul. 1, 2022). In light of that date, the Oklahoma Pardon and Parole Board has scheduled his clemency hearing on November 9, 2022. *See* Upcoming Clemency Hearings, Okla. Pardon and Parole Bd.[2]

---

[2] https://www.ok.gov/ppb/.

4

### III. Defendants Delayed and Denied Transfer for Unlawful Reasons.

On August 4, 2022, DA Kunzweiler submitted a transfer request to the warden of United States Penitentiary, Pollock, on behalf of Plaintiff State. *See* Ex. 1 at 2. The transfer request advised Defendants that Hanson's presence was necessary for his clemency hearing on November 9, 2022, and his scheduled execution on December 15, 2022. *Id.*

On September 28, 2022, Warden S.R. Grant authored a letter to Plaintiff Kunzweiler denying the request for transfer. *See* Compl. Ex. 1 at 1. Defendant Grant's letter stated that "The Designation and Sentence Computation Center (DSCC) has denied the request for transfer, as it is not in the public's best interest." *Id.* No further explanation was given. *See id.* Plaintiff Kunzweiler did not receive the letter until October 12, 2022—nearly 70 days after submitting the original transfer request, and less than a month before the scheduled clemency hearing.

On October 14, 2022, General O'Connor sent a further request to Director Tellez, the Regional Director in Texas. *See* Ex. 3. General O'Connor observed that BOP policy delegates to the Regional Director the authority over transfer to State officials. *Id.* Because the warden's letter mentioned a decision of staff in Texas instead of a decision of the Regional Director, General O'Connor asked Director Tellez to confirm whether the answer from his warden and his other staff in Texas was his answer to Oklahoma's request. *Id.*

On October 17, 2022, Director Tellez authored a letter confirming that he endorsed his staff's decision. *See* Ex. 3. General O'Connor first received a copy of the letter on October 21, 2022. In his letter, Director Tellez stated that "transfer to state authorities for state execution is not in the public interest" simply because "inmate Hanson is presently subject to a Life term imposed in Federal Court" and because "[i]nmate Hanson is in the primary jurisdiction of federal authorities." *Id.* Thus, Director Tellez denied the transfer. *See id.*

## PRELIMINARY INJUNCTION STANDARD

This Court should grant a preliminary injunction if Plaintiffs show (1) they "[are] likely to succeed on the merits," (2) they "[are] likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also, e.g.*, *Topletz v. Skinner*, 7 F.4th 284, 293 (5th Cir. 2021) (discussing the test for a preliminary injunction for a writ of habeas corpus).

Plaintiffs seek the transfer of an inmate as part of the injunction. While a lower burden of proof applies to the writ of habeas corpus when pursued at final judgment, the standards for a mandatory injunction and the *ultra vires* claim are aligned: Plaintiffs must show "the facts and law clearly favor the moving party." *Martinez v. Mathews*, 544 F.2d 1233, 1242–43 (5th Cir. 1976); *see also, e.g.*, *Roark v. Individuals of Fed. Bureau of Prisons, Former & Current*, 558 F. App'x 471 (5th Cir. 2014) (unpublished) (citing *Martinez*, 544 F.2d at 1242–43).

## ARGUMENT

### I.  Because Defendants' Refusal to Transfer a Lawfully Convicted Inmate Contradicts the Public Interest, Plaintiffs are Likely to Succeed on the Merits of Their Claims.

Federal executive officials who keep an inmate in federal custody in violation of a law of the United States are subject to the writ of habeas corpus. *See* 28 U.S.C. § 2241(c)(3). Here, in denying transfer of inmate Hanson, Defendants have violated 18 U.S.C. § 3623, a law of the United States, by either (1) considering factors other than the public interest when denying transfer; or (2) unlawfully ignoring the public's clear interest in the death penalty. Circumventing the statute in either manner renders Defendants' denial of the transfer subject to the writ.

Moreover, federal executive officials act *ultra vires* and are subject to equitable remedies when they commit a "clear mistake of law." *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110–11 (1902). The ability to enjoin "violations of federal law by federal officials" is "the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to

6

England." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) (internal citations omitted). This Court has jurisdiction to enjoin *ultra vires* acts because "the equity jurisdiction of the federal courts is the jurisdiction in equity exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318 (1999). Several judges in the Northern District of Texas have acknowledged such *ultra vires* claims. *See, e.g., BNSF Ry. Co. v. Equal Emp. Opportunity Comm'n*, 385 F. Supp. 3d 512, 519 n.6 (N.D. Tex. 2018); *Texas v. Biden*, No. 2:21CV67, 2021 WL 4552547, at *5 (N.D. Tex. July 19, 2021).[3]

The transfer statute at issue here directs that Defendants "shall order" transfers that are in the public interest. *See* 18 U.S.C. § 3623. Congress's intentional use of the word "shall" is critical because it indicates that the transfer to state authorities is presumptive. *See, e.g., Alabama v. Bozeman*, 533 U.S. 146, 153 (2001) ("[T]he word 'shall' is ordinarily the language of command." (citation omitted)). Moreover, when interpreting words in a statute, courts "follow the cardinal rule that statutory language must be read in context [since] a phrase gathers meaning from the words around it." *Knapp v. U.S. Dep't. of Agriculture*, 796 F.3d 445, (5th Cir. 2015) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). The current statute can be contrasted with the preceding one in the same chapter, which provides for the temporary release of a prisoner for certain reasons such as attending a family member's funeral. *See* 18 U.S.C. § 3622. There, the law states that the BOP "**may** release" a prisoner "if such release otherwise appears to be consistent with the public interest." *Id.* (emphasis added). This contrast in the two back-to-back statutes—one using "may" and one using "shall"—demonstrates that Congress intended any discretion in § 3623 to be substantially restricted. *See Lincoln v. Vigil*, 508 U.S. 182, 193

---

[3] While habeas claims proceed against custodians, there is some dispute in case law about whether *ultra vires* claims proceed against officials in their official capacity, officials in their individual capacity, or against agencies directly. *See* Compl. ¶¶ 51–52. Plaintiffs seek relief against all three here out of an abundance of caution.

(1993) ("[A]n agency is not free simply to disregard statutory responsibilities: Congress may always circumscribe agency discretion … by putting restrictions in the operative statutes.").

Defendants violated a law of the United States—and acted *ultra vires*—either by deciding that the timely completion of the death penalty is not in the public interest or by deciding that commuting a death penalty sentence to life imprisonment is in the public interest. That reading inappropriately strips the statutory text of its plain meaning and eviscerates congressional limits on Defendants' authority.

**A.      The Public Interest Favors Timely Completion of Hanson's Death Sentence.**

It is well-established that the public interest favors "timely enforcement of the death sentence." *United States v. Vialva*, 976 F.3d 458, 462–63 (5th Cir. 2020). The corollary to that principle is also well-established: the public interest disfavors delay of the death sentence. *Ochoa v. Collier*, 802 F. App'x 101, 106 (5th Cir. 2020) (unpublished) (quoting *Martel v. Clair*, 565 U.S. 648, 662 (2012)). As one court has summarized it, "[t]here is much that has been said and written about the uncertainties and expense of death-penalty cases," including "the impact that the length of time such cases place upon the families and communities of the victims, as well as the impact of such delay upon the *ratio decidendi* underpinning the death penalty in our society." *Rhoades v. Reinke*, 830 F. Supp. 2d 1046, 1071 (D. Idaho 2011). "Continued delay compounds those uncertainties, expenses, and impacts, and therefore is not in the public interest." *Id.*

While Director Tellez claims that a transfer of Hanson is not in the public interest, that claim cannot be supported (and, indeed, Director Tellez does not even attempt to support his claim other than stating two known facts: Hanson is in the federal system and Hanson was sentenced to life imprisonment). Contrary to the Director's claim, the public interest is *the* most important factor requiring timely enforcement of a death sentence. As Justice Stevens once phrased it, "[d]elay in the execution of judgments imposing the death penalty frustrates the public interest in deterrence." *Gomez*

*v. Fierro*, 519 U.S. 918, 918 (1996) (Stevens, J., dissenting). Indeed, the public's interest in timely enforcement of the death penalty, "to have such proceedings reach a conclusion," is a "compelling interest" because delay eviscerates deterrence. *See Rhoades*, 830 F. Supp. 2d at 1049, 1071. Any argument that delay of the death penalty does *not* harm the public interest is "laughable." *Fresenius Kabi USA, LLC v. Nebraska*, No. 4:18CV3109, 2018 WL 3826681, at *5 (D. Neb. Aug. 10, 2018). And here, Defendants' position would not only result in delay, it would eliminate the death penalty entirely for Hanson. Justice would be both delayed *and* denied.

As the Eleventh Circuit has explained, the compelling public interest in the death penalty attaches once direct appeal and post-conviction remedies have confirmed that "the conviction and sentence are valid." *Bowles v. Desantis*, 934 F.3d 1230, 1248 (11th Cir. 2019); *see also, e.g.*, *Calderon v. Thompson*, 523 U.S. 538, 556 (1998). After those remedies are exhausted, "[e]ach delay, for its span, is a commutation of a death sentence to one of imprisonment." *Id.* (quoting *Thompson v. Wainwright*, 714 F.2d 1495, 1506 (11th Cir. 1983)); *see also McNair v. Allen*, 515 F.3d 1168, 1176 (11th Cir. 2008) (same); *Jones v. Allen*, 485 F.3d 635, 641 (11th Cir. 2007) (same); *Williams v. Allen*, 496 F.3d 1210, 1214 (11th Cir. 2007) (same); *Schwab v. Sec'y, Dep't of Corr.*, 507 F.3d 1297, 1301 (11th Cir. 2007) (same); *Rutherford v. McDonough*, 466 F.3d 970, 978 (11th Cir. 2006) (same); *Lawrence v. Florida*, 421 F.3d 1221, 1224 n.1 (11th Cir. 2005) (same). After direct appeal and post-conviction remedies are exhausted, any *de facto* commutation of a death sentence to life imprisonment is indisputably contrary to the public interest because of the profound injury it inflicts on the public interest. *Calderon*, 523 U.S. at 556; *Bowles*, 934 F.3d at 1248.

**B.      Congress Has Confirmed That the Public Interest Favors the Death Penalty**

In addition to the expression of public interest in the death penalty being carried out found in case law, Congress has also confirmed that the death penalty is in the public interest. This view is clear from the multiple federal statutes implementing the death penalty and making it effective. For

example, in 1994, Congress passed the Federal Death Penalty Act, which reinstituted the death penalty for defendants that were convicted of certain federal crimes while creating procedures for its implementation. *See* 18 U.S.C. § 3591 *et seq*. This statute is still in effect today.

Congress has also determined that following state execution procedures is in accordance with the public interest. *See id.* § 3596(a). Federal law provides that when a federal sentence of death is to be implemented, "the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." *Id.* Moreover, if the law of the state does not provide for the implementation of a death sentence, the "court shall designate another State, the law of which does provide for the implementation of a sentence of death." *Id.* Mandatory federal policy, therefore, is to follow state methods of execution to *ensure* that death sentences are effectuated.

Finally, Congress has confirmed that *timely* enforcement is in the public interest. The very title of the "Antiterrorism and Effective Death Penalty Act" underscores Congress's "overriding consideration" in effective enforcement. *Martinez v. Quarterman*, No. 02CV718, 2009 WL 10710035, at *2 (S.D. Tex. Jan. 28, 2009). The one-year statute of limitations in AEDPA, *see* 28 U.S.C. § 2255(f), confirms that Congress intended to remove barriers to the timely completion of the death penalty.

## C.  Defendants' Decision That Hanson's Transfer is Not in the Public Interest is a Clear Legal Error that Constitutes an Abuse of Discretion.

Because § 3623 constrains executive officials' discretion to what is in the public interest and nothing more, they have no authority to evade that interest in ordering transfers. Again, Congress directed that the executive officials "shall order" the transfer of the inmate if it is in the public interest. 18 U.S.C. § 3623. Defendants' violation of that restriction appears to rely on the unlawful theory that they are the sole and final arbiter of the public interest, and that they can invent whatever justification they deem fit, even if it is nowhere to be found in the statute or case law. Such an interpretation of

10

the statute cannot be supported and warrants either a writ of habeas corpus or an injunction to stop the *ultra vires* actions of Defendants.

As an initial matter, the transfer statute must rightly be viewed as a limitation on the discretion of executive branch officials. The enactment of the statute replaced the common law theory where transfers were within the unfettered comity discretion of the Attorney General. Compl. ¶¶ 21–23 (citing, among others, *Ponzi v. Fessenden*, 258 U.S. 254, 261–62 (1922)). Instead of stating that transfers would continue as a matter of comity, or as a matter of pure discretion, Congress limited that discretion by saying that transfers "shall" take place unless they were contrary to the "public interest." 18 U.S.C. § 3623. Any decision by executive officers to exercise unconstrained discretion would violate limits imposed by Congress. Congress' decision to use the specific phrase "public interest" to limit Defendants' discretion over the transfer of prisoners cannot be ignored.

Moreover, the "public interest" is not a term that executive officials can redefine at their convenience. Instead, it is a concrete legal term of art that is "well-defined in the case law" and "familiar to the federal courts." *Cf. Calderon*, 523 U.S. at 559. "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midlantic Nat. Bank v. New Jersey Dep't of Env't Prot.*, 474 U.S. 494, 501 (1986). Accordingly, when Congress uses a legal term of art, the statutory use of that term presumptively carries with it the legal definition. *See id.* Permitting executive officials to redefine or reassess the public interest in the manner done here would strip the statute of meaning because such officials would have the exact same total discretion they possessed under the old pre-statutory comity doctrine. The statute would be a pointless exercise that compels states to jump through procedural hoops for no purpose. The statute can only have meaning if the term "public interest" is a concrete term of art.

11

In the death penalty context, the public interest indisputably favors timely enforcement of a final judgment over all other potential interests. *See supra* Part I.A. This judicial and legislative interpretation leaves Defendants no discretion to determine that the "public interest" now means something different than that, or the opposite of that. Accordingly, judicial review of a transfer decision is needed. If Plaintiffs are not entitled to a writ of habeas corpus, or if this case is not the extraordinary circumstance that warrants *ultra vires* review, then the legislative decision to bind ("shall") transfer discretion to the "public interest" becomes meaningless.

Defendants' contrary interpretation is indeed an attempt to strip the statute of its plain meaning. Director Tellez cited the "primary jurisdiction of federal authorities" as a rationale for denying transfer. Compl. Ex. 3. But, quite obviously, the transfer statute in question *only applies if federal authorities have primary jurisdiction*. Oklahoma would not need to pursue the formalities of executive request and certified judgment if it had primary jurisdiction, and Oklahoma would not need to request transfer from the federal government if some other state had primary jurisdiction. Director Tellez's reasoning that he will not transfer jurisdiction because he has primary jurisdiction is not just atextual; it is impermissibly circular.

Moreover, the BOP's interest in retaining an inmate for his natural life is also not a public interest. The public has no interest in which institution retains an inmate, especially in our dual sovereign system where taxpayers are responsible for the cost either way. Rules regarding primary jurisdiction may be useful for resolving competing political interests, but they are not relevant to the public's interest in handling a convicted murderer like Hanson.

If Defendants are permitted to retain custody of inmate Hanson in violation of the laws of the United States, and their *ultra vires* act is not remedied, the State will be "left to the absolutely uncontrolled and arbitrary action of a public and administrative officer." *McAnnulty*, 187 U.S. at 110–11. Oklahoma's strong interest—and the public's strong interest—in seeing the death penalty carried

12

out against Hanson will be nullified. Such an outcome is contrary to both law and common sense. Plaintiffs are thus likely to succeed on their claims for a writ of habeas corpus and/or for equitable relief against the *ultra vires* acts of Defendants.

## II.   The Remaining Factors Favor a Preliminary Injunction Here.

Oklahoma faces imminent harm absent equitable relief from this Court. Oklahoma's execution policy begins thirty-five days prior to the execution date ordered by the Oklahoma Court of Criminal Appeals. *See* Execution of Inmates Sentences to Death, OP-040301, Okla. Dep't of Corrections, Part VII.B. Thus, for inmate Hanson's sentence to be carried out on December 15, 2022, the Oklahoma Department of Corrections must be able to initiate the process on November 10, 2022, with Hanson in custody before that date.

As this Court is aware, execution policies and protocols are heavily litigated documents, and compliance with their terms is important in the death penalty context. Oklahoma's execution protocol also contains extensive requirements beginning thirty-five days in advance that could not be completed on a compressed timeline. *See* Execution of Inmates Sentences to Death, OP-040301, Okla. Dep't of Corrections, Part VII.B (listing the requirements). Thus, if Hanson is not in state custody before November 10, 2022, then—by waiting nearly 70 days to first respond to DA Kunzweiler—the federal Defendants will have successfully delayed, if not permanently defeated, the State's lawful determination.

Beyond that harm, Defendants have also, in essence, lawlessly threatened to commute Hanson's sentence to life imprisonment. Director Tellez's letter effectively states that he will deny any transfer until inmate Hanson is within the last 90 days of his federal sentence. Compl. Ex. 3. Because Defendants will not know when his sentence is complete until Hanson is dead in federal prison, Defendants' decision effectively denies any transfer of Hanson in perpetuity. Such anti-death penalty activism by federal officials inflicts the severe harm on the State of being prevented from ever carrying

13

out its lawfully imposed death sentence. It also, perversely, rewards Hanson for committing additional crimes that could be charged by the federal authorities. Under Defendants' logic, the other murderous inmates on Oklahoma's death row should also have committed armed robberies in order to avoid Oklahoma's death penalty.

The remaining equitable factors are controlled by the merits. The federal government's interest merges with the public interest when it is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Because the public interest clearly favors the transfer, it also clearly favors an injunction effecting the transfer. *See supra* Part I.

Even if the federal government's interest did not merge with the public interest, and even if executive officers could define that interest differently than Congress and the people, the federal government's interest would not be threatened here. If the transfer back to State custody occurs, the purpose underpinning his federal sentence—that Hanson never see release from incarceration—will still be realized. Put another way, Hanson's execution by the State of Oklahoma is consistent with any federal interest that Hanson never be released from custody during his lifetime. On the other hand, if the transfer back to Oklahoma custody does not occur, the State sentence will be blocked and Hanson will escape his lawful death sentence for Bowles' murder. Only one sentence can possibly be prejudiced here, and executive officials' policy preferences cannot overcome the clear public interest favoring the timely completion of a death sentence.

## CONCLUSION

For the reasons stated, this Court should issue either a writ of habeas corpus or an injunction on the *ultra vires* claim, restraining Defendants from denying the transfer of John Hanson under 18 U.S.C. § 3623 and directing Defendant Tellez, and other Defendants as needed, to fulfill the transfer request.

Dated: October 25, 2022

Respectfully submitted,

/s/ John C. Sullivan
John C. Sullivan
S|L LAW PLLC
Texas Bar Number: 24083920
610 Uptown Blvd., Suite 2000
Cedar Hill, TX 75104
Phone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

Bryan Cleveland*
  *Chief, Reserved Powers Protection Unit*
Will Flanagan*
  *Assistant Solicitor General*
OKLAHOMA ATTORNEY GENERAL'S OFFICE
313 NE 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
bryan.cleveland @oag.ok.gov
  *pro hac vice motion forthcoming*

*Counsel for Plaintiffs*

15

## CERTIFICATE OF SERVICE

I hereby certify that the undersigned document was served on Defendants on October 25, 2022, along with service of the Complaint and Motion in compliance with Fed. R. Civ. P. 4(i).

_/s/ John C. Sullivan_
John C. Sullivan