# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

_____

STATE OF OKLAHOMA, et al.,

     Plaintiffs,

v.                                                                  Civil Action No. 7:22-CV-108-O

HERIBERTO TELLEZ, et al.,

     Defendants.

---

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
## FOR WRIT OF HABEAS CORPUS OR ALTERNATELY FOR
## <u>TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION</u>

CHAD E. MEACHAM
United States Attorney

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Director

JOSEPH J. DEMOTT (Va. Bar No. 93981)
MICHAEL J. GAFFNEY
BRIAN C. ROSEN-SHAUD
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-5981
Email: joseph.demott@usdoj.gov

BRIAN W. STOLTZ
Assistant United States Attorney

*Counsel for Defendants*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................... 3

ARGUMENT ........................................................................................................ 5

    I.      Plaintiffs Are Not Entitled to Habeas Relief............................................... 5

          A.     This Court Does Not Have Habeas Jurisdiction Over a Prisoner
                and Warden Located in the Western District of Louisiana. ....................... 7

          B.     Even if the Court Had Jurisdiction, Plaintiffs Have No Cognizable
                Habeas Claim. ........................................................................................... 8

    II.     Plaintiffs Are Not Entitled to a Temporary Restraining Order or
          Preliminary Injunction on Their *Ultra Vires* Claim................................. 10

          A.     Plaintiffs' *Ultra Vires* Claim Is Meritless. ............................................ 12

                1.     Defendants Are Entitled to Sovereign Immunity.......................... 12

                2.     Defendants Did Not Violate § 3623 Because Hanson Has
                     Not Been Released from Federal Custody.................................... 15

                3.     Defendants Did Not Violate § 3623 Because BOP Did Not
                     Find That Transferring Hanson to State Custody Is in the
                   Public Interest. ........................................................................... 18

          B.     Plaintiffs Fail to Satisfy the Remaining Factors. ..................................... 19

CONCLUSION................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Ala. Rural Fire Ins. Co. v. Naylor*,
   530 F.2d 1221 (5th Cir. 1976) ......................................................................... 15, 16

*Ali v. Caraway*,
   No. 1:20-CV-00880, 2022 WL 4296706 (W.D. La. Aug. 30, 2022)........................ 9

*Armstrong v. Exceptional Child Ctr., Inc.*,
   575 U.S. 320 (2015)............................................................................................. 15

*Armstrong v. Salinas*,
   No. 6:13-cv-179, 2014 WL 340399 (E.D. Ky. Jan. 30, 2014)....................... 2, 18, 20

*Black Fire Fighters Ass'n v. City of Dallas*,
   905 F.2d 63 (5th Cir. 1990) ............................................................................ 12, 23

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975)............................................................................................. 15

*Bowman v. Wilson*,
   672 F.2d 1145 (3d Cir. 1982)............................................................................... 18

*Canal Auth. v. Callaway*,
   489 F.2d 567 (5th Cir. 1974) .................................................................... 12, 13, 22

*Changji Esquel Textile Co. v. Raimondo*,
   40 F.4th 716 (D.C. Cir. 2022)......................................................................... 17, 22

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971)............................................................................................. 15

*Corsey v. Wilson*,
   No. 4:20-CV-1073-P, 2021 WL 1102019 (N.D. Tex. Mar. 23, 2021) ................... 11

*Danos v. Jones*,
   652 F.3d 577 (5th Cir. 2011) ......................................................................... *passim*

*Fed. Express Corp. v. United States Dep't of Com.*,
   39 F.4th 756 (D.C. Cir. 2022)................................................................... 15, 16, 17

*Gee v. Kansas*,
   912 F.2d 414 (10th Cir. 1990) ............................................................................. 18

*Glossip v. Chandler*,
   No. 14-cv-0665-F, 2022 WL 1997194 (W.D. Okla. June 6, 2022)......................... 4

*Hanson v. Sherrod,*
    797 F.3d 810 (10th Cir. 2015) ............................................................. 3, 4

*Harris County v. MERSCORP Inc.,*
    791 F.3d 545 (5th Cir. 2015) ............................................................... 12

*Hernandez v. Mesa,*
    140 S. Ct. 735 (2020) .......................................................................... 15

*Holland Am. Ins. Co. v. Succession of Roy,*
    777 F.2d 992 (5th Cir. 1985) ............................................................... 12

*Hooker v. Sivley,*
    187 F.3d 680 (5th Cir. 1999) ................................................................. 8

*In re Liberatore,*
    574 F.2d 78 (2d Cir. 1978).................................................................... 18

*Jake v. Herschberger,*
    173 F.3d 1059 (7th Cir. 1999) .............................................................. 12

*Jobs, Training & Servs., Inc. v. E. Texas Council of Governments,*
    50 F.3d 1318 (5th Cir. 1995) ............................................................... 14

*Larson v. Domestic & Foreign Com. Corp.,*
    337 U.S. 682 (1949)....................................................................... 14, 17

*Lee v. Wetzel,*
    244 F.3d 370 (5th Cir. 2001) ........................................................... 7, 8, 9

*Little v. Swenson,*
    282 F. Supp. 333 (W.D. Mo. 1968) ...................................................... 16

*Martinez v. Mathews,*
    544 F.2d 1233 (5th Cir. 1976) ............................................................. 13

*McCarthy v. Warden,*
    168 F. App'x 276 (10th Cir. 2006) ...................................................... 11

*Meachum v. Fano,*
    427 U.S. 215 (1976).............................................................................. 23

*Munaf v. Geren,*
    553 U.S. 674 (2008).............................................................................. 10

*Nken v. Holder,*
    556 U.S. 418 (2009).............................................................................. 23

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984) ................................................................... 16

*Ponzi v. Fessenden,*
    258 U.S. 254 (1922) ........................................................... 12, 18

*Preiser v. Rodriguez,*
    411 U.S. 475 (1973) ................................................................... 9

*Rumsfeld v. Padilla,*
    542 U.S. 426 (2004) .............................................................. 7, 8

*Simmons v. Smith,*
    774 F. App'x 228 (5th Cir. 2019) ........................................... 17

*United States v. Cole,*
    416 F.3d 894 (8th Cir. 2005) ............................................ 11, 18

*United States v. Collier,*
    31 F. App'x 161 (6th Cir. 2002) ............................................. 18

*United States v. Dowdle,*
    217 F.3d 610 (8th Cir. 2000) .................................................. 23

*United States v. Warren,*
    610 F.2d 680 (9th Cir. 1980) ........................................... *passim*

*W. Radio Servs. Co. v. U.S. Forest Serv.,*
    578 F.3d 1116 (9th Cir. 2009) ................................................ 15

*Yusufu v. Ashcroft,*
    No. 00-10918, 2001 WL 274491 (5th Cir. Feb. 15, 2001) ...................... 12

*Zerbst v. McPike,*
    97 F.2d 253 (5th Cir. 1938) ........................................... 2, 18, 23

**Statutes**

18 U.S.C. § 3621 ........................................................................... 22

18 U.S.C. § 3621(a) ............................................................... 2, 11, 20

18 U.S.C. § 3623 ................................................................... *passim*

18 U.S.C. § 3623(3) .................................................................. 2, 5, 16

18 U.S.C. § 3623(c) ...................................................................... 14

18 U.S.C. § 3625 .................................................................... 14, 21

18 U.S.C. § 3581 ................................................................................................ 11, 22

28 U.S.C. § 2241(a) ................................................................................................ 6

28 U.S.C. § 2241(c)(3) ......................................................................................... 1, 9

28 U.S.C. § 2241(c)(5) ........................................................................................... 10

28 U.S.C. § 2242 .................................................................................................... 10

28 U.S.C. § 2243 ...................................................................................................... 7

28 U.S.C. § 2441 ...................................................................................................... 5

28 U.S.C. § 2201 .................................................................................................... 12

**Legislative Materials**

S. Rep. No. 98-223 (1983) ................................................................................. 16, 21

**Rules**

Fed. R. Civ. P. 12(a)(2) ........................................................................................ 13

Fed. R. Civ. P. 5(b)(2) .......................................................................................... 25

**Other Authorities**

Barbara J. Van Arsdale, et al., 8A Fed. Proc. L. Ed. § 22:52 (2022) .......................... 18

BOP Program Statement No. 5140.35 (Sept. 12, 2001),
    https://perma.cc/J6ZG-89H8 ........................................................................ 19, 22

State Attorney General Requests Execution Dates for 25 Death Row Inmates,
    News 9 (June 10, 2022), https://perma.cc/QQQ4-NXUU .......................................... 4

**INTRODUCTION**

Plaintiffs—the State of Oklahoma and two state officials—seek to obtain custody of a federal inmate named John Hanson, who is currently serving a life sentence at a federal prison in Pollock, Louisiana.  Count I of the complaint requests issuance of a writ of habeas corpus.  This Court lacks jurisdiction to entertain that request, however, because the prisoner and his immediate custodian—the acting warden of the federal prison—are located in the Western District of Louisiana.  For that reason alone, Plaintiffs' habeas claim should be dismissed.  In addition, the statutory habeas provision on which Plaintiffs rely, 28 U.S.C. § 2241(c)(3), can be raised only by a prisoner or someone acting on the prisoner's behalf—not by third parties acting on their own behalf.  In any event, Plaintiffs fail to show that Hanson is being imprisoned in violation of the Constitution or any law of the United States, as would be necessary for the writ to issue.  Therefore, Plaintiffs are not entitled to any habeas relief.

In the alternative, Plaintiffs move for a temporary restraining order or preliminary injunction ordering the Federal Government to transfer Hanson to their custody, alleging a violation of 18 U.S.C. § 3623.  This motion should also be denied.  At the threshold, the Court lacks jurisdiction over this claim because Defendants are entitled to sovereign immunity.  Plaintiffs attempt to rely on the *ultra vires* exception to sovereign immunity, but that exception applies only where a government official acts "without any 'colorable basis for the exercise of authority.'"  *Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011) (citation omitted).  Here, Congress has expressly authorized the Bureau of Prisons ("BOP") to determine whether to transfer a federal prisoner to state custody, *see* 18 U.S.C. § 3623, and Plaintiffs' allegations that BOP erred in exercising that statutory authority are far from "sufficient . . . to overcome the jurisdictional bar of sovereign immunity," *Danos*, 652 F.3d at 584.

Jurisdictional defects aside, there is no merit to Plaintiffs' claim that BOP violated § 3623, which provides that a qualifying prisoner shall be transferred to State custody "prior to his release from a Federal prison facility."  In view of that temporal clause, § 3623 cannot be violated unless and until the prisoner has been *released* from federal custody; the provision does not forbid BOP from maintaining custody of Hanson until the expiration of his federal term of imprisonment, as contemplated by a related provision, 18 U.S.C. § 3621(a).  Further, § 3623 does not alter the longstanding doctrine of primary jurisdiction, under which the Federal Government, having first arrested and convicted Hanson, "is entitled to have him serve a sentence that it imposes, before he serves any sentence imposed by another sovereign." *Armstrong v. Salinas*, No. 6:13-cv-179, 2014 WL 340399, at *5 (E.D. Ky. Jan. 30, 2014) (collecting authorities); *accord Zerbst v. McPike*, 97 F.2d 253, 254 (5th Cir. 1938).  Lastly, the provision does not require the transfer of any prisoner unless "the Director [of BOP] finds that the transfer would be in the public interest."  18 U.S.C. § 3623(3).  The Director has not made that finding here, and this Court should decline Plaintiffs' request to substitute their assessment of the public interest for the Director's.

Plaintiffs also fail to establish the remaining requirements for emergency relief. Plaintiffs allege that they "will suffer irreparable injury" if required to postpone their execution of Hanson, which is currently scheduled for December 15, 2022.  Compl. ¶ 56, ECF No. 1.  But they fail to explain how they would be harmed if the execution were delayed while this case is litigated to final judgment, and they cite no authority supporting the notion that bare delay of an execution (a common occurrence) constitutes irreparable harm.  Further, the requested injunction would not serve the public interest because it would deprive the Federal Government of its right to exercise primary jurisdiction over Hanson and constitute an unwarranted judicial intrusion into

"a matter of comity to be resolved by the executive branches of the two sovereigns." *United States v. Warren*, 610 F.2d 680, 684-85 (9th Cir. 1980).

## BACKGROUND

The pertinent facts are relatively straightforward. Plaintiffs are the State of Oklahoma and two state officials, the State Attorney General and the Tulsa County District Attorney. They seek to compel the transfer to their custody of federal prisoner John Hanson, who is currently serving a life sentence after having been convicted of various federal offenses in the Northern District of Oklahoma. He is, and at all relevant times has been, in custody at a Federal Bureau of Prisons ("BOP") facility in Pollock, Louisiana ("FCC Pollock"). His custodian there is the acting warden of FCC Pollock, whom the complaint names as a defendant.

Hanson committed a series of crimes in August and September 1999. Compl. ¶ 13. Shortly thereafter, Hanson was arrested by federal authorities. *Id.* ¶ 14; *see also Hanson v. Sherrod*, 797 F.3d 810, 821 (10th Cir. 2015). In January 2000, a federal jury convicted him of several violent felonies, and in June 2000, a federal court sentenced him "to be imprisoned for a term of life to be followed by a consecutive term of 1,884 months." Judgment, *United States v. Hanson*, No. 4:99-cr-125-hdc (June 28, 2000). Hanson was subsequently convicted of murder in Oklahoma state court, and in May 2001, the state court sentenced him to death. *See Hanson*, 797 F.3d at 822. This sentence was overturned on appeal, but in February 2006, the state court again sentenced Hanson to death. *See* Compl., Ex. 1 at 3-4, ECF No. 1-1. Over the next several years, Hanson exhausted his direct appeals and filed a federal habeas petition, which was denied. *See* Compl. ¶¶ 17-18.

In 2014, Hanson (along with several others facing the death sentence) raised constitutional challenges to Oklahoma's execution protocols. *See Glossip v. Chandler*, No. 14-

cv-0665-F, 2022 WL 1997194, at *1 (W.D. Okla. June 6, 2022). "A series of mishaps, some more serious than others, with respect to Oklahoma's implementation of its lethal injection protocol resulted in a state grand jury investigation and a protracted period of development of a new protocol." *Id.* In February 2020, Oklahoma promulgated a new execution protocol. *Id.* On June 6, 2022, a federal district court rejected the inmates' challenge to this protocol. *See generally id.* On June 10, 2022, the Oklahoma Attorney General moved the Oklahoma Court of Criminal Appeals to set execution dates for Hanson—who had long been a federal prisoner—as well as several prisoners in the State's custody. *See* State Attorney General Requests Execution Dates for 25 Death Row Inmates, News 9 (June 10, 2022), https://perma.cc/QQQ4-NXUU. The state court granted Oklahoma's motion and scheduled Hanson's execution for December 15, 2022. *See* Order Setting Execution Dates, D-2006-126 (Okla. Ct. Crim. App. Jul. 1, 2022).

More than a month after Hanson's execution was scheduled, Oklahoma submitted a request to BOP under 18 U.S.C. § 3623, which provides for transfers of federal prisoners to state facilities under certain circumstances. *See* Compl., Ex. 1 at 2. In that request, the Tulsa County District Attorney asked the acting warden of the Federal Correctional Complex in Pollock, Louisiana, where Hanson is incarcerated, to transfer Hanson to Oklahoma's custody to be executed. *Id.* By letter dated September 28, 2022, the acting warden informed the District Attorney that the request had been denied. *See id.* at 1. On October 14, 2022, the Oklahoma Attorney General then made a similar request to the BOP Regional Director (whose office is located in Grand Prairie, Texas), cc'ing the BOP Director. *See* Compl., Ex. 2, ECF No. 1-2. On October 17, 2022, the Regional Director confirmed that the requested transfer had been denied. *See* Compl., Ex. 3, ECF No. 1-3.

Plaintiffs next filed this lawsuit, naming as defendants the acting warden of FCC Pollock

as well as the BOP Regional Director and BOP Director.  The complaint seeks Hanson's transfer

to Oklahoma's custody via a writ of habeas corpus under 28 U.S.C. § 2241, or an injunction

under a theory of *ultra vires* action.  Shortly after this lawsuit's inception, Plaintiffs moved for

issuance of a writ of habeas corpus or for a temporary restraining order or preliminary injunction

requiring Hanson to be transferred to their custody.  *See* Pls.' Mot. for Writ of Habeas Corpus or

TRO/PI, ECF No. 2.  The Court ordered an expedited response to Plaintiffs' motion, *see* Order,

ECF No. 7, which Defendants[1] now provide.

## ARGUMENT

Plaintiffs' complaint contains two substantive counts: a habeas corpus claim and an *ultra*

*vires* claim.  As detailed below, this Court does not have jurisdiction over either claim and, in

any event, neither has merit.  Moreover, Plaintiffs fail to establish that they will be irreparably

harmed absent preliminary relief, or that such relief is in the public interest.  Therefore, the Court

should deny Plaintiffs' motion.

## I.    Plaintiffs Are Not Entitled to Habeas Relief.

The federal statute on which Plaintiffs' habeas claim relies provides that "writs of habeas

corpus may be granted by the Supreme Court, any justice thereof, the district courts and any

circuit judge within their respective jurisdictions."  28 U.S.C. § 2241(a).  Plaintiffs' theory is that

---

[1] The complaint states that Plaintiffs are suing Defendants Tellez, Peters, and Grant in both
official and personal capacities. Compl. ¶¶ 9-11, 51.  The government submits that only official-
capacity claims are properly presented here because Plaintiffs seek only equitable relief, *i.e.*, the
transfer of a prisoner from federal custody to state custody; the individual Defendants have no
authority to transfer prisoners when acting in a personal capacity; and any relief would therefore
be directed at the actions or resources of the United States.  Undersigned counsel does not
represent Defendants Tellez, Peters, and Grant in their personal capacities, and to the best of
counsel's knowledge, they have not been personally served with the complaint.  Accordingly,
this brief uses "Defendants" to refer only to BOP and the three official-capacity Defendants.

a writ of habeas corpus is appropriate here because Hanson is allegedly "in [federal] custody in

violation of the Constitution or laws or treaties of the United States" so as to fall within

§ 2241(c)(3).  Compl. ⁋ 41.  This claim fails for several reasons.

### A.   This Court Does Not Have Habeas Jurisdiction Over a Prisoner and Warden Located in the Western District of Louisiana.

The text of § 2441(a) limits the district courts' authority to granting writs of habeas

corpus "within their respective jurisdictions."  The Supreme Court has explained that § 2241's

reference to "jurisdiction" implicates concepts akin to venue and personal jurisdiction.  *See*

*Rumsfeld v. Padilla*, 542 U.S. 426, 434 & n.7 (2004) (setting out the relevant questions in

connection with a § 2241 claim to include "who is the proper respondent to that petition?" and

"does the [district court in which the petition is filed] have jurisdiction over him or her?"); *see*

*also id.* at 451 (Kennedy, J., concurring) (explaining that "the question of the proper location for

a habeas petition is best understood as a question of personal jurisdiction or venue").  As

explained below, this Court lacks jurisdiction over Plaintiffs' habeas claim.  *See also* Defs.' Mot.

to Transfer Pursuant to 28 U.S.C. § 1404, ECF No. 10 (explaining that the Wichita Falls

Division is not the proper venue for Plaintiffs' claims).

Any writ of habeas corpus must be directed "to the person having custody of the person

detained."  28 U.S.C. § 2243.  As the Supreme Court has made clear, this means the "*immediate*

custodian*" of the prisoner—*i.e.*, "the warden of the facility where the prisoner is being held, not

the Attorney General or some other remote supervisory official."  *Padilla*, 542 U.S. at 435

(emphasis added); *accord Lee v. Wetzel*, 244 F.3d 370, 374 (5th Cir. 2001) ("[A] grant of a writ

of habeas corpus operates against the restraining authority," *i.e.*, the prisoner's "custodian").

Accordingly, as the Supreme Court has explained, § 2241 embodies the "traditional rule"

that "the Great Writ is issuable only in the district of confinement."  *Padilla*, 542 U.S. at 442.

Because in almost all circumstances (including here) the custodian performs his duties as warden in the same judicial district as the prisoner, "jurisdiction" over "habeas petitions challenging present physical confinement" "lies in only one district"—that where the prisoner is in custody— unless one of the "explicit exceptions" Congress "fashion[ed]" in the text applies. *Id.* at 443. Consistent with this bedrock rule, the Fifth Circuit has made clear that a § 2241 petition "must be filed in the district where the prisoner is incarcerated." *Hooker v. Sivley*, 187 F.3d 680, 682 (5th Cir. 1999); *see also Lee*, 244 F.3d at 373 ("[W]e have firmly stated that the district of incarceration is the only district that has jurisdiction to entertain a defendant's § 2241 petition.").[2]

In this case, Hanson's immediate custodian is (undisputedly) the acting warden of FCC Pollock in Grant Parish, Louisiana. Compl. ¶ 11. Accordingly, this Court lacks jurisdiction under § 2241 over any habeas petition seeking to alter or change the status of Hanson's custody in a location outside the Northern District of Texas. Hanson is not located in this district, and this Court does not have "jurisdiction over the custodian," as required to support a § 2241 habeas claim under Supreme Court precedent.[3] *See Padilla*, 542 U.S. at 442.

Because of this jurisdictional deficiency, Plaintiffs' habeas claim must be dismissed. A "district court lacking jurisdiction over a § 2241 petition has no authority or 'discretion' to transfer the petition to the proper district." *Ali v. Caraway*, No. 1:20-CV-00880, 2022 WL

---

[2] Plaintiffs' suggestion that venue is proper in the Northern District of Texas because "several Defendants—custodians of inmate John Hanson—reside in this District," Compl. ¶ 5, reflects a legal error insofar as Plaintiffs appear to be assuming to that there are "several" custodians of the prisoner. The Supreme Court has made clear that only the immediate custodian matters under the habeas statute. *Padilla*, 542 U.S. at 435, 442. Here, the immediate custodian is the FCC Pollock warden.

[3] This jurisdictional defect exists even though Plaintiffs—not the prisoner—filed this habeas claim. The court must have jurisdiction over the custodian; this Court does not in this case.

4296706, at *1 (W.D. La. Aug. 30, 2022) (report and recommendation), *R&R adopted*, 2022 WL 4296698 (W.D. La. Sept. 16, 2022); *see also Lee*, 244 F.3d at 374-75 (vacating a district court's decision to transfer a § 2241 action to another district where habeas jurisdiction was absent, and instead requiring dismissal). If Plaintiffs wish to attempt to pursue a writ of habeas corpus (assuming arguendo that such a claim were cognizable, *but see infra* Part I.B), they must file a petition in the Western District of Louisiana.

>    **B.    Even if the Court Had Jurisdiction, Plaintiffs Have No Cognizable Habeas Claim.**

The Court need not, and should not, go any further with respect to Plaintiffs' habeas claim, but the claim fails for additional reasons. Plaintiffs seek habeas relief under a theory that Hanson is "in custody in violation of the Constitution or laws of treaties of the United States," 28 U.S.C. § 2241(c)(3). *See* Compl. ¶¶ 41-43. This statutory provision is a modern form of the "Great Writ," which historically could be raised only by the prisoner. *See, e.g.*, *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("It is clear . . . from the common-law history of the writ, that the essence of habeas corpus is an attack *by a person in custody* upon the legality of that custody." (emphasis added)). Plaintiffs cite no authority indicating that third parties may bring § 2241(c)(3) claims on their own behalf (not on behalf of the prisoner)—much less a precedent for one sovereign using the provision to obtain custody of a prisoner from another sovereign.[4] Nor do they explain how their apparently novel claim accords with the plain language of the statute, which makes clear that a writ must be filed by or on behalf of the detained individual. *See* 28 U.S.C. § 2242 (requiring application for the writ to be "signed and verified *by the person for*

---

[4] Under 28 U.S.C. § 2241(c)(5), a third party may obtain a writ of habeas corpus where "[i]t is necessary to bring [a prisoner] into court to testify or for trial." Plaintiffs do not invoke this provision, and it is plainly inapplicable here.

*whose relief it is intended or by someone acting in his behalf*," and to allege "facts concerning *the applicant's commitment or detention*," and referring to "the district in which *the applicant is held*") (emphases added).

Habeas relief is also unavailable because Plaintiffs do not contend that Hanson is unlawfully imprisoned by federal authorities.  Plaintiffs do not dispute that Hanson was lawfully convicted in a federal court (in the Northern District of Oklahoma) and sentenced to spend the rest of his life in prison.  *See* Compl. ¶¶ 14-15.  And Plaintiffs do not suggest that this conviction has been overturned or invalidated, nor do they claim that Hanson's federal sentence has expired such that he ought to be released.  Indeed, Plaintiffs do not even seek the traditional remedy for unlawful detention, which "is, of course, release."  *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

Plaintiffs have instead requested that the Federal Government transfer Hanson to their custody, but neither that request nor its denial can somehow transform Hanson's concededly lawful incarceration in federal prison into unlawful or unconstitutional custody within the meaning of § 2241.  BOP has been lawfully entitled to hold Hanson in custody since (at least) the moment he was convicted and sentenced in the Northern District of Oklahoma. *See* 18 U.S.C. § 3621(a) ("A person who has been sentenced to a term of imprisonment pursuant to [18 U.S.C. §§ 3581-3586] shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed . . . .").  Plaintiffs do not cite any authority showing that a writ of habeas corpus is available under § 2241(c)(3) to a state (or to anyone else) that wishes to see a federal prisoner transferred to its own custody in these circumstances.

What Plaintiffs are really challenging is not a matter of habeas corpus at all, but rather implicates the concept of "primary jurisdiction" when a person is facing both federal and state criminal liability.  *See also infra* Part II.A.  "Generally, the sovereign which first arrests an

individual acquires primary jurisdiction for purposes of trial, sentencing, *and incarceration*."
*Corsey v. Wilson*, No. 4:20-CV-1073-P, 2021 WL 1102019, at *2 (N.D. Tex. Mar. 23, 2021)
(emphasis added) (citing *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005); *United States
v. Warren*, 610 F.2d 680, 684-85 (9th Cir. 1980); *McCarthy v. Warden*, 168 F. App'x 276, 277
(10th Cir. 2006)).  The sovereign with primary jurisdiction "retains primary jurisdiction unless it
relinquishes it." *Wilson*, 2020 WL 1102019, at *2.  Plaintiffs' habeas claim boils down to a
complaint that the Federal Government has not relinquished its primary jurisdiction over Hanson
but rather is continuing to incarcerate Hanson pursuant to his valid and still-in-effect federal
sentence.  But it is well established that this kind of "dispute" between two sovereigns is not
subject to judicial review.  Instead, "[w]hen a person has committed crimes against two
sovereigns, the issue of who has jurisdiction over him is a matter of comity *between the two
sovereigns*." *Yusufu v. Ashcroft*, No. 00-10918, 2001 WL 274491, at *1 (5th Cir. Feb. 15, 2001)
(per curiam) (emphasis added) (citing *Ponzi v. Fessenden,* 258 U.S. 254, 262 (1922); *Jake v.
Herschberger*, 173 F.3d 1059, 1065 (7th Cir. 1999)).  The federal courts—and particularly this
Court, located in the Northern District of Texas—have no role to play in this issue. *See Warren*,
610 F.2d at 684-85.

II.    **Plaintiffs Are Not Entitled to a Temporary Restraining Order or Preliminary
       Injunction on Their *Ultra Vires* Claim.**

       In addition to seeking a writ of habeas corpus, Plaintiffs request a TRO or PI directing
Hanson's transfer to Plaintiffs' custody. *See* Br. in Support of Pls.' Mot. for Writ of Habeas
Corpus or TRO/PI at 2, ECF No. 3 ("Pls.' Br.").  This request is premised on Plaintiffs' second

claim, which alleges *ultra vires* action in violation of 18 U.S.C. § 3623.[5]  *See* Compl. ¶¶ 44-58.

A TRO or PI is an "extraordinary and drastic remedy."  *Canal Auth. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974).  As such, it is "not to be granted routinely, but only when the movant, by a clear showing, carries [the] burden of persuasion."  *Black Fire Fighters Ass'n v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)).  "The four prerequisites are as follows: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest."  *Canal Auth.*, 489 F.2d at 572.  A preliminary injunction should be granted only if the movant has "clearly" carried the burden of persuasion on all four of these prerequisites.  *Id.* at 573.

Moreover, the "primary justification" of a preliminary injunction is to "preserve the court's ability to render a meaningful decision on the merits."  *Id.*  That is important here because Plaintiffs are seeking to irreversibly change the status quo by transferring Hanson's custody from FCC Pollock in Louisiana to somewhere in state custody in Oklahoma for purposes of a December execution.[6]  Plaintiffs' proposed relief is not "temporary" or "preliminary"; it

---

[5] The third and final count of the complaint seeks a declaratory judgment.  *See* Compl. ¶¶ 59-62. Because the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, "is procedural and does not create an independent private right of action," the pertinent question is whether Plaintiffs' *ultra vires* claim supports a TRO or PI.  *Harris County v. MERSCORP Inc.*, 791 F.3d 545, 553 (5th Cir. 2015).  Because it does not, no declaratory judgment may issue.

[6] Plaintiffs' suggestion that if preliminary relief is granted, "the parties can litigate to a final judgment before the execution is carried out" on December 15, 2022, Pls.' Br. at 2, is wildly unrealistic.  The execution date falls well before Defendants' deadline to answer the complaint (*i.e.*, December 26, 2022).  *See* Fed. R. Civ. P. 12(a)(2).

instead goes beyond maintaining the status quo and thus "is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party."  *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976).

As explained below, Plaintiffs fail to meet their burden to obtain a TRO or PI.

### A.     Plaintiffs' *Ultra Vires* Claim Is Meritless.

Count II of the complaint asserts that Defendants violated 18 U.S.C. § 3623 by denying Plaintiffs' request to transfer Hanson to State custody.  *See* Compl. ¶¶ 44-58; *see also* Pls.' Br. at 7-12.  According to Plaintiffs, § 3623 "mandate[s] that such transfers take place, and only permits the denial of transfers to state custody if the transfer is not in the public interest."  Pls.' Br. at 1.  This argument fails for at least three separate reasons: (1) the Court lacks jurisdiction over this claim, as Defendants are entitled to sovereign immunity; (2) the challenged denial comports with § 3623 because that provision cannot be violated unless and until a qualifying prisoner is "*release[d] from* a Federal prison facility" (emphasis added), and Hanson remains in federal prison; and (3) the BOP Director has not determined that the requested "transfer would be in the public interest," 18 U.S.C. § 3623(c).

### 1.     Defendants Are Entitled to Sovereign Immunity.

In general, a federal court has no subject-matter jurisdiction over claims against the United States and its officers "unless the government waives its sovereign immunity and consents to the suit."  *Danos*, 652 F.3d at 581.  The Administrative Procedure Act ("APA") "effects a broad waiver of sovereign immunity and allows any person adversely affected or aggrieved by [final] agency action to seek judicial review."  *Jobs, Training & Servs., Inc. v. E. Texas Council of Governments*, 50 F.3d 1318, 1323 n.3 (5th Cir. 1995) (citing 5 U.S.C. § 702). Plaintiffs do not (and could not) invoke the APA's waiver of sovereign immunity here, however,

because Congress expressly exempted BOP's prisoner-transfer determinations from the reach of the APA. *See* 18 U.S.C. § 3625. Instead, Plaintiffs attempt to proceed under "[t]he *ultra vires* exception to sovereign immunity," also known as "the *Larson* exception." *Danos*, 652 F.3d at 583 (citing *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949)). As detailed below, this attempt fails for numerous reasons.

To begin with, § 3625 arguably forecloses *any* judicial review of BOP's decisions regarding prisoner transfers under § 3623. "The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). When Congress has excluded or restricted private enforcement of a statute, plaintiffs "cannot, by invoking [courts'] equitable powers, circumvent Congress's" restrictions. *Id.* at 328; *see also Hernandez v. Mesa*, 140 S. Ct. 735, 747 (2020) ("It would be 'anomalous to impute . . . a judicially implied cause of action beyond the bounds [Congress has] delineated for [a] comparable express caus[e] of action.'" (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 736 (1975))); *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1123 (9th Cir. 2009) (similar). Moreover, "the public interest" is an exceedingly broad concept, and § 3623 provides no objective standards that a court could use to review the Director's findings. *Cf. Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (judicial review under APA is unavailable "where 'statutes are drawn in such broad terms that in a given case there is no law to apply'" (citation omitted)).

In any event, the *ultra vires* exception is plainly inapplicable here. An *ultra vires* challenge "is 'essentially a Hail Mary pass.'" *Fed. Express Corp. v. United States Dep't of Com.*, 39 F.4th 756, 765 (D.C. Cir. 2022) (brackets and citation omitted). To prevail on an *ultra vires* claim, "a plaintiff must 'do more than simply allege that the actions of the officer are illegal

or unauthorized.'"  *Danos*, 652 F.3d at 583 (quoting *Ala. Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1226 (5th Cir. 1976)); *see also, e.g.*, *Fed. Express Corp.*, 39 F.4th at 765 ("Challengers must show more than the type of routine error in 'statutory interpretation or challenged findings of fact' that would apply if Congress had allowed APA review." (citation omitted)).  Instead, Plaintiffs must "establish that the officer was acting 'without any authority whatever,' or without any 'colorable basis for the exercise of authority.'"  *Danos*, 652 F.3d at 583 (quoting *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101 n.11 (1984)).  In other words, Plaintiffs must "establish that the agent in committing the wrong was not exercising the powers delegated to him by the United States."  *Naylor*, 530 F.2d at 1226.

Here, there should be no serious dispute—particularly in this TRO/PI posture—that Defendants were "exercising the powers delegated to [them] by the United States" when they denied Oklahoma's request to transfer Hanson to State custody.  *See id.*  Congress has expressly empowered the BOP Director to decide whether to effectuate such transfers, which are to occur only "*if . . . the Director* finds that the transfer would be in the public interest."  18 U.S.C. § 3623(3) (emphasis added).  The statutory provision "places the entire transfer procedure directly within the discretion of the Director of the Bureau of Prisons."  S. Rep. No. 98-223 at 141.

Plaintiffs rely on *Little v. Swenson*, 282 F. Supp. 333, 337 (W.D. Mo. 1968), for the proposition that BOP's exercise of discretion may be disturbed in "extraordinary circumstances."  Pls.' Br. at 2 n.1.  But the district court in *Little* merely suggested (in dicta) that in "exceptional circumstances not present in [that] case," a decision to transfer a federal prisoner might implicate the prisoner's "constitutional right[s]."  282 F. Supp. at 337.  This case is a far cry from what was contemplated in *Little*; it does not involve constitutional rights but rather allegations that BOP's transfer decision was insufficiently explained and poorly reasoned, *see* Pls.' Br. at 5, 6,

12. Entertaining such allegations would "def[y] precedent and logic" by "dilut[ing] *ultra vires* review to the functional equivalent of the very APA action that Congress prohibited" in § 3625. *Fed. Express Corp.*, 39 F.4th at 764 (rejecting *ultra vires* challenge to Department of Commerce action for which APA review was unavailable).  Even if Plaintiffs could show that BOP's denial of their request was "based on an incorrect decision as to law or fact," *but see infra* Part II.B.2; Part II.B.3, they would still fail to show a likelihood of success because "the officer making the decision was empowered to do so."  *Larson*, 337 U.S. at 695.

At bottom, Plaintiffs disagree with BOP's decision not to transfer Hanson.  But far more than disagreement is needed to succeed on an *ultra vires* claim.  *See, e.g.*, *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 725 (D.C. Cir. 2022) ("For an agency to act *ultra vires*, it must transgress 'clear and mandatory' limits that Congress has imposed on its authority."); *Simmons v. Smith*, 774 F. App'x 228, 230 (5th Cir. 2019) ("Because the [agency] had authority to undertake the challenged actions, [the official] did not act *ultra vires*, even if [plaintiff] disagrees with his actions.").  Accordingly, Defendants are entitled to sovereign immunity, and this Court lacks jurisdiction over Plaintiffs' *ultra vires* claim.  *See Simmons*, 774 F. App'x at 230.

## 2. Defendants Did Not Violate § 3623 Because Hanson Has Not Been Released from Federal Custody.

Under the well-established doctrine of primary jurisdiction, "the sovereign that first arrests an individual has primary control or custody over him," and this sovereign "is entitled to have him serve a sentence that it imposes, before he serves any sentence imposed by another sovereign."  *Armstrong*, 2014 WL 340399, at *5 (citing *Ponzi,* 258 U.S. at 260-262; *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005); *United States v. Collier*, 31 F. App'x 161, 162 (6th Cir. 2002); *Bowman v. Wilson,* 672 F.2d 1145, 1153-54 (3d Cir. 1982); *In re Liberatore*, 574 F.2d 78, 88-89 (2d Cir. 1978)).  The sovereign with primary jurisdiction may waive "its

strict right to exclusive custody of a defendant" and permit another sovereign to take custody of him, but such decisions lie "solely within the discretion of the sovereign[] making the waiver." Barbara J. Van Arsdale, et al., 8A Fed. Proc. L. Ed. § 22:52 (2022) (citing *Ponzi*, 258 U.S. 254); *see also, e.g.*, *Gee v. Kansas*, 912 F.2d 414, 417 (10th Cir. 1990); *Zerbst*, 97 F.2d at 254.

Here, Plaintiffs concede that the Federal Government has primary jurisdiction over Hanson.  *See* Pls.' Br. at 12.  They contend, however, that Congress has limited the Federal Government's discretion to maintain primary jurisdiction "by saying that transfers [to state custody] 'shall' take place unless they [are] contrary to the 'public interest.'"  *Id.* (quoting 18 U.S.C. § 3623).  This contention is divorced from the statute's text and belied by its context and purpose.

Section 3623 provides that when three enumerated conditions[7] are satisfied, the BOP Director "shall order that a prisoner who has been charged . . . with, or convicted of, a State felony, be transferred to [State custody] *prior to his release from a Federal prison facility*" (emphasis added).  This temporal clause—which Plaintiffs entirely ignore—makes clear that even where all three conditions are met, Congress did not contemplate (much less require) that BOP *immediately* transfer the prisoner to state custody.  To the contrary, BOP guidance states: "Any such transfer should occur within a reasonable period of time before the inmates release from the Federal sentence, ordinarily within the last 90 days."[8]  BOP Program Statement No.

---

[7] These three conditions are: "(1) the transfer has been requested by the Governor or other executive authority of the State; (2) the State has presented to the Director a certified copy of the indictment, information, or judgment of conviction; and (3) the Director finds that the transfer would be in the public interest."  18 U.S.C. § 3623.

[8] To be clear, the statute does not forbid BOP from transferring a qualifying prisoner to State custody at an earlier time.  Where a State has requested a transfer and presented the necessary documentation, and the BOP Director finds that the transfer would be in the public interest, BOP retains discretion to transfer the prisoner at any time "prior to his release" from federal prison, 18

5140.35, § 5(b) (Sept. 12, 2001), https://perma.cc/J6ZG-89H8; *accord* Compl., Ex. 3.  BOP

could conceivably violate § 3623 if it *released* a qualifying prisoner rather than transferring him,

but there is no merit to Plaintiffs' claim that BOP has "violated" § 3623 by "retain[ing] custody"

of Hanson.  *See* Pls.' Br. at 8, 12.

Similarly meritless is Plaintiffs' suggestion that the enactment of § 3623 "replaced the

common law theory" of primary jurisdiction articulated in *Ponzi* by requiring BOP to grant

States' transfer requests "unless they [are] contrary to the 'public interest.'"  *Id.* at 11.  This

argument improperly rewrites the statute from the positive (*if* the Director finds that transfer

"would be in the public interest") to the negative (BOP must transfer *unless* doing so would be

"contrary" to the public interest), without citation to any precedent for that interpretation.

Moreover, Plaintiffs' position that § 3623 compels BOP to transfer prisoners (like Hanson) who

have *not yet completed* their federal sentence cannot be squared with 18 U.S.C. § 3621(a), which

provides that federal prisoners "shall be committed to the custody of the Bureau of Prisons until

the expiration of the term imposed," or § 3621(b), which gives BOP unreviewable authority to

"designate the place of [a federal] prisoner's imprisonment."  Far from "a limitation on the

discretion of executive branch officials" to "retain custody of inmate[s]," Pls.' Br. at 11, 12, §

3623 grants the BOP Director broad discretion over transfers—similar to the discretion he enjoys

under § 3621(b).  S. Rep. No. 98-223 at 141; *see also Armstrong*, 2014 WL 340399, at *8 ("[A]ll

transfers and prison assignment are functions wholly within the discretion of [] BOP.").

Nor does Defendants' reading of § 3623 "nullif[y]" the statute or "compel[] states to

---

U.S.C. § 3623.  *See, e.g.*, *Warren*, 610 F.2d at 685 (Federal Government has "discretion" to
transfer prisoners to state custody "as a matter of comity").

jump through procedural hoops for no purpose." Pls. Br. at 1, 11. To the contrary, the provision creates an orderly procedure for transferring a qualifying prisoner to State custody upon completion of his federal sentence. This avoids an undesirable situation where a State is forced to re-arrest an offender who has completed his federal sentence but has yet to serve an additional State sentence.

### 3. Defendants Did Not Violate § 3623 Because BOP Did Not Find That Transferring Hanson to State Custody Is in the Public Interest.

The foregoing subpart amply establishes that there has been no violation of § 3623, and there is no basis for accepting Plaintiffs' *ultra vires* challenge. Therefore, the Court need not—and should not—review the substance of BOP's determination that the requested transfer is not in the public interest. *Contra* Pls.' Br. at 3 ("The third criteria [sic], regarding the public interest, is the one at issue in this case.").

Even if BOP's "public interest" determination were somehow at issue, however, Plaintiffs would not succeed in showing that it was *ultra vires*. As noted, Plaintiffs rewrite the statute to say "that transfers 'shall' take place unless they [are] contrary to the 'public interest.'" *Id.* at 3. The statute instead provides that transfers shall occur "*if… the Director finds* that the transfer would be in the public interest." 18 U.S.C. § 3623 (emphasis added). Congress tasked BOP—not the requesting state, or a federal court—with determining whether a transfer is in the public interest. And Congress exempted the Director's transfer decisions from the substantive and procedural requirements of—as well as judicial review under—the APA. *See id.* § 3625.

Plaintiffs further err by repeatedly mischaracterizing BOP's decision. Plaintiffs assert that Defendants either "decid[ed] that the timely completion of the death penalty is not in the public interest" or "decid[ed] that commuting a death penalty sentence to life imprisonment is in the public interest." Pls.' Br. at 8; *see also id.* at 1 (alleging that "Hanson's [death] sentence is

being collaterally attacked by bureaucrats in the federal executive branch"); *id.* at 13 (alleging that Defendants are engaged in "anti-death penalty activism").  In fact, no BOP decisionmaker has referenced the death penalty in connection with the requested transfer.  *See* Compl., Ex. 1 and Ex. 3.  Plaintiffs cannot manufacture an *ultra vires* claim by offering reasons for BOP's decision that BOP did not provide and then attempting to characterize those reasons as unlawful. BOP's denial of Plaintiffs' request to transfer Hanson is consistent with BOP's general practice of effectuating transfers under § 3623 "within the last 90 days of the inmate's final release from his or her Federal sentence."  BOP Program Statement No. 5140.35, § 1; *accord* Compl., Ex. 3. The denial also furthers BOP's legitimate interest in ensuring that a federal prisoner serve the entirety of his federal prison sentence.  *Cf.* 18 U.S.C. § 3621 ("A person who has been sentenced to a term of imprisonment pursuant to [18 U.S.C. §§ 3581-3586] shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed . . . .").

In sum, Plaintiffs' motion falls far short of establishing that Defendants violated § 3623 in denying Plaintiffs' request to transfer Hanson to state custody—much less of completing the "Hail Mary pass[]" of an *ultra vires* claim.  *See Changji*, 40 F.4th at 726.  Accordingly, Plaintiffs' motion for preliminary relief should be denied.

### B.      Plaintiffs Fail to Satisfy the Remaining Factors.

There is another, independent reason for denying the pending motion: Plaintiffs fail to establish that they will suffer irreparable injury absent preliminary relief.  *See Canal Auth.*, 489 F.2d at 572.  Generously construed, Plaintiffs' papers allege that Plaintiffs will be irreparably harmed if Hanson's execution—which Oklahoma has scheduled for December 15, 2022 despite the fact that Hanson is not in the State's custody—is delayed while this case is litigated to final judgment.  *See* Compl. ¶ 56; Pls.' Br. at 13.  But that allegation is entirely conclusory; Plaintiffs

make no attempt to explain *how* they would be irreparably harmed by such a delay (particularly in light of the sixteen-and-a-half years that have elapsed since Hanson received his current death sentence, *see* Compl., Ex. 2 at 3-4).  Further, Plaintiffs cite no authority—and Defendants are aware of none—supporting the proposition that delay of an execution, standing alone, constitutes irreparable injury to the executing authority.  Accordingly, Plaintiffs have not carried their burden to make a "clear showing" that they will face irreparable injury absent preliminary relief. *See Black Fire Fighters Ass'n*, 905 F.2d at 65.

Where a plaintiff challenges a government policy, the third and fourth elements of the test for preliminary relief "merge" into a single consideration of the "public interest."  *See Nken v. Holder*, 556 U.S. 418, 435 (2009).  This factor, too, favors the Federal Government.  It is well settled that the "[d]etermination of priority of custody and service of sentence between state and federal sovereigns" is "executive, and not a judicial, function."  *Warren*, 610 F.2d at 684; *accord United States v. Dowdle*, 217 F.3d 610, 611 (8th Cir. 2000).  The requested injunction would be contrary to the public interest because it would upset the "inviolable rules of comity," *Zerbst*, 97 F.2d at 254, and potentially "subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts," *Meachum v. Fano*, 427 U.S. 215, 225 (1976).

## CONCLUSION

Plaintiffs' motion should be denied.

Respectfully submitted,

CHAD E. MEACHAM
United States Attorney

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Director

*/s/ Joseph J. DeMott*
JOSEPH J. DEMOTT (Va. Bar No. 93981)
MICHAEL J. GAFFNEY
BRIAN C. ROSEN-SHAUD
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-5981
Email: joseph.demott@usdoj.gov

BRIAN W. STOLTZ
Assistant United States Attorney

*Counsel for Defendants*

Certificate of Service

On October 30, 2022, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties who have appeared in the case electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Joseph J. DeMott
Joseph J. DeMott
Trial Attorney, U.S. Department of Justice