IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| **STATE OF OKLAHOMA**,<br><br>**JOHN M. O'CONNOR**, in his official capacity as Attorney General of Oklahoma, and<br><br>**STEVE KUNZWEILER**, in his official capacity as District Attorney for District 14 of Oklahoma (Tulsa County)<br>*Plaintiffs*,<br><br>v.<br><br>**HERIBERTO TELLEZ**, in both his official capacity as Regional Director of the South Central Region of the Federal Bureau of Prisons, and his individual capacity,<br><br>**COLETTE S. PETERS**, in both her official capacity as Director of the Federal Bureau of Prisons, and her individual capacity,<br><br>**S.R. GRANT**, in both his official capacity as Acting Complex Warden of FCC Pollock, and his individual capacity, and<br><br>**FEDERAL BUREAU OF PRISONS**,<br>*Defendants*. | Civil Action No: 7:22-cv-00108-O |

**REPLY BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION FOR A WRIT OF HABEAS CORPUS OR, IN THE
ALTERNATIVE, A TEMPORARY RESTRAINING ORDER/PRELIMINARY
INJUNCTION**

Defendants' entire response to Plaintiffs' habeas corpus and *ultra vires* claims can be boiled down to one argument: 18 U.S.C. § 3623 imposes no constraints at all on the federal executive branch. From beginning to end, their brief is full of erroneous reasons why, in one way or another, the clear language of that statute can be ignored, put aside, or stripped of any real meaning or effect.

They repeatedly tell this Court, for instance, that what matters here is the old rule of "comity." Defs' Br. at 2–3, 10, 17, 20. But Congress has spoken; § 3623 is law. And Defendants are clearly violating that law by denying the transfer of Hanson to Oklahoma on the spurious ground that his execution is not in the public interest. Defendants cannot overcome congressional text by referring to comity, or anything else extra-textual. The Supreme Court has long contemplated, after all, that injunctive relief may be obtained against executive officials if their actions are "not within the officer's **statutory** powers." *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 702 (1949) (emphasis added).

At times, Defendants barely hide their view that § 3623 is meaningless. Take § 3263's emphasis on the "public interest." Defendants claim this often-adjudicated interest has "no objective standards." Defs' Br. at 13. For support, however, Defendants rely solely upon one "*Cf.*" case that does not mention the public interest. Meanwhile, Defendants ignore the numerous authorities in Plaintiffs' opening brief showing that the "public interest" is a defined legal term that clearly favors the timely completion of a death sentence. *See, e.g.*, Pls' Br. at 8–10.

Section 3623 cannot be ignored or downplayed when the federal government decides that it wants to shield Mary Bowles' murderer from justice. Perhaps recognizing the troubling nature of their position, Defendants make the brazen claim that "no [Bureau of Prisons ("BOP")] decisionmaker has referenced the death penalty in connection with the requested transfer." Defs' Br. at 19. This is false. Defendant Tellez expressly stated that Hanson's "transfer to state authorities **for state execution** is not in the public interest." Doc. 1-3 (emphasis added). Defendants' counsel cannot avoid the statements of their clients or the obvious import of Defendants' decision. An injunction is warranted.

1

**ARGUMENT**

**I. Plaintiffs will likely succeed on their *ultra vires* claim, so an injunction should issue.**

Defendants are at their weakest in refuting Plaintiffs' *ultra vires* claim grounded on § 3623. Their eagerness to avoid discussing the public interest at issue is quite telling. *See, e.g.*, Defs' Br. at 18. Buried near the end of the response is Defendants' only substantive public interest argument, where they assert that the public interest disfavors transfer here because of "BOP's general practice of effectuating transfers . . . within the last 90 days of the inmate's final release." *Id.* at 19. They provide no citation for why "BOP's general practice" is a "public interest." *See id.* Indeed, they even admit they are furthering "*BOP's* legitimate interest," *id.* (emphasis added), without engaging with the argument that BOP's parochial interests here are not the *public's* interests, Pls' Br. at 14. They also provide no response to Plaintiffs' multiple Fifth and Eleventh Circuit citations explaining that the public interest clearly favors the timely completion of a death sentence. *Compare* Defs' Br. at 19, *with* Pls' Br. at 8–9. Defendants' citation-free or self-citing assertions of public interest are hardly an adequate response to the consensus of the courts and Congress on the clear public interest at issue here.

Defendants also resort to denying that Defendant Tellez referenced the death penalty in his decision statement, Defs' Br. at 19, when he clearly did, Doc. 1-3. Stated differently, Plaintiffs did not mischaracterize Defendants' position when saying Defendants "decid[ed] that the timely completion of the death penalty is not in the public interest," Defs' Br. at 18, because Director Tellez *said that very thing*, Doc. 1-3. Indeed, it is undeniable that Defendants have decided on "commuting a death penalty sentence to life imprisonment," Defs' Br. at 18, because they will only transfer Hanson "within the last 90 days of the inmate's satisfaction of the Federal sentence" of life imprisonment, Doc. 1-3. To agree with Defendants is to commute Hanson's sentence, no matter how Defendants try to spin it.

Rather than defending their "public interest" decision, Defendants resort to asserting that their unlawful decision is unreviewable. They advance three primary arguments: (1) that *ultra vires* does not

2

pierce sovereign immunity in this context; (2) that their acts cannot be *ultra vires* if Hanson is still in their custody; and (3) that the transfer statute is a pure matter of discretion. Each argument fails.

*First*, Defendants do not and cannot contest that a proper *ultra vires* action pierces sovereign immunity. *See* Defs' Br. at 13–14 (noting "the *ultra vires* exception to sovereign immunity"). They correctly observe that *ultra vires* claims cannot be raised where Congress has foreclosed all judicial review. *See* Defs' Br at 13. But as the D.C. Circuit has held, congressional foreclosure of APA review alone—without foreclosure of all judicial review—indicates that *ultra vires* claims *are* the appropriate mechanism for relief. *See Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1173, 1178 (D.C. Cir. 2003); *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1327–28 (D.C. Cir. 1996). *Armstrong* simply adds that in addition to foreclosing all judicial review, Congress can foreclose *ultra vires* review either by providing an "express provision of one method of enforc[ement]" or by using "judicially unadministrable" standards. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 328 (2015). Defendants cite the express provision rule, but they do not claim there is an express enforcement provision in § 3623, *see* Defs' Br at 13, because it does not exist. Defendants do claim that the public interest has "no objective standards," Defs' Br. at 13, but offer no real citation for that argument. They also fail to refute the extensive citations in Plaintiffs' brief showing that the public interest is judicially administrable. *See* Pls' Br. at 8–10. Thus, neither of *Armstrong*'s avenues for foreclosing relief defeats review here.

Because *ultra vires* review is available, Defendants fall back on claiming any error here is a "routine error" that does not amount to an *ultra vires* act piercing sovereign immunity. Defs' Br. at 14. But flagrantly exceeding congressional limitations in a way that allows a convicted murderer to escape a valid death sentence is hardly a "routine error." Executive officials are subject to *ultra vires* review when they act "in excess of jurisdiction," *Aid Ass'n for Lutherans*, 321 F.3d at 1173, or when the act at issue is "not within the officer's statutory powers." *Larson*, 337 U.S. at 702. Defendants do not dispute that the "shall order" language in § 3623 indicates a constraint on authority not present in other

3

statutes. Pls' Br. at 7–8. Indeed, they find the "shall" in the more general statute of 18 U.S.C. § 3621 informative, Defs' Br. at 17, but they do not address the "shall" in the more specific statute of § 3623 at all. They also cannot dispute that § 3623 addresses the "public interest." Thus, Defendants' arguments about routine error are, at their core, another assertion that the statute is no obstacle to unfettered discretion. If the statute has limits—and it does—then Defendants' acts here are *ultra vires*.

Put differently, in a case cited by Defendants, the D.C. Circuit stated that an agency act is *ultra vires* if it transgresses "'clear and mandatory' limits that Congress has imposed on [the agency's] authority." Defs' Br. at 15 (quoting *Changji Esquel Textile Co. v. Raimondo*, 40 F. 4th 716, 725 (D.C. Cir. 2022)). That is *exactly* what happened here. The public interest in the death penalty is clear, and the word "shall" in § 3623 denotes a mandatory duty. *See* Pls' Br. at 11. Defendants ignore this and simply claim the old comity rule applies without explaining why the statute should not be given effect.

In one of their only textual arguments, Defendants argue that because the Director makes a finding regarding public interest, the "entire" decision is within his discretion. *See* Defs' Br. at 14. To be sure, Plaintiffs acknowledge there may be discretion where the public interest is debatable. But in the death penalty context, the public interest is beyond clear. *See* Pls' Br. at 11–12. That the Director must make a determination of the "public interest" does not mean the term may be freely redefined to include its opposite—rather, the Director may only recognize what the public interest is. The deliberate use of the term "public interest" is, itself, a constraint on agency discretion that is reviewable in extraordinary circumstances where the defined term leaves no discretion.

Plaintiffs are not effectively seeking the standards of APA review, *contra* Defs' Br at 14–15, because there is a very limited universe of cases where the public interest indisputably favors one outcome. That view is consistent with legislative materials indicating that the public interest determinations *would be reviewable* in extraordinary circumstances and that Congress's decision was to

4

foreclose only APA review, not all review. *See* Pls' Br. at 2 n.1.[1] In contrast, Defendants' interpretation imagines Congress wrote no statute at all. *See, e.g.*, Defs' Br. at 17 (claiming the statute grants "broad discretion" and is "[f]ar from a limitation on the discretion of executive branch officials" (internal quotation marks omitted)). For example, Defendants' argument that § 3623 is only "conceivably" violated when a prisoner is actually released, Defs' Br. at 17, is just another way of saying the executive branch's decision-making is untouchable. Claims are unreviewable before release and moot afterward, under this approach. If the statute has any meaning or any application, then it must constrain executive action that clearly violates the public interest while the prisoner is still in custody.

*Second*, contrary to their claims, Defendants can commit an *ultra vires* violation of § 3623 even if Hanson is still in their custody. *Contra* Defs' Br. at 16–17. Defendants assert that primary jurisdiction entitles them to keep Hanson perpetually because the statute does not say *when* prior to his release the transfer must occur. *See* Defs' Br. at 16. Again, this argument is just another attempt to pretend the statute does not constrain the agency at all. The reference to primary jurisdiction fails to rebut Plaintiffs' point in the opening brief that no transfer request is even needed unless the federal government has primary jurisdiction. *See* Pls' Br. at 12. To say primary jurisdiction alone can defeat a mandatory transfer under § 3623 is to say that § 3623 is able to be nullified by the federal government in every relevant potential application, without exception. This argument proves too much.

Furthermore, because the public interest is *timely* enforcement of a state's valid death sentence, the public interest test *does* impose time constraints. Defendants deny that they are deciding the public interest favors commuting Hanson's sentence, Defs' Br. at 18, but their claim that they can delay releasing him until the last 90 days of a life sentence cannot be construed as meaning anything else,

---

[1] Plaintiffs have argued that Congress recognized the availability of review in extraordinary circumstances amounting to abuse of discretion. This is merely a description of *ultra vires* review pulled from *Little v. Swenson*, 282 F.Supp. 333, 337 (W.D. Mo. 1968), not a claim that the facts of *Little* somehow control here. *Compare* Defs' Br. at 14, *with* Pls' Br. at 2 n.1.

5

*see* Pls' Br. at 13. Because Congress's choice to use the term "public interest" imposes a clear constraint on executive officials, that constraint must be able to be effectuated in the form of a timely transfer.

Halfheartedly, Defendants assert that the statute still has meaning even if it has no deadline and even if the term "public interest" is irrelevant and unknowable because § 3623 "creates an orderly procedure for transferring a qualifying prisoner to State custody upon completion of his federal sentence." Defs' Br. at 18. This argument is easily rejected because there is already a less burdensome approach for such transfers: detainers, where a staff member in a state department of corrections sends what is effectively a letter to BOP. In Defendants' view, a request from an executive officer attaching a certified judgment under § 3623 requires no more of Defendants than does a detainer from a state staff member. Therefore, Defendants' argument treats the supposed "orderly procedure" found in § 3623 as entirely superfluous to the preexisting detainer process based solely on comity. Such an interpretation nullifies the transfer statute and underscores Defendants' interpretive error.

*Third*, § 3623 cannot be read as a grant of pure and untouchable discretion. Defendants rely on the statute's terminology that "if … the Director finds," Defs' Br. at 18, as if that phrasing somehow means Congress's deployment of the term "public interest" was just an afterthought. If Congress had wanted to leave total discretion to determine what the public interest is with the Director, however, it could have written "if the Director so chooses," omitted "public interest," or just declined to enact the statute and relied on comity and detainers. Instead, Congress constrained the Director's discretion to the public interest, which is especially clear in the death penalty context.

Defendants ultimately chafe at straightforward statutory constraints on their discretion, and their efforts to exceed those constraints are exactly the type of extraordinary behavior that an *ultra vires* claim remedies. Congress stated that the executive "shall order" transfers that are in the "public interest," and Defendants have no authority to evade that interest in ordering transfers. The attempt here to assert power beyond their statutory authority should be enjoined.

6

**II. Plaintiffs will likely succeed on their habeas claim, so relief should issue.**

Regarding habeas, Defendants raise an interesting venue question, while inadvertently explaining exactly why venue lies in the Northern District of Texas in their own brief. Defendants' central venue argument on Count I is that the habeas claim is subject to territorial jurisdiction limits. Defs' Br. at 6.[2] But what Defendants fail to note is that although the Supreme Court has said that § 2241(a) imposes territorial limits on "core" habeas challenges, it does *not* impose those same territorial limits on non-core claims. *See Rumsfeld v. Padilla*, 542 U.S. 426, 444 (2004); *see also id.* at 453–54 (Kennedy, J., concurring). Thus, the question of whether venue for Count I must lie in Louisiana depends on whether this is a "core challenge." It is not, and Plaintiffs' habeas claim will likely succeed.

Under *Padilla*, Plaintiffs' habeas claims fall outside what is traditionally considered the core of habeas. As Defendants highlight, no core claim is at issue: "Plaintiffs do not dispute that Hanson was lawfully convicted in a federal court (in the Northern District of Oklahoma) and sentenced to spend the rest of his life in prison." Defs' Br. at 9. "Plaintiffs do not suggest that this conviction has been overturned or invalidated." *Id.* Plaintiffs do not "claim that Hanson's federal sentence has expired such that he ought to be released." *Id.* Defendants' statements demonstrate precisely why Plaintiffs' claim is not within the "core" of habeas.

Put another way, Plaintiffs' claim is not a core habeas claim because the inmate will not be released from all confinement or custody if the claim succeeds. *See Padilla*, 542 U.S. at 441 (noting that the "traditional core of the Great Writ" is "at bottom a simple challenge to physical custody"). Indeed, a good example of a non-core claim is one brought by a sovereign against another sovereign—a challenge that is not "simple" or common because it will not result in the release of the prisoner: the basis for *Padilla*'s focus on the immediate custodian. Defendants imply that such claims do not exist

---

[2] Notably, Defendants' pending venue motion does not involve Count I. *See* Doc. 10 at 1 (seeking to "transfer Counts II and III").

7

but admit in a contrary footnote that such claims do exist. *Compare* Defs' Br. at 8, *with id.* at n.4. No one contends that sovereign habeas claims under 28 U.S.C. § 2241(c)(5) are subject to any of the usual limitations for core prisoner habeas claims because they are not brought on behalf of the prisoner. Defendants offer no textual reason that the prisoner limitations that do not apply to a state habeas claim under § 2241(c)(5) suddenly attach under § 2241(c)(3). Similarly, Plaintiffs are aware of no reason that a § 2241(c)(3) motion is a core habeas motion but a § 2241(c)(5) motion is not, and Defendants have offered no explanation for this. Thus, Plaintiffs correctly proceeded without the prisoner venue restrictions under § 2241(c)(3) just as they would proceed under § 2241(c)(5).

Indeed, to uniquely single out a § 2241(c)(3) action brought by a sovereign state as a core claim here would take the notion of nominal defendants to an extreme. An action in habeas by a state is only cognizable where a state has an injury, and one of the few instances where such injury would occur are in facts like this case. Plaintiffs take the unremarkable view that because Warden Grant indicated their transfer request was denied by the Designation and Sentence Computation Center ("DSCC") in the Northern District of Texas, *see* Doc. 1-1, and not the Warden in Louisiana, *id.*, the proper place to bring the habeas claim is against the relevant official in Texas as opposed to the letter-writer in Louisiana. This interpretation does not open the habeas claim to multiple districts, as the relevant decisionmakers are all in one district. If Plaintiffs had actually sued the Warden in Louisiana, he could presumably argue that he is not violating a law of the United States because he made no determination about the transfer or the public interest. No matter where Plaintiffs filed, the executive could play a shell game that would serve no purpose other than to allow the unlawful custody to persist without a determination on the merits.

Without the restrictions for core habeas claims, "the question of the proper location for a habeas petition is best understood as a question of personal jurisdiction or venue." *Rumsfeld v. Padilla*, 542 U.S. at 451 (Kennedy, J., concurring). Director Tellez cannot dispute that he is subject to personal

8

jurisdiction and venue in the Northern District of Texas because he resides here. Likewise, Warden Grant cannot dispute that he is subject to personal jurisdiction or venue here because he stated that "[t]he [DSCC] has denied the request for transfer," not him, Doc. 1-1. Because the DSCC is in Director Tellez's regional office in Texas, Warden Grant cannot deny he has contacts sufficient for personal jurisdiction or that there is a proper co-defendant who resides here in the Northern District of Texas.

Beyond the venue argument, Defendants have no real answer to the habeas claim—indeed, strangely, their habeas arguments barely acknowledge the law the claim is based on: § 3623. Defendants resort to their primary jurisdiction argument without engaging with the opening brief's arguments on that point at all. *See* Defs' Br. at 9–10. As Plaintiffs indicated in their initial brief, Congress restricted primary jurisdiction by requiring transfers in the public interest, and indeed the transfer statute only applies when primary jurisdiction exists. *See* Pls' Br. at 12. By arguing that Plaintiffs are challenging primary jurisdiction, Defendants are simply repeating the same errant arguments.

Otherwise, aside from their general position that the transfer statute is meaningless, *see supra* Part I, Defendants have no real argument to deny that they have Hanson in custody in violation of 18 U.S.C. § 3623, a law of the United States. They concede that states can bring habeas claims under 28 U.S.C. § 2241. Defs' Br. at 8 n.4. They claim that no case law authorizes suits under § 2241(c)(3), *id.* at 9, but given their concession that case law authorizes suits under § 2241, their failure to point to anything in the statute that limits state claims to § 2241(c)(5) is fatal. Presumably, no State plaintiff habeas suit has apparently cited that particular subsection of § 2241 because standing would limit such State claims, but there is no dispute that Plaintiffs have standing here. At bottom, Plaintiffs have standing and a statute that authorizes their claim, and Defendants have cited nothing to deny the clear application of the statute. Accordingly, in addition to the injunction on the *ultra vires* claim, an injunction or writ is warranted on this non-core habeas claim, too.

### III. Defendants fail to respond to the opening brief on the remaining factors.

Defendants' brief is particularly incredible when it reaches the remaining equity factors, as Defendants deny that there is any irreparable injury from the delay of a death sentence and further assert that Plaintiffs provided no reasons or authority that such delay is an injury. Defs' Br. at 19–20. But the answers and authorities in the opening brief are extensive. *See, e.g.*, Pls' Br. at 8–9. Indeed, the clearest binding answer is found in the *Calderon* citation on page 9 of Plaintiffs' opening brief:

> A State's interests in finality are compelling when a federal court of appeals issues a mandate denying federal habeas relief. At that point, having in all likelihood borne for years "the significant costs of federal habeas review," the State is entitled to the assurance of finality. When lengthy federal proceedings have run their course and a mandate denying relief has issued, finality acquires an added moral dimension. Only with an assurance of real finality can the State execute its moral judgment in a case. Only with real finality can the victims of crime move forward knowing the moral judgment will be carried out. **To unsettle these expectations** is to inflict a **profound injury to the "powerful and legitimate interest in punishing the guilty," an interest shared by the State and the victims of crime alike**.

*Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (emphases added) (internal citations omitted). Defendants' argument that the delay for federal habeas review authorizes more delay here, Defs' Br. at 20, is plainly contradicted by *Calderon* and by the eight other authorities cited in the opening brief, Pls' Br. at 9. The compelling interest attaches after "direct appeal and post-conviction remedies" *Id.* (citing *Bowles v. DeSantis*, 934 F.3d 1230, 1248 (11th Cir. 2019)). Defendants' contrary claim is frivolous.

Defendants' brazen approach to delaying a death sentence only confirms that their true goal here is to harm the state and the public by advancing a political agenda or the inmate's interests in delay or commutation of a death penalty sentence. They openly advocate delay of the death sentence, Defs' Br. at 2, 19–20, and gratuitously discuss problems with Oklahoma's execution process under a different protocol and different staff many years ago, Defs' Br. at 4. In short, Defendants seek to inflict great harm on the public interest, and especially on Mary Bowles and her family, by commuting a death sentence. Equity disfavors harming the State and the public, especially in a case that turns entirely on the "public interest" in timely executions. An injunction is warranted.

November 2, 2022                                Respectfully submitted,

*/s/ John C. Sullivan*
John C. Sullivan
S|L LAW PLLC
Texas Bar Number: 24083920
610 Uptown Blvd., Suite 2000
Cedar Hill, TX 75104
Phone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

Bryan Cleveland
  *Chief, Reserved Powers Protection Unit*
Will Flanagan
  *Assistant Solicitor General*
OKLAHOMA ATTORNEY GENERAL'S OFFICE
313 NE 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
bryan.cleveland@oag.ok.gov

*Counsel for Plaintiffs*

11

**CERTIFICATE OF SERVICE**

I hereby certify that the undersigned document was served on all parties who have appeared in the case electronically via ECF on November 2, 2022, or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

                                        */s/ John C. Sullivan*
                                        John C. Sullivan