IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| **STATE OF OKLAHOMA**, <br><br> **JOHN M. O'CONNOR**, in his official capacity as Attorney General of Oklahoma, and <br><br> **STEVE KUNZWEILER**, in his official capacity as District Attorney for District 14 of Oklahoma (Tulsa County) <br>                       *Plaintiffs*, <br><br> v. <br><br> **HERIBERTO TELLEZ**, in both his official capacity as Regional Director of the South Central Region of the Federal Bureau of Prisons, and his individual capacity, <br><br> **COLETTE S. PETERS**, in both her official capacity as Director of the Federal Bureau of Prisons, and her individual capacity, <br><br> **S.R. GRANT**, in both his official capacity as Acting Complex Warden of FCC Pollock, and his individual capacity, and <br><br> **FEDERAL BUREAU OF PRISONS**, <br>                       *Defendants*. | Civil Action No: 7:22-cv-00108-O |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404**

Once it is established that the Northern District of Texas is a proper venue for at least some of Plaintiffs' claims—a point Defendants *concede*—the Wichita Falls Division is obviously appropriate as a pure matter of convenience for the parties. Divisions have been a matter of convenience, not venue, since 1988, and Wichita Falls is the closest division in the State of Texas for Plaintiffs coming from Oklahoma. This convenience rationale was noted in the Complaint, and Defendants entirely failed to address it anywhere in their overwrought (and erroneous) laments of forum-shopping.

More importantly, though, Defendants' motion to transfer Counts II and III for convenience under 28 U.S.C. § 1404 is not yet ripe for decision. The motion presumes that this Court will reach the venue issue on Count I in the preliminary injunction, presumes this Court will rule in Defendants' favor on venue on Count I, and presumes how Plaintiffs would respond to that hypothetical ruling. Any opinion on the convenience motion would be purely advisory at this stage.

The motion is also not urgent, as it has no bearing on the pending motion for a preliminary injunction. A motion under 28 U.S.C. § 1404 concedes that venue is proper but merely asserts that another venue is more convenient. *See, e.g.*, *Franco v. Mabe Trucking Co., Inc.*, 3 F.4th 788, 793 (5th Cir. 2021). Thus, because Defendants concede that venue is proper as to Counts II and III, the court need not resolve the convenience motion before granting a preliminary injunction.

Plaintiffs nevertheless respond now because Defendants indicated that they would move to expedite their convenience motion, and Plaintiffs recognized that the rationale for why the convenience motion need not be expedited has substantial overlap with the rationale for why it must be denied. Accordingly, Plaintiffs explain below why this motion must be denied.

## ARGUMENT

### I. Defendants' motion is based on factual inaccuracies and wrong assumptions.

As an initial matter, Defendants' motion misunderstands and misrepresents key details relating to venue, and some background is necessary to explain the true posture of the case.

1

The initial transfer request in this case by DA Kunzweiler was processed and rejected by the Designation and Sentence Computation Center ("DSCC"), a Bureau of Prisons ("BOP") entity *in the Northern District of Texas*. *See* Doc. 1-1. Despite Defendants' repeated claim that Defendants in the Northern District of Texas merely "confirmed" that a transfer was being denied, Doc. 10 at 3, 6, Warden Grant specified in his letter to DA Kunzweiler that "[t]he Designation and Sentence Computation Center (DSCC) has denied the request for transfer, as it is not in the public's best interest," and then added that he was sending a letter with the denial instead of DSCC because BOP policy states that "the Warden must inform the requesting State of the denial and the reason." Doc. 1-1. Thus, Warden Grant told Plaintiffs that the denial was from the DSCC in the Northern District of Texas, not from him. *Id.*; *see also* Designations, Federal Bureau of Prisons[1] ("The Bureau's classification and designation functions are centralized at the Designation and Sentence Computation Center (DSCC), located at the Grand Prairie Office Complex in Texas."). The decision was not "confirmed" in the Northern District of Texas—it was *made* in the Northern District of Texas, by Defendant's own admission. *See* Doc. 1-1.

Instead of suing anonymous staffers at the DSCC in the Northern District of Texas, General O'Connor inquired with Director Tellez, the regional director in the same District, as to whether the DSCC staffers were in fact opposing the transfer in line with Director Tellez's views. Doc. 1-2. General O'Connor did so because the BOP Director has delegated the statutory power to comply with 18 U.S.C. § 3623 to "[t]he respective Regional Director." BOP Program Statement 5140.35, ¶ 5(b). Director Tellez, in response, did not deny that he was the decisionmaker responsible for denying the transfer, nor did he deny that the Texas staff conveyed his view. *See* Doc. 1-3. Rather, his response is

---

[1] https://www.bop.gov/inmates/custody_and_care/designations.jsp.

2

written as if he is conveying *his* decision. *See, e.g., id.* ("I am unaware of any indication another sovereign may properly possess primary jurisdiction of him.").

In short, all the key decisionmakers in the decision at issue are in the Northern District of Texas: Director Tellez is here and the DSCC staff are all here. Warden Grant's only apparent role in the decision was communicating DSCC's views to DA Kunzweiler, and the relevant Defendant witnesses who made the decision and could potentially be needed for examination or testimony are here in this District. Defendants' claim that "the relevant documents and any potential witnesses likely reside primarily in the Alexandria Division of the Western District of Louisiana," Doc. 10 at 5, is plainly incorrect, as it is refuted by their own prior statements. *See* Doc. 1-1, 1-3.[2]

Seeking to reach the key federal government decisionmakers in Texas, Plaintiffs sued in the Northern District of Texas, where no one could possibly dispute that venue exists for Counts II and III. *See* 28 U.S.C. § 1391(e).[3] With the abolition of divisional venue in 1988, the question of divisions within a district is now a question of convenience absent local rules requiring otherwise. *See* Wright & Miller, 14D Fed. Prac. & Proc. § 3809 (4th ed.). While some districts have local rules imposing divisional venue requirements, *see, e.g.*, E.D. Va. L. Civ. R. 3(c), this District does not, *see generally* N.D. Tx. L. Civ. R. As such, recognizing that divisions are a matter of convenience in this District, Plaintiffs concluded that the most convenient division in the Northern District of Texas is Wichita Falls. This is the closest courthouse in this District to Plaintiffs, who would rather not be traversing the country to federal courts in other states to force Defendants to follow the clear dictates of the law. Moreover,

---

[2] The only other possibility is that Defendants are telling the truth now about the decision being made in Louisiana but were intentionally misleading Oklahoma officials in their letters. That scenario, obviously, would bolster Plaintiffs' claims of an egregious abuse of discretion even further.

[3] Defendants suggest, without any explanation, that Plaintiffs should have sued in the "more plausible" Western District of Oklahoma, the Northern District of Oklahoma, or even the D.C. Circuit. *See* Doc. 10 at 2 n.2. Had Plaintiffs sued in these locations, they have little doubt that a motion to transfer based on similar arguments would have quickly followed.

Wichita Falls is equally convenient to both Plaintiffs and the decision-maker Defendants, as it is situated roughly halfway between Oklahoma City and Dallas.[4]

At no point during Defendants' screed about "forum-shopping" do they acknowledge the obvious geographical, logistical, and legal sense that it makes for Oklahoma state officials to sue in the most relevant district (the Northern District of Texas, where the admitted decisionmakers reside) and in the most convenient division in that district for those Oklahoma officials (Wichita Falls). Plaintiffs are aware of no case law (and Defendants cite none) holding that a plaintiff must choose a *less* convenient division for them within a proper District, especially since divisions are now a matter of convenience and not venue. Rather, Defendants admit that a "plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute." Doc. 10 at 4 (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008)). Furthermore, Defendants' decision to move to transfer to Louisiana rather than another division here, shows that they have no legal argument against Plaintiffs' choice of division. If they had one, they would have made that motion instead of resorting to overheated rhetoric about a filing in the key Defendants' *own district* that chooses the most obviously convenient forum within that district for Oklahomans. This deployment of frenzied rhetoric in the place of legal argument undermines their motion.

Curiously, after striving to avoid discussing the issue of public interest in the preliminary injunction briefing, Defendants want to discuss it here. In particular, Defendants assert that Plaintiffs' decision to file in Wichita Falls "undermine[s] public confidence in the administration of justice." Doc. 10 at 2. In Defendants' view, the "public interest" is violated when Plaintiffs choose a proper and convenient forum for their lawsuit near Defendants, but not when a murderer of an elderly woman escapes a validly bestowed punishment. That contrast speaks volumes.

---

[4] Because no one disputes the authenticity of Warden Grant's letter, his presence is not anticipated, which is why Plaintiffs focused the convenience analysis on Oklahoma and Texas.

4

## II. Defendants' motion is not ripe.

Defendants' convenience motion seeks to transfer Counts II and III of the Complaint to the Western District of Louisiana, Alexandria Division under 28 U.S.C. § 1404. Doc. 10 at 1. They have *not* filed a motion to dismiss Count I under Fed. R. Civ. P. 21(b)(3) and 28 U.S.C. § 1406, however, instead observing they have only briefed at the preliminary injunction stage whether such a motion is likely to succeed. *See id.* at 3–4. Their convenience motion simply assumes they will win their not-yet-filed motion to dismiss and proceeds on that basis. *See generally id.* The motion is not ripe, however, for at least four reasons tied to Defendants' assumptions.

*First*, Defendants' assumption of success on one of three claims only underscores that the case is not yet ready for transfer. The convenience statute only permits transfer of a "civil action," not a part of an action. 28 U.S.C. § 1404; *see also, e.g., Alexander v. Carmin*, No. 18CV100, 2018 WL 5839673, at *2 (E.D. Ky. Nov. 7, 2018) (noting that "the plain language of [28 U.S.C. § 1404(a)] authorizes only the transfer of an entire action, not the transfer of individual claims within an action" (quoting *In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1377 (J.P.M.L. 2003))); *cf. Ex Parte Collett*, 337 U.S. 55, 58 n.6 (1949) (noting that the phrase civil action refers to the "suit"). To be sure, if a claim is severed or dismissed, then Defendants could move for a transfer of the remaining case, but no such severance or dismissal has been litigated. At a minimum, Defendants cannot seek to transfer Counts II and III until they actually file—and prevail on—a motion to dismiss Count I of the Complaint.

*Second*, and relatedly, Defendants' motion assumes they will win in contesting the proper habeas corpus venue. But, as explained more fully in the preliminary injunction briefing, Plaintiffs are likely to succeed on the habeas claim here because it is not a "core" habeas claim and thus is not subject to the same filing requirements as a prisoner. At an absolute minimum, Defendants would need to wait

5

to file this convenience motion until this Court's ruling on who is likely to succeed on venue on the habeas claim.

*Third*, Defendants' motion assumes the court will reach the habeas venue issue in a preliminary injunction ruling. As explained more fully in the preliminary injunction briefing, the Court can grant the injunction on the *ultra vires* claim alone without wading into the habeas venue question at this stage. Thus, Defendants would also need to wait to see if this Court actually rules on who is likely to succeed on the venue question on Count I.

*Fourth*, Defendants' motion presumes how Plaintiffs will respond if the Court reaches the habeas corpus venue issue in the preliminary injunction ruling and decides that Plaintiffs are unlikely to succeed on that claim. But if the Court rejected Plaintiffs' view of the proper habeas venue, Plaintiffs have several options:

(A) Plaintiffs could voluntarily dismiss the habeas claim and Warden Grant. That result would likely require the denial of this convenience motion because the Western District of Louisiana would probably not then be a proper venue for the remaining claims and parties.

(B) Plaintiffs could voluntarily dismiss and refile only the habeas claim in the Western District of Louisiana, and then this Court and the parties would have to weigh the novel question of whether related facts allow transfer when the remaining claims and parties are not otherwise transferable.

(C) Plaintiffs could do nothing unless and until Defendants move to dismiss Count I and then to litigate the Defendants' motion, which would leave the dismissal to this Court.

(D) Plaintiffs could move the Court to sever and transfer only Count I in the event Plaintiffs filed a motion to dismiss, as there is extensive case law requiring the severance and transfer of a habeas claim by itself when the delay from transferring the entire case would prejudice plaintiffs. *See Pamplona ex rel. Pamplona v. Hernandez*, No. 08CV2205, 2009 WL 578578, at *3 (S.D. Cal. Mar. 5, 2009) (collecting citations).

The hypotheticals are numerous, especially when no motion to dismiss is on file. Defendants cannot simply assume that a not-yet-filed motion will succeed, add in assumptions about what this Court and the Plaintiffs will do, and then seek an immediate convenience transfer based on all of those loaded assumptions. Put simply, Defendants' motion to transfer Counts II and III is not ripe for briefing or decision unless and until Count I is dismissed (at a minimum). Because Count I is still in the case—and should remain so—the convenience motion should be denied at this time.

### III. Defendants concede that venue is proper as to Counts II and III.

Defendants insisted that briefing on this motion was needed now because all venue motions need to be decided before a preliminary injunction motion. They are clearly wrong under precedent. By filing a motion to transfer *for convenience* under 28 U.S.C. § 1404, Defendants concede that venue is proper and therefore that Counts II and III are properly before this Court. *See Franco*, 3 F.4th at 793.

If Defendants meant to contest venue as improper as to Counts II and III, then this convenience motion must be denied for two reasons. *First*, a court can only grant a motion to transfer venue for convenience if venue is proper in the first place. *See id.* If Defendants meant to assert that venue is improper, Defendants needed to file under a different statute, and their § 1404 motion must be denied for filing under the wrong statute. *Second*, even if this Court gave the federal government Defendants the benefit of a *pro se* party and favorably construed any procedural defect in their motion, construing the motion as a § 1406 venue motion would not save it because divisional venue has not existed since 1988. *See supra* Part I. Defendants do not argue that the Northern District of Texas is an improper venue for Counts II and III—and, indeed, appear to agree that the Northern District of Texas would be proper. *See* Defs' Motion at 2–3 (pointing repeatedly to a different division in this district). Because divisions have been a matter of convenience and not venue for 34 years—a fact Defendants likely recognize by seeking transfer to Louisiana and not another division—they lack a cognizable claim under § 1406.

Accordingly, because Defendants have conceded venue is proper as to Counts II and III by filing this § 1404 motion, a preliminary injunction may still issue as to both counts regardless of how this Court ultimately resolves the convenience analysis.

**IV. Defendants' proposed transferee forum is not a convenient forum.**

The convenience motion should also be denied because the Northern District of Texas is a more convenient forum than the Western District of Louisiana. As the Fifth Circuit has recently explained, there are two tests to consider when assessing a transferee forum under § 1404. *See In re Planned Parenthood Fed'n of Am., Inc.*, No. 22-11009, --- F.4th ----, 2022 WL 16549164, at *2 (5th Cir. Oct. 31, 2022). *First*, the transferee forum must be a proper venue. *Second*, the transferee forum must be "*clearly* more convenient than the venue chosen by the plaintiff." *Id.* (emphasis added) (quoting *In re Volkswagen*, 545 F.3d at 315.). The Fifth Circuit uses a set of private and public interest factors to assess whether the movant has met his burden for a convenience transfer. *See id.* "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

Assuming a hypothetical scenario where the Western District of Louisiana is a proper venue for remaining claims and parties, *but see supra* Part II, Defendants cannot carry their burden to show that the Western District of Louisiana is "clearly" more convenient than the Northern District of Texas. Under the private factors, the sources of proof are largely in Oklahoma or in North Texas, the relevant witnesses for compulsory process are the Director and the DSCC staff in North Texas, the

8

cost of attendance is about equal for the Oklahoma and Texas witnesses (with perhaps some additional costs for Tulsa witnesses), and there is no practical problem with having a hearing or trial in the Northern District of Texas. To put some specific numbers on the situation: a hearing in Wichita Falls would be a 2-hour drive for both the Oklahoma City plaintiffs and the Texas defendants, and about a 3.5-hour drive for the Tulsa plaintiff; a hearing in Alexandria, Louisiana, would be a 7.5-hour drive for the Oklahoma City and Tulsa plaintiffs, and a 4.5-hour drive for the Texas defendants. The Louisiana travel burden would double (or even quadruple) for all of the relevant witnesses and evidence, and all of this would happen merely so that the one piece of evidence in Louisiana—a letter that no one disputes Warden Grant wrote conveying information from North Texas—could be authenticated.[5] The private factors clearly favor the Northern District of Texas over the Western District of Louisiana, not the other way around.

The public factors are no better for Defendants. From a court congestion perspective, the Western District of Louisiana is worse because it has seen a 52.9% increase in filings over the past year and has judicial vacancies, while the Northern District of Texas has seen a 9.8% decrease in filings over the past year and has no judicial vacancies. *See* Federal Court Management Statistics—Comparison Within Circuit, Administrative Office of the U.S. Courts, June 30, 2022.[6] To the extent there is any local interest at play, it weighs in favor of reviewing the decisions of Texas-based federal officials in Texas. The remaining public factors are indifferent, as both federal courts can review federal law, and there is no apparent conflict of law issue at this stage that would favor one forum

---

[5] Again, the only apparent way to get around this issue would be to admit that the Defendants' letters to Oklahoma officials were false when they pointed to officials in the Northern District of Texas as being the decisionmakers here. *See supra* n.2.

[6] https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2022/06/30-3.

9

over another. In sum, the public factors either favor staying in Texas or are in equipoise, which is a far cry from satisfying Defendants' burden that they clearly favor transfer.

At bottom, it appears Defendants' true motivation in this motion is to delay the case and air their grievances—not to seek a more convenient forum. After all, if they believed all their complaints about forum-shopping and which courthouse is appropriate in North Texas, they would ask this Court to hear the case in a different division, not to transfer to Western Louisiana. Their dilatory behavior is certainly consistent with their anti-death penalty approach of seeking "to inflict a profound injury" to the public and the State by delaying the timely completion of a death sentence. *See Calderon v. Thompson*, 523 U.S. 538, 556 (1998). (Defendants, quite notably, never address in any filing why exactly it took months to inform DA Kunzweiler of their supposedly by-the-book decision.) Defendants' desire for delay is no reason to grant a § 1404 motion even if the motion was ripe.

## CONCLUSION

The clock is ticking and Defendants are predictably resorting to dilatory procedural tactics, including filing baseless motions and engaging in heated rhetoric to advance the *BOP's* interest over the public's interest. This Court should deny the present motion.

| | |
|---|---|
| November 2, 2022 | Respectfully submitted,<br><br>*/s/ John C. Sullivan*<br>John C. Sullivan<br>S\|L LAW PLLC<br>Texas Bar Number: 24083920<br>610 Uptown Blvd., Suite 2000<br>Cedar Hill, TX 75104<br>Phone: (469) 523-1351<br>Facsimile: (469) 613-0891<br>john.sullivan@the-sl-lawfirm.com<br><br>Bryan Cleveland<br>  *Chief, Reserved Powers Protection Unit*<br>Will Flanagan<br>  *Assistant Solicitor General*<br>OKLAHOMA ATTORNEY GENERAL'S OFFICE<br>313 NE 21st Street<br>Oklahoma City, OK 73105<br>Phone: (405) 521-3921<br>bryan.cleveland@oag.ok.gov<br><br>*Counsel for Plaintiffs* |

## CERTIFICATE OF SERVICE

I hereby certify that the undersigned document was served on all parties who have appeared in the case electronically via ECF on November 2, 2022, or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

*/s/ John C. Sullivan*
John C. Sullivan