UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| STATE OF OKLAHOMA et al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 7:22-cv-00108-O |
| § | |
| HERIBERTO TELLEZ et al., § | |
| § | |
| Defendants. § | |

**OPINION & ORDER ON PLAINTIFFS' MOTION FOR WRIT OF HABEAS CORPUS OR, IN THE ALTERNATIVE, MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION**

Before the Court are Plaintiffs' Motion for a Writ of Habeas Corpus or, in the Alternative, a Temporary Restraining Order/Preliminary Injunction (Pls.' Mot., ECF No. 2) and Brief in Support (Pls.' Br. in Supp., ECF No. 3), filed October 25, 2022; Defendants' Response to Plaintiffs' Motion for Writ of Habeas Corpus or Alternately for Temporary Restraining Order/Preliminary Injunction (Defs.' Resp., ECF No. 11), filed October 30, 2022; and Plaintiffs' Reply Brief in Support of Plaintiffs' Motion for a Writ of Habeas Corpus or, in the Alternative, a Temporary Restraining Order/Preliminary Injunction (Pls.' Reply, ECF No. 19), filed November 2, 2022. The parties have briefed the issues and Plaintiffs' motion is ripe for review.

**I.    BACKGROUND**

Officials for the State of Oklahoma and the Federal Bureau of Prisons ("BOP") disagree about which sovereign should have custody of John Hanson, a convict who was sentenced *to life in prison* for a series of federal crimes and *to death* by the State of Oklahoma for the carjacking, kidnapping, and murder of 77-year-old Oklahoman Mary Bowles and for the murder of 44-year-old Oklahoman, Jerald Thurman, who tried to intervene to help Ms. Bowles. Hanson is currently serving his life sentence in federal prison in Pollock, Louisiana.

Title 18 U.S.C. § 3632 provides for the transfer of convicts between federal and state authorities upon the state's request. Following the statutory process, the State of Oklahoma asked BOP to immediately transfer Hanson into state custody so Oklahoma can timely complete his execution, which is scheduled for December 15, 2022. BOP has refused to release Hanson because BOP's Designation and Sentences Computation Center ("DCCS") determined, and Regional BOP Director Heriberto Tellez confirmed, that transferring him to state custody for execution would not be in the "public's best interest." *See* 18 U.S.C. § 3632(3); Compl., Exs. 1, 3, ECF No. 1.[1]

With their complaint and petition for a writ of habeas corpus, the State of Oklahoma, Oklahoma Attorney General John M. O'Connor, and District Attorney for Tulsa County Steve Kunzweiler ("Plaintiffs") simultaneously seek interim injunctive relief from this Court ordering Regional BOP Director Heriberto Tellez, BOP Director Colette S. Peters, Warden of FCC Pollock (and Hanson's custodian) S.R. Grant, and the Federal Bureau of Prisons ("Defendants") to transfer John Hanson into state custody. Plaintiffs' rest their request for injunctive relief on the grounds (1) that Oklahoma is entitled to a writ of habeas corpus because BOP has kept the inmate in federal custody in violation of the law of the United States, 28 U.S.C. § 2241(c)(3), and (2) that Defendants

---

[1] The transfer statute at issue provides:

> The Director of the Bureau of Prisons shall order that a prisoner who has been charged in an indictment or information with, or convicted of, a State felony, be transferred to an official detention facility within such State prior to his release from a Federal prison facility if—
> (1) the transfer has been requested by the Governor or other executive authority of the State;
> (2) the State has presented to the Director a certified copy of the indictment, information, or judgment of conviction; and
> (3) the Director finds that the transfer would be in the public interest.

18 U.S.C. § 3623. Section 3625 of Title 18 removes BOP decisions from review under the Administrative Procedure Act ("APA"). 18 U.S.C. § 3625 ("The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter.").

have acted *ultra vires* in their refusal to transfer Hanson to state custody as required by § 3623. Defendants assert this Court lacks jurisdiction to hear either claim and, even if jurisdiction is proper, that Plaintiffs have failed to support a claim for injunctive relief. Having considered the parties' briefing, the facts, and the law, the Court **DISMISSES** Plaintiffs' habeas claim, **DEFERS** ruling on the balance of the motion and **ORDERS** the parties to provide additional briefing on the issues identified below.

## II. LEGAL STANDARDS

Plaintiffs seek a preliminary injunction, which requires them to show (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm in the absence of an injunction; (3) that the balance of hardships weighs in their favor; and (4) that issuance of the preliminary injunction will not disserve the public interest. *Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013).

### A. Petition for Writ of Habeas Corpus

A district court may issue a writ of habeas corpus under Title 28 U.S.C. § 2241 where the petition alleges a prisoner is "in custody in violation of the Constitution or laws . . . of the United States." § 2241(c)(3). Habeas claims are subject to a traditional jurisdictional rule that requires writs to issue from the judicial district in which the prisoner is confined and his custodian is present. *Rumsfeld v. Padilla*, 542 U.S. 426, 444–45 (2004). This is known as the immediate custodian rule.

### B. Claim of Ultra Vires Conduct

"[A]n *ultra vires* challenge . . . is available only for the narrow purpose of obtaining injunctive relief against agency action taken 'in excess of its delegated powers and contrary to specific prohibition' in the law." *Fed. Express Corp. v. United States Dep't of Com.*, 39 F.4th 756,

763 (D.C. Cir. 2022) (cleaned up) (quoting *Leedom v. Kyne*, 358 U.S. 184, 188 (1958)). This exacting standard means *ultra vires* claims will succeed only in cases of "extreme agency error where the agency has stepped so plainly beyond the bounds of its statutory authority, or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court." *Id.* at 764 (cleaned up).

### III. ANALYSIS

#### A. This Court Lacks Jurisdiction Over Oklahoma's Habeas Petition

To prevail on the habeas claim, Plaintiffs must show a substantial likelihood that their habeas petition will succeed on the merits, that they will suffer irreparable harm without an injunction, and that the balance of equities and public interest weigh in their favor. *Topletz v. Skinner*, 7 F.4th 284, 293 (5th Cir. 2021). But before it decides the question of likely success at the merits stage, the Court must first determine whether it has proper jurisdiction to decide the habeas question at all. It does not.

The immediate custodian rule, which dictates proper jurisdiction of habeas petitions, applies to all "core" habeas claims—or those challenges to a prisoner's "present physical confinement." *Rumsfeld*, 542 U.S. at 434–35, 438–39. If a plaintiff's habeas claim is deemed "non-core," the petition is freed from these strict jurisdictional confines and can be heard in any district with proper jurisdiction over a decisionmaker who "exercis[es] legal control" of the prisoner. *Id.* at 439. But where the immediate custodian rule applies, the "custodian's absence from the territorial jurisdiction of the [presiding] district court is fatal to habeas jurisdiction." *Id.* at 445.

Applying traditional jurisdictional rules to the present case, the Court is clearly without proper authority to review Oklahoma's habeas claim because Hanson's uncontested immediate custodian—S.R. Grant, the acting warden of the federal prison in Pollock, Louisiana—resides in

4

the Western District of Louisiana (where Hanson is presently confined) and is absent from the Northern District of Texas. The Supreme Court's discussion of potential exceptions to the immediate custodian rule in *Rumsfeld* does not alter this analysis. 542 U.S. 426 at 438–39. There the Supreme Court was explicit that exceptions to the immediate custodian rule—which permit habeas petitions to proceed in non-custodial jurisdictions—only come into play when "there is *no immediate custodian* with respect to the challenged 'custody.'" *Id.* at 439 (emphasis added).[2] Because there *is* an immediate custodian with respect to Hanson's challenged custody, the Court does not have proper jurisdiction over the habeas claim.

Plaintiffs' effort to characterize their petition as a "non-core" habeas challenge worthy of an exception to the immediate custodian rule is unavailing. Because it is a "non-core" challenge, they argue, a court with jurisdiction over the Regional BOP Director (such as the Northern District of Texas) may properly hear this claim. Plaintiffs assert that their habeas challenge is "non-core" because (1) they do not dispute Hanson's lawful conviction or the validity of his sentence; (2) they do not claim that Hanson's federal sentence has expired and that he ought to be released; (3) and Hanson will not be released from confinement if their claim succeeds. Pls.' Br. in Supp. 7, ECF No. 3. But these arguments are another way of saying Plaintiffs do not contest the *validity of the conviction that resulted in* Hanson's current confinement. Indeed, the crux of Plaintiffs' argument is that Hanson should be immediately released and confined to state, rather than federal, custody. Despite Plaintiffs' creative efforts to reframe their petition otherwise, this is clearly a "core" habeas challenge to Hanson's "present physical confinement."

As such, the immediate custodian rule applies and deprives this Court of subject matter

---

[2] And while it is true that the Supreme Court has deviated from this traditional rule in "exceptional case[s]," *id.* at 453–54, Plaintiffs cite no decision with facts similar to the instant case (*e.g.*, one sovereign's disputing an inmate's confinement in the custody of the other sovereign) in which it relaxed the standard rule to permit the case to proceed in a non-custodial jurisdiction.

jurisdiction over the petition. Hanson's immediate custodian is located in the Western District of Louisiana, not the Northern District of Texas. Accordingly, the Western District of Louisiana is the appropriate venue for Plaintiffs' core habeas challenge. Thus, the Court **FINDS** that it lacks jurisdiction over Plaintiffs' habeas petition, **DISMISSES** the claim, and necessarily declines to resolve the preliminary injunction on this basis.

### B. Section 3623 Does Not Expressly Preclude Judicial Review and an *Ultra Vires* Claim Provides the Only Means of Review

To resolve Plaintiffs' motion for injunctive relief on their *ultra vires* claim, the Court must decide whether BOP has acted in obstinate defiance of its statutory authority. *Fed. Express Corp.*, 39 F.4th at 764. "Only [agency] error that is 'patently a misconstruction of [a statute],' that 'disregards a specific and unambiguous statutory directive,' or that 'violates some specific command of a statute' will support [*ultra vires*] relief.'" *Id.* (cleaned up).

Deciding this question requires the Court to make a threshold jurisdictional determination about whether it has judicial review of the subject agency action. "Judicial review for *ultra vires* agency action 'rests on the longstanding principle that [if an agency has "openly crossed a congressionally drawn line in the sand"], the courts generally have jurisdiction to grant relief'" in equity. *Id.* at 763, 765. "This nonstatutory form of judicial review survived the enactment of the APA" and is available when "(i) there is no express statutory preclusion of all judicial review; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Id.* at 763 (cleaned up).

The first two prongs required for judicial review of Plaintiffs' *ultra vires* claim are met here. Defendants first argue they are entitled to sovereign immunity and that this Court cannot hear the *ultra vires* claim because Congress's withdrawal of APA review under 18 U.S.C. § 3625

"arguably forecloses *any* judicial review of BOP's decisions regarding prisoner transfers under § 3623" See Defs.' Resp. 12–15, ECF No. 11 (emphasis in original). But the Court disagrees.

Section 3625's withdrawal of APA review alone is not an express statutory preclusion of *all* judicial review. It is merely an express preclusion of APA review. Nor is the Court persuaded that the "public interest" is so broad a term that it lacks any objective standards by which this Court could review the BOP Director's transfer decision. *See* Defs.' Resp. 13, ECF No. 11. Courts regularly review agency conduct wherein Congress has instructed officials to act in accordance with "the public interest," so the term is not as plainly unreviewable as Defendants suggest. *See, e.g.*, *Huawei Technologies USA, Inc. v. FCC*, 2 F.4th 421 (5th Cir. 2021); *Jean v. Gonzales*, 452 F.3d 392 (5th Cir. 2006); *Keating v. FAA*, 610 F.2d 611 (9th Cir. 1979). More importantly, the availability of judicial review of *ultra vires* claims turns on express, not implied, preclusion. *Fed. Express Corp.*, 39 F.4th at 763.

Next, the Court is unaware of, and Defendants do not offer, any alternative procedure by which review would be available. As such, an *ultra vires* challenge is the proper means by which Plaintiffs may challenge the agency's alleged violation of its statutory authority, as they have done here. *See Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1172–73 (D.C. Cir. 2003) (noting availability of *ultra vires* review despite foreclosure of APA review).

### C. The Court Defers its Ruling on Plaintiffs' *Ultra Vires* Claim Until the Parties Provide Additional Briefing on the Issue

Thus, the crux of the parties' dispute is whether the third prong of a proper *ultra vires* claim—that "the agency plainly act[ed] in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory"—has been satisfied. *Fed. Express Corp.*, 39 F.4th at 763. It is with respect to this prong that the Court requires additional briefing.

Plaintiffs point to the statute's mandatory transfer language ("shall") to suggest that the

BOP Director lacks discretion regarding the transfer decision provided the other statutory obligations have been met, as they are here. Pls.' Br. in Supp. 7–13, ECF No. 3.[3] Plaintiffs also argue that Defendants have blatantly disregarded the "public interest"—a concept they claim clearly favors timely execution in the context of the death penalty. *Id.* Moreover, any such transfer must take place *immediately* (not 90 days prior to completion of Hanson's term) because the public interest favors *timely* completion of death penalties. Pls.' Reply 5–6, ECF No. 19. In Plaintiffs' view, taken together these assertions indicate the BOP Director has violated an unambiguous statutory command to transfer Hanson to state custody and has acted *ultra vires*.

Defendants counter that the statutory language of § 3623 makes clear that the Director's transfer decision is wholly discretionary, and that transfer is only mandatory "*prior to [the prisoner's] release from a Federal prison facility*," and only "*if . . . the Director finds* that the transfer would be in the public interest." Defs.' Resp. 15, 18, ECF No. 11 (emphasis in original). Defendants claim that because the BOP Director has, in his discretion, found that delivering Hanson to state custody for execution is not in the public interest, transfer is not mandatory and the State of Oklahoma is without recourse. *Id.* at 18–19; Compl., Ex. 3, ECF No. 1. Importantly, Defendants also argue that there can be no *ultra vires* claim unless and until BOP refuses to transfer Hanson to state custody "prior to his release," which—according to BOP policy—customarily occurs 90 days prior to the end of a prisoner's federal imprisonment term. Defs.' Resp. at 16–18 (citing BOP Program Statement No. 5140.35 §§ 1, 5(b) (Sept. 12, 2021)).

In sum, the parties' dispute comes down to a disagreement about two statutory phrases in § 3623: First, the meaning of the "public interest" and whether the BOP Director in fact has

---

[3] In addition to the BOP Director's determination that the transfer is in the public interest, 18 U.S.C. § 3623 requires that: (1) transfer has been requested by the Governor or other executive authority of the State and (2) the State has presented to the Director a certified copy of the indictment, information, or judgment of conviction. 18 U.S.C. § 3623.

discretionary authority to determine the public interest in the context of the death penalty. Second, when "prior to his release" a transfer must take place, if at all.

Therefore, before the Court can resolve Plaintiffs' request for an injunction on the *ultra vires* claim, the Court must first interpret § 3623, the meaning of which the parties strongly contest and which their current briefing does not adequately address. Only after engaging in this statutory construction can the Court decide whether BOP has "plainly act[ed] in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Fed. Express Corp.*, 39 F.4th at 763. To this end, the Court orders the parties to address the following issues, applying the "traditional tools of statutory construction," *F.A.A. v. Cooper*, 566 U.S. 284, 291 (2012):

1. **Brief the meaning of the "public interest."** When reviewing an agency official's discretionary determination of the "public interest," the Fifth Circuit considers whether that official's exercise of discretion was "rational and connected to the statutory scheme." *Jean*, 452 F.3d at 397; *see also Perez Pimentel v. Mukasey*, 530 F.3d 321, 325–26 (5th Cir. 2008) (confirming that the standard for review of discretionary authority in *ultra vires* challenges is whether the agency action was "rational and connected to the statutory scheme"). The parties' discussion should address whether the BOP Director's decision under § 3623 was "rational and connected to the statutory scheme" and should employ the traditional tools of statutory construction.

2. **Brief the meaning and associated timeline (if any) of transfer "prior to his release."** The parties' discussion should employ the traditional tools of statutory construction, and provide their analysis as to the proper interpretation of this phrase.

## C. CONCLUSION

In sum, the Court concludes (1) that it does *not* have jurisdiction to hear Plaintiffs' petition

for a writ of habeas corpus (2) but that it may hear Plaintiffs' *ultra vires* claim if the BOP has clearly defied the definite meaning of § 3623. The latter conclusion necessitates additional briefing from the parties. Accordingly, the Court **DISMISSES** Count I of Plaintiffs' Complaint and **DEFERS** ruling on Plaintiffs' motion for a temporary restraining order/preliminary injunction on the *ultra vires* claim (ECF No. 2). The Court further **ORDERS** the parties to file cross-briefing on the issues identified above no later than **December 2, 2022**.

    **SO ORDERED** this **17th day** of **November, 2022**.

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE