IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

_____

STATE OF OKLAHOMA, et al.,

     Plaintiffs,

v.

HERIBERTO TELLEZ, et al.,

     Defendants.

Civil Action No. 7:22-CV-108-O

**DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION**

CHAD E. MEACHAM
United States Attorney

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Director

JOSEPH J. DEMOTT (Va. Bar No. 93981)
MICHAEL J. GAFFNEY
BRIAN C. ROSEN-SHAUD
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-5981
Email: joseph.demott@usdoj.gov

BRIAN W. STOLTZ
Assistant United States Attorney

*Counsel for Defendants*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 3

I.      There Has Been No Violation Of § 3623 Because Hanson Has Not Been
        Released From Federal Prison. ............................................................................... 3

        A.      The Text And Structure of § 3623 Require Only That A Qualifying
                Prisoner Be Transferred "Prior To His Release" From Federal Prison. ................. 4

        B.      Congress Did Not Intend For § 3623 To Constrain BOP's Broad
                Discretion Over Whether To Waive The Federal Government's Strict
                Right To Exclusive Custody Of A Federal Prisoner. ............................................... 8

II.     In Any Event, Defendants Did Not Violate § 3623 Because BOP Found That
        Hanson's Transfer Was Not In The Public Interest. ........................................... 13

        A.      The Reasonableness Standard Articulated In *Jean* Does Not Apply Here. .......... 13

        B.      BOP's "Public Interest" Determination Was Not *Ultra Vires* ............................. 15

                1.      The "Public Interest" Under § 3623 Is Far Broader Than
                        Plaintiffs Assert ........................................................................................ 15

                2.      A Rational Decisionmaker Could Conclude That
                        Transferring Hanson To State Custody Is Not In The
                        Public Interest At This Time. .................................................................... 22

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Abramski v. United States*,
  573 U.S. 169 (2014) ............................................................................. 3

*Acosta v. Hensel Phelps Constr. Co.*,
  909 F.3d 723 (5th Cir. 2018) .............................................................. 3

*Atkinson v. Hanberry*,
  589 F.2d 917 (5th Cir. 1979) ............................................................ 11

*Barnhart v. Sigmon Coal Co.*,
  534 U.S. 438 (2002) ............................................................................. 7

*Bedwell v. Circuit Court of Lawrence Cnty.*,
  454 S.W.2d 304 (Ark. 1970) ............................................................. 12

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975) ........................................................................... 14

*BNSF Ry. Co. v. United States*,
  775 F.3d 743 (5th Cir. 2015) ..................................................... 3, 4, 16

*Changji Esquel Textile Co. v. Raimondo*
  40 F.4th 716 (D.C. Cir. 2022) ................................................ 2, 3, 15, 22

*Commonwealth v. McGrath*,
  205 N.E.2d 710 (Mass. 1965) ........................................................... 11

*Corley v. United States,*
  556 U.S. 303 (2009) ............................................................................. 6

*Cox v. U.S. ex rel. Arron*,
  551 F.2d 1096 (7th Cir. 1977) .......................................................... 12

*Danos v. Jones*,
  652 F.3d 577 (5th Cir. 2011) ..................................................... *passim*

*Dep't of Commerce v. New York*
  139 S. Ct. 2551 (2019) ....................................................................... 22

*Doe v. Sundquist*,
  106 F.3d 702 (6th Cir. 1997) ............................................................ 24

*Easom v. U.S. Well Servs., Inc.*,
  37 F.4th 238 (5th Cir. 2022) ............................................................ 18

*FCC v. Beach Commc'ns, Inc.*,
  508 U.S. 307 (1993) ......................................................................... 23

*FCC v. WNCN Listeners Guild*,
  450 U.S. 582 (1981) ......................................................................... 20

*Fed. Express Corp. v. U.S. Dep't of Commerce*,
  39 F.4th 756 (D.C. Cir. 2022) ....................................................... *passim*

*Geyen v. Marsh*,
  775 F.2d 1303 (5th Cir. 1985) ....................................................... 1, 13

*Henson v. Santander Consumer USA Inc.*,
  137 S. Ct. 1718 (2017) ................................................................. 7, 9

*Hernandez v. Mesa*,
  140 S. Ct. 735 (2020) ....................................................................... 14

*Hibbs v. Winn*,
  542 U.S. 88 (2004) ........................................................................... 6

*Huawei Techs. USA, Inc. v. FCC*,
  2 F.4th 421 (5th Cir. 2021) ........................................................... 2, 19

*In re Andrews*,
  236 F. 300 (D. Vt. 1916) ............................................................... 10

*In re DeBerry*,
  945 F.3d 943 (5th Cir. 2019) ........................................................... 4

*In re Sindona*,
  584 F. Supp. 1437 (E.D.N.Y. 1984) ............................................... 11

*Jean v. Gonzales*,
  452 F.3d 392 (5th Cir. 2006) ....................................................... 2, 14

*Johnson v. Gill*,
  883 F.3d 756 (9th Cir. 2018) ......................................................... 10

*Konigsberg v. Ciccone*,
  417 F.2d 161 (8th Cir. 1969) ....................................................... 11, 19

*Lalla v. State*,
  463 S.W.2d 797 (Mo. 1971) ......................................................... 11, 19

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*
  140 S. Ct. 2367 (2020).................................................................. 1, 6, 7

*Magwood v. Patterson*,
  561 U.S. 320 (2010) ......................................................................... 9

*Mid-Texas Commc'ns Sys., Inc. v. AT&T,*
    615 F.2d 1372 (5th Cir. 1980) ........................................................................ 20

*Mike Hooks Dredging Co. v. Marquette Transp. Gulf-Inland, LLC,*
    716 F.3d 886 (5th Cir. 2013) .......................................................................... 8

*Oklahoma v. Castro-Huerta,*
    142 S. Ct. 2486 (2022) .................................................................................... 7

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984) .................................................................................... 2, 13

*Perrin v. United States,*
    444 U.S. 37 (1979) ........................................................................................ 17

*Pimentel v. Mukasey,*
    530 F.3d 321 (5th Cir. 2008) ........................................................................ 14

*Piper v. United States,*
    306 F. Supp. 1259 (D. Conn. 1969) .............................................................. 12

*Poland v. Reno,*
    29 F. Supp. 2d 8 (D.D.C. 1998) ............................................................... 12, 19

*Ponzi v. Fessenden,*
    258 U.S. 254 (1922) ................................................................................... 9, 10

*Richerson v. State,*
    428 P.2d 61 (Idaho 1967) .............................................................................. 11

*Rotkiske v. Klemm,*
    140 S. Ct. 355 (2019) .................................................................................. 6, 7

*Rubin v. Islamic Republic of Iran,*
    138 S. Ct. 816 (2018) ...................................................................................... 6

*Smith v. Hooey,*
    393 U.S. 374 (1969) ...................................................................................... 12

*State v. Heisler,*
    390 P.2d 846 (Ariz. 1964) (en banc) ..................................................... 1, 11, 19

*Tapia v. United States,*
    564 U.S. 319 (2011) ........................................................................................ 6

*Thomas v. Levi,*
    422 F. Supp. 1027 (E.D. Pa. 1976) ............................................................... 19

*Tremarco v. United States,*
    412 F. Supp. 550 (D.N.J. 1976) .................................................................... 12

*Trigg v. Moseley*,
    433 F.2d 364 (10th Cir. 1970) ........................................... 11

*Trigg v. Tennessee*,
    507 F.2d 949 (6th Cir. 1974) ........................................... 11

*U. S. ex rel. Williams v. Fitzpatrick*,
    299 F. Supp. 260 (S.D.N.Y. 1969) ........................................... 12

*United States v. Hooker*,
    607 F.2d 286 (9th Cir. 1979) ........................................... 11, 12

*United States v. Johnson*,
    529 U.S. 53 (2000) ........................................... 4

*United States v. Underwood*,
    61 F.3d 306 (5th Cir. 1995) ........................................... 15

*United States v. Warren*,
    610 F.2d 680 (9th Cir. 1980) ........................................... 9

*Velaquez v. Sessions*,
    713 F. App'x 282 (5th Cir. 2017) ........................................... 15

*Weekes v. Fleming*,
    301 F.3d 1175 (10th Cir. 2002) ........................................... 10

*Wilkins v. State*,
    245 A.2d 80 (Md. Ct. Spec. App. 1968) ........................................... 11

*Woodall v. Fed. Bureau of Prisons*,
    432 F.3d 235 (3d Cir. 2005) ........................................... 21

*Zerbst v. McPike*,
    97 F.2d 253 (5th Cir. 1938) ........................................... 8, 10, 23

**Statutes**

18 U.S.C. § 2 ........................................... 7

18 U.S.C. § 3006A ........................................... 5

18 U.S.C. § 3553 ........................................... 21, 24

18 U.S.C. § 3593 ........................................... 4, 5

18 U.S.C. § 3621 ........................................... 12, 21

18 U.S.C. § 3622 ........................................... 17, 18

18 U.S.C. § 3623 ........................................... *passim*

18 U.S.C. § 3625 ........................................... 2, 3, 14, 22

18 U.S.C. § 3662 ........................................... 4, 5

18 U.S.C. § 4085 (1948) ............................................................................... 10, 19

18 U.S.C. § 4102 ................................................................................................... 5

18 U.S.C. § 4104 .............................................................................................. 4, 5

18 U.S.C. Appendix 2 § 2 ................................................................................. 12

18 U.S.C. Appendix 3 § 2 .............................................................................. 7, 12

18 U.S.C. Appendix 3 § 6 ................................................................................. 4, 5

21 U.S.C. § 823 ............................................................................................. 16, 18

21 U.S.C. § 958 .................................................................................................. 18

49 U.S.C. § 40101 .............................................................................................. 18

Pub. L. No. 76-503, 54 Stat. 175 (Apr. 30, 1940) .......................................... 10

Pub. L. No. 80-772, 62 Stat. 850 (June 25, 1948) ........................................... 10

Pub. L. No. 98-473, 98 Stat. 2008 (Oct. 12, 1984) ......................................... 10

## Other Documents

Attorney General Memorandum, *Moratorium on Federal Executions Pending Review of Policies and Procedures* (July 1, 2021), https://perma.cc/9F22-A7KB ............................. 24

BOP Program Statement No. 5140.35 (Sept. 12, 2001), https://perma.cc/J6ZG-89H8 .................................................................................... 4

Okla. Dep't of Corrections, *Execution of Inmates Sentenced to Death*, OP-040301, Attachment D, https://perma.cc/78WN-SZL4 ............................................................ 24

*Prior to*, *Merriam-Webster Dictionary*, https://perma.cc/Y75J-68HX ..................................... 4

*Public Interest*, Black's Law Dictionary (11th ed. 2019) ............................................................ 17

*Public Interest*, *Oxford English Dictionary* (Sept. 2007).......................................................... 17

*Release*, *Merriam-Webster Dictionary*, https://perma.cc/F89B-7Q9J.................................... 4

S. Rep. No. 98-223 (1983) .............................................................................. 10, 12, 19 20

## INTRODUCTION

Plaintiffs claim that the Bureau of Prisons' ("BOP's") denial of their request to transfer federal prisoner John Hanson to the State of Oklahoma's custody was an "*ultra vires* violation of 18 U.S.C. § 3623."  Compl. at 9, ECF No. 1.  To succeed on this claim, Plaintiffs must show that BOP "plainly act[ed] in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory."  Op. & Order on Pls.' Mot. for Writ of Habeas Corpus or, in the Alternative, Mot. for TRO/PI at 9, ECF No. 23 ("Op.") (quoting *Fed. Express Corp. v. U.S. Dep't of Commerce*, 39 F.4th 756, 763 (D.C. Cir. 2022)).  Plaintiffs cannot make this showing for at least three independent reasons.

First, § 3623 contains no requirement—much less a "clear and mandatory" command— that BOP transfer a qualifying federal prisoner to State custody on the requesting State's preferred timeline.  Instead, the statute provides that BOP "shall" transfer a qualifying prisoner "prior to his release from a Federal prison facility."  18 U.S.C. § 3623.  As there is no prospect of Hanson being released from federal custody in the foreseeable future, BOP's decision not to transfer Hanson is consistent with § 3623.  Moreover, numerous courts have interpreted this statutory language as codifying the Executive Branch's long-recognized discretionary authority to transfer a federal prisoner to State custody as a matter of comity—not as constraining that authority, as Plaintiffs suggest.  *See, e.g.*, *State v. Heisler*, 390 P.2d 846, 848 (Ariz. 1964) (en banc).  This Court should reject Plaintiffs' invitation to "impos[e] limits on an agency's discretion" that are "not found in the statute," *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2381 (2020).

Second, assuming *arguendo* that *ultra vires* review is available here, *but see Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985), the correct inquiry is whether BOP acted "'without

any authority whatever,' or without any 'colorable basis for the exercise of authority.'" *Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984)).  This Court has suggested that it must determine whether BOP's public-interest determination was "rational and connected to the statutory scheme," citing *Jean v. Gonzales*, 452 F.3d 392, 397 (5th Cir. 2006).  That standard might apply where a plaintiff alleges that a policy or regulation constitutes a "'facial' violation[] of [a] statute[]," *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 726 (D.C. Cir. 2022) (citation omitted)—as was alleged in *Jean*.  But the standard does not apply where, as here, a plaintiff challenges an agency's application of a statutory standard to the facts of a particular case; to conclude otherwise would introduce the very type of arbitrary-and-capricious review over § 3623 determinations that is expressly precluded by 18 U.S.C. § 3625.  *Ultra vires* review is not a mechanism for second-guessing a case-specific determination that Congress has empowered the Executive Branch to make.  Straightforward application of the *ultra vires* doctrine dooms Plaintiffs' claim because Congress has expressly authorized the BOP Director to determine whether a given transfer is "in the public interest," 18 U.S.C. § 3623(3)—and BOP did just that here.

Third, to the extent this Court reviews the reasonableness of BOP's finding that Hanson's transfer would not be in the public interest, that finding should be upheld.  The term "public interest" does not impose the "constraint on agency discretion" that Plaintiffs imagine, Pls.' Reply at 4, ECF No. 19, *see also id.* at 6.  To the contrary, the term is "both broad and vague"— an "open-textured term" that the Supreme Court has interpreted "expansively."  *See, e.g.*, *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 437-38 (5th Cir. 2021).  And § 3623 leaves the term particularly open-ended; unlike neighboring statutes, it does not enumerate any specific factors that the BOP Director must consider in evaluating the "public interest."  Although BOP

was not required to give a contemporaneous, reasoned explanation for its "public interest" determination in this case, *see* 18 U.S.C. § 3625, BOP's decision should survive scrutiny, under *Jean* or otherwise.  There are several reasons why a rational official might deny Oklahoma's request when assessing the public interest—and BOP's assessment of the public interest will not necessarily remain unchanged or forever preclude Hanson's transfer to State custody.  In all events, this Court should reject Plaintiffs' request to substitute their assessment of the public interest for the BOP Director's—particularly given the "extremely limited scope" of *ultra vires* review, *Changji*, 40 F.4th at 721–22.

In short, Plaintiffs' *ultra vires* claim cannot succeed, and Plaintiffs' motion for preliminary injunction should therefore be denied.[1]

## ARGUMENT

## I.   There Has Been No Violation Of § 3623 Because Hanson Has Not Been Released From Federal Prison.

The traditional "'tools of statutory construction' include 'text, structure, purpose, and legislative history.'"  *Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723, 730 n.5 (5th Cir. 2018) (quoting *BNSF Ry. Co. v. United States*, 775 F.3d 743, 751 (5th Cir. 2015)); *see also Abramski v. United States*, 573 U.S. 169, 179 (2014).  As detailed below, these tools confirm that, while § 3623 may in certain circumstances prevent BOP from *releasing* a federal prisoner who is wanted by a State, it does not require BOP to transfer Hanson to State custody while he has many years remaining on his federal prison sentence.

---

[1] Defendants also maintain that Plaintiffs have failed to establish any of the other prerequisites for issuance of a preliminary injunction.  *See* Defs.' Resp. to Pls.' Mot. for Writ of Habeas Corpus or, in the Alternative, TRO/PI at 19–20, ECF No. 11.

### A.    The Text And Structure of § 3623 Require Only That A Qualifying Prisoner Be Transferred "Prior To His Release" From Federal Prison.

Statutory interpretation "start[s] with the text."  *BNSF*, 775 F.3d at 751; *see also In re DeBerry*, 945 F.3d 943, 947 (5th Cir. 2019) ("In matters of statutory interpretation, text is always the alpha.").  The text of § 3623 not only sets forth prerequisites to be met before BOP transfers a federal prisoner to State custody but also specifies *when* such a transfer is to occur: a qualifying prisoner "shall . . . be transferred . . . *prior to his release* from a Federal prison facility."  18 U.S.C. § 3623 (emphasis added).

The phrase "prior to" presents no mystery; it means "in advance of" or "before."  *See, e.g.*, Prior To, *Merriam-Webster Dictionary*, https://perma.cc/Y75J-68HX.  Similarly, "[t]here can be little question about the meaning of the word 'release' in the context of imprisonment"; its "ordinary, commonsense meaning" here "is to be freed from confinement."  *United States v. Johnson*, 529 U.S. 53, 57 (2000); *accord* Release, *Merriam-Webster Dictionary*, https://perma.cc/F89B-7Q9J ("to set free from restraint, confinement, or servitude").  Thus— even if the three statutory conditions for transfer are satisfied—the text of § 3623 requires only that a qualifying federal prisoner be transferred to a State detention facility before he would otherwise be set free.  Consistent with the statute's temporal clause, longstanding BOP guidance provides that transfers under § 3623 should occur "within a reasonable period of time before the inmate's release from the Federal sentence, ordinarily within the last 90 days."  BOP Program Statement No. 5140.35, § 5(b) (Sept. 12, 2001), https://perma.cc/J6ZG-89H8.

Section 3623 is not unusual in providing that a particular action ("Act A") "shall" be taken "prior to" a specified event ("Event B").  *See, e.g.*, 18 U.S.C. §§ 3006A(a), 3593(f), 3662(d), 4104(a); 18 U.S.C. Appendix 3 § 6(a).  Although statutes with this structure use the term "shall," they do not require Act A to be taken immediately or promptly; Act A need only be

taken *before* Event B—and if Event B never occurs, Act A need not be taken at all.

For example, the Attorney General is empowered "to receive custody of offenders . . . on probation who are citizens or nationals of the United States transferred from foreign countries." 18 U.S.C. § 4102.  "*Prior to* consenting to the transfer to the United States of an offender who is on probation, the Attorney General *shall* determine that the appropriate United States district court is willing to undertake the supervision of the offender."  *Id.* § 4104(a) (emphasis added). The latter provision does not require that the Attorney General consult with the district court immediately or promptly upon receiving a foreign country's request to transfer an offender to the United States; it requires only that such consultation occur *before* the Attorney General consents to the transfer.  If the Attorney General never consents to a given transfer, no consultation is required.  As another example, the Classified Information Procedures Act permits the United States to file certain motions "concerning the use, relevance, or admissibility of classified information" in connection with a trial or pretrial proceeding, and provides that when such a motion "is filed prior to the trial or pretrial proceeding, the court *shall* rule *prior to* the commencement of the relevant proceeding."  18 U.S.C. Appendix 3 § 6(a) (emphasis added). This provision does not require an immediate or prompt ruling on the motion—and if the relevant trial or pretrial proceeding is canceled (*e.g.,* because of a plea agreement), the court need not rule on the motion at all.  Other examples are in accord.  *See, e.g.*, 18 U.S.C. § 3006A(a) (court "shall" supplement adequate-representation plan with provisions for appeal "[p]rior to" approving the plan); *id.* § 3593(f) (court "shall" issue non-discrimination jury instruction "prior to" jury's return of a finding concerning a sentence of death); *id.* § 3662(d) (Attorney General "shall" provide public notice "prior to" issuing regulations concerning conviction records).

So too here.  Assuming that the statute's use of the term "shall" amounts to a command,

any such command would still be qualified by the temporal phrase "prior to his release from a Federal prison facility," 18 U.S.C. § 3623.  To the extent that § 3623 constrains BOP's "plenary control" over the placement of federal prisoners, *see Tapia v. United States*, 564 U.S. 319, 331 (2011), the only limitation is on BOP's authority to *release* certain prisoners sought by a State.  Where, as here, there is no realistic prospect that the relevant prisoner will be "release[d] from [] Federal prison," the text of the statute does not require BOP to transfer the prisoner to State custody.

Plaintiffs' contrary position impermissibly writes the temporal clause out of the statute.  Reading the clause as merely descriptive—*i.e.*, as referencing the obvious fact it is impossible to "transfer" a prisoner to State custody *after* he has been set free—would render it inoperative; the statute would have exactly the same meaning with or without the clause.  This flouts "one of the most basic interpretive canons, that 'a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'"  *Corley v. United States,* 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)); *see also, e.g.*, *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 825 (2018) (applying this canon).  The only way to give the temporal clause content—and thus prevent it from being rendered superfluous—is to interpret it as meaning just what it says.  Section 3623 does not require BOP to transfer a prisoner immediately or promptly when a State requests the transfer.  Rather, it authorizes BOP to transfer the prisoner "prior to [his] *release* from" federal custody, an event that has not occurred here.

Plaintiffs further err in seeking to impose a transfer "deadline" that is found nowhere in the statutory text.  *See* Pls.' Reply at 5–6.  This violates the "fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'"  *Little Sisters of the*

*Poor*, 140 S. Ct. at 2381 (quoting *Rotkiske v. Klemm*, 140 S. Ct. 355, 360–61 (2019)).  The

statute does not require BOP to transfer a qualifying prisoner immediately, promptly, or even as

soon as the transfer would be in the public interest.  Instead—like other federal criminal statutes

employing a "shall . . . prior to" structure, *see supra* pp. 4–5—it gives BOP discretion to transfer

the prisoner at any time "prior to his release."  18 U.S.C. § 3623.  Reading an atextual "time

constraint[]" into § 3623(3), as Plaintiffs urge, Pls.' Reply at 5, would "alter" the statute by

"imposing limits on [BOP]'s discretion that are not supported by the text," *Little Sisters of the

Poor*, 140 S. Ct. at 2381.

 "Atextual judicial supplementation is particularly inappropriate when, as here, Congress

has shown that it knows how to adopt the omitted language or provision."  *Rotkiske*, 140 S. Ct. at

361.  Other federal criminal statutes provide that a particular action "shall" be taken

"immediately," *see, e.g.*, 18 U.S.C. §§ 923(g)(7), 1966, 2339B(e)(3), 3125(b), 3142(f),

3154(12)(B), 3572(d)(1), 5043(b)(2)(B)(i), or "shall" be taken "promptly," *see, e.g.*, *id.* §§ 2 art.

II(b)–(c), 42(a)(1), 843(e)(2), 925(c), 951(c), 1968(f)(7), 2523(b)(4)(F), 3145(a)–(c), 3149,

3264(b)(2), 4014(b), 4042(c)(2); 18 U.S.C. Appendix 3 § 2.  "Congress could have limited

[BOP]'s discretion in any number of ways"—including by requiring transfer of a qualifying

prisoner "immediately" or "promptly" upon receipt of a request from a State executive

authority—"but it chose not to do so."  *Cf. Little Sisters of the Poor*, 140 S. Ct. at 2380.

Congress instead instructed only that the transfer occur "prior to [the prisoner's] release from a

Federal prison facility."  18 U.S.C. § 3623.  This Court must "'presume . . .' that 'the legislature

says what it means and means what it says.'"  *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486,

2496–97 (2022) (quoting *Henson* v. *Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725

(2017)); *see also Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461–62 (2002).  Here, of course,

Plaintiffs not only seek to add an "immediately" limitation that is nowhere present in the statute; they also seek to eliminate the "prior to" clause, which makes abundantly clear that any transfer need not occur on a State's preferred timeline, but only sometime before the prisoner's release from federal custody.  This Court should reject Plaintiffs' cut-and-paste attempt to revise the statute's plain text.

Because the statutory text is clear, the interpretive inquiry is at an end.  *See, e.g.*, *Mike Hooks Dredging Co. v. Marquette Transp. Gulf-Inland, LLC*, 716 F.3d 886, 893 (5th Cir. 2013).  The text requires only that BOP transfer a qualifying prisoner "prior to his release from a Federal prison facility," 18 U.S.C. § 3623, and there is currently no prospect of Hanson being released from federal prison, *see* Ex. 3 to Compl., ECF No. 1-3.  Thus, the Court need look no further than the text of § 3623 to conclude that BOP's denial of Plaintiffs' request to transfer Hanson was lawful—and certainly did not violate any "specific prohibition in the statute that is clear and mandatory," Op. at 6 (quoting *Fed. Express Corp.*, 39 F.4th at 763).

**B.      Congress Did Not Intend For § 3623 To Constrain BOP's Broad Discretion Over Whether To Waive The Federal Government's Strict Right To Exclusive Custody Of A Federal Prisoner.**

The evidence of Congress's purpose in authorizing BOP to transfer a prisoner to State custody "prior to his release" from federal prison overwhelmingly supports Defendants' reading of the phrase.

It is well established that the Federal Government enjoys primary jurisdiction over an individual it "first arrested and imprisoned," and "[can]not without its consent be deprived of his custody until through with him."  *Zerbst v. McPike*, 97 F.2d 253, 254 (5th Cir. 1938); *see also* Defs.' Resp. to Pls.' Mot. for Writ of Habeas Corpus or, in the Alternative, TRO/PI at 15–16 (collecting cases).  The decision whether, and to what extent, the Federal Government will

"waive[] its strict right to exclusive custody of" a given prisoner over whom it has primary jurisdiction is "solely [within] the discretion of the sovereign[]." *Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922); *see also* 22 C.J.S. Criminal Procedure and Rights of Accused § 126. The Federal Government and a State government may negotiate sovereign-to-sovereign transfers of primary jurisdiction over a detainee, such that the transferring sovereign yields its right to impose its own sentence on an inmate before a receiving sovereign gets a chance to do so. *See, e.g.*, Memorandum of Agreement – Transfer of Primary Jurisdiction, *United States v. Roof*, No. 2:15-crm-472, Dkt. No. 950-1 (Apr. 2, 2017) (agreement to transfer primary jurisdiction of Dylann Storm Roof from the State of South Carolina to the Federal Government); *see also United States v. Warren*, 610 F.2d 680, 684–85 (9th Cir. 1980) ("discretionary election" to relinquish primary jurisdiction "is a matter of comity to be resolved by the executive branches of the two sovereigns" and "not a judicial[] function").

Plaintiffs' refusal to give "prior to" its plain meaning rests on the notion that, in enacting § 3623, Congress intended to override this doctrine of comity and replace it with a command that the Federal Government "shall" waive its primary jurisdiction over a federal prisoner and transfer him to State custody—on the State's preferred timeline, no less—"unless [the transfer is] contrary to the 'public interest.'" Pls.' Br. at 11, ECF No. 3; *see also* Pls.' Reply at 1, 4, 6. This argument impermissibly seeks to "replace the actual text with speculation as to Congress' intent." *Henson*, 137 S. Ct. at 1725 (quoting *Magwood v. Patterson*, 561 U.S. 320, 334 (2010)). In any event, as detailed below, the evidence overwhelmingly shows that Congress did not intend for § 3623 to constrain the Executive Branch but rather intended to codify its long-recognized discretionary authority to decide whether to transfer certain federal prisoners to state court.

For well over a century, federal courts have recognized that the Federal Government may

waive its sovereign right to exclusive custody over a federal prisoner and transfer the prisoner to a State "as a matter of comity."  *See, e.g.*, *In re Andrews*, 236 F. 300, 301 (D. Vt. 1916) (describing this principle as "well settled").  In many cases, such a waiver is partial; the Federal Government temporarily "loan[s]" its prisoner to the State, typically for court proceedings, "without a complete surrender of [its] prior jurisdiction over him."  *See, e.g.*, *Zerbst*, 97 F.2d at 254.  In other circumstances, the Federal Government fully surrenders its superior claim to impose its sentence, permanently transferring the prisoner to State custody and yielding primary jurisdiction to the State.  *See, e.g.*, *Johnson v. Gill*, 883 F.3d 756, 765 (9th Cir. 2018); *Weekes v. Fleming*, 301 F.3d 1175, 1181 (10th Cir. 2002).  In 1922, the Supreme Court affirmed these principles, holding that the Attorney General had "the power and discretion to practice [] comity in such matters," even as the Court observed that "there [was] no express authority authorizing the transfer of a federal prisoner to a state court."  *Ponzi*, 258 U.S. at 261–62.

In 1940, Congress enacted such an express authority—the predecessor statute to § 3623. The statute provided that the Attorney General "shall" cause a federal prisoner to be transferred to a State prison "prior to his release" (1) "upon the request of the Governor or the executive authority of such State"; (2) "upon the presentation of a certified copy of [an] indictment or judgment of conviction" for a state-law felony; (3) "if [the Attorney General] finds it in the public interest to do so."  Pub. L. No. 76-503, 54 Stat. 175 (Apr. 30, 1940) (originally codified at 18 U.S.C. §§ 733, 733a, 733b (1940)).  In 1948, the statute was transferred to 18 U.S.C. § 4085, *see* Pub. L. No. 80-772, 62 Stat. 850 (June 25, 1948), and in 1984 it was transferred (with minor stylistic changes) to § 3623.  *See* Pub. L. No. 98-473, 98 Stat. 2008 (Oct. 12, 1984); *see also* S. Rep. No. 98-223 at 140–41 (1983) (noting that the current § 3623 "is derived from [the former] § 4085(a), except that language relating to appropriations is omitted as unnecessary").

The Fifth Circuit, as well as numerous other federal courts, has interpreted § 3623's predecessor statute as "codify[ing]" the power recognized in *Ponzi*—that is, as congressional affirmation of the common law doctrine that the Attorney General may in his discretion waive, in whole or in part, the Federal Government's exclusive, primary jurisdiction over a prisoner wanted by a State. *Atkinson v. Hanberry*, 589 F.2d 917, 919 n.4 (5th Cir. 1979); *see also United States v. Hooker*, 607 F.2d 286, 289 (9th Cir. 1979); *Trigg v. Moseley*, 433 F.2d 364, 367 (10th Cir. 1970); *Konigsberg v. Ciccone*, 417 F.2d 161, 162 (8th Cir. 1969); *In re Sindona*, 584 F. Supp. 1437, 1443 (E.D.N.Y. 1984); *Commonwealth v. McGrath*, 205 N.E.2d 710, 712 & n.2 (Mass. 1965); *Heisler*, 390 P.2d at 848; *Wilkins v. State*, 245 A.2d 80, 83 (Md. Ct. Spec. App. 1968). This codification "in no way lessened the Attorney General's discretionary power" (now vested in the BOP Director) to grant or deny a State's transfer request. *Heisler*, 390 P.2d at 848; *see also Ciccone*, 417 F.2d at 162; *Wilkins*, 245 A.2d at 83; *Richerson v. State*, 428 P.2d 61, 62 (Idaho 1967); *Lalla v. State*, 463 S.W.2d 797, 799 (Mo. 1971). These cases entirely undermine Plaintiffs' assertion that § 3623 "must rightly be viewed as a limitation on the discretion of executive branch officials." Pls. Br. at 11. Plaintiffs cite no case that has so held, and Defendants are aware of none.

This history also contradicts Plaintiffs' contention that Defendants' textualist interpretation of "prior to" renders the statute "superfluous to the [assertedly] preexisting detainer process," Pls.' Reply at 6. For one thing, Congress did not enact the Interstate Agreement on Detainers until 1970—thirty years *after* it enacted the original precursor to § 3623, which contained the "prior to" language. *See Trigg v. Tennessee*, 507 F.2d 949, 952 n.4 (6th Cir. 1974). Further, § 3623 codifies BOP's authority to grant a State primary jurisdiction over a federal prisoner who has not yet completed his sentence, *see, e.g.*, *Poland v. Reno*, 29 F.

Supp. 2d 8, 10 & n.1 (D.D.C. 1998), whereas detainers permit only a temporary transfer of

custody for purposes of prosecution, *see* 18 U.S.C. Appendix 2, § 2 art. V(e), (h), or a handoff of

custody upon completion of the federal sentence, *see, e.g.*, *Tremarco v. United States*, 412 F.

Supp. 550, 554 (D.N.J. 1976).  Indeed, absent § 3623's codification of *Ponzi*, one might read 18

U.S.C. § 3621(a)—which provides that an individual sentenced to imprisonment by a federal

court "shall be committed to the custody of the Bureau of Prisons until the expiration of the term

imposed"—as forbidding BOP from fully waiving primary jurisdiction over a federal prisoner,

whatever temporary transfers BOP might be able to effect through the detainer process.  Thus,

Defendants' reading of § 3623 in no way "nullifies the . . . statute," Pls.' Reply at 6.

Finally, the legislative history to the 1984 Sentencing Reform Act confirms that Congress

did not intend § 3623 to require the Federal Government to transfer primary jurisdiction to a

requesting State "unless [it was] contrary to the public interest."  *Contra* Pls.' Br. at 11.  Instead,

the legislative history states: "the Committee clearly intends that the Federal Government *will*

*not lose jurisdiction* of any prisoner whose Federal sentence has not expired simply because it

permits a State to take the prisoner into custody under this section."[2]  S. Rep. No. 98-223 at 141

(emphasis added).

*            *            *

---

[2] This likely reflects the fact that in addition to transfers of primary jurisdiction occurring under
§ 3623's predecessor statute, *temporary* transfers of a federal prisoner to State custody were
sometimes effectuated pursuant to this provision as well.  *See, e.g.*, *Smith v. Hooey*, 393 U.S.
374, 381 & n.13 (1969); *Cox v. U.S. ex rel. Arron*, 551 F.2d 1096, 1099 (7th Cir. 1977); *U. S. ex
rel. Williams v. Fitzpatrick*, 299 F. Supp. 260, 261 (S.D.N.Y. 1969); *Piper v. United States*, 306
F. Supp. 1259, 1260 (D. Conn. 1969); *Bedwell v. Circuit Court of Lawrence Cnty.*, 454 S.W.2d
304, 306 (Ark. 1970).  Although § 3623 is not typically invoked as the authority for temporary
transfers today due to the emergence of other mechanisms, *see Hooker*, 607 F.2d at 288, the
statutory text continues to authorize such transfers.

In sum, the text, structure, history, and purpose of § 3623 do not support Plaintiffs' claim that BOP has a "mandatory duty" to waive its primary jurisdiction over Hanson while he has many years remaining on his federal sentence.  *Contra* Pls.' Reply at 4.  Plaintiffs therefore have no likelihood of success on the merits, and their motion for emergency relief should be denied.

## II.    In Any Event, Defendants Did Not Violate § 3623 Because BOP Found That Hanson's Transfer Was Not In The Public Interest.

Even if one ignores § 3623's temporal clause, Plaintiffs' *ultra vires* challenge fails. Plaintiffs have the burden of showing that BOP acted "'without any authority whatever,' or without any 'colorable basis for the exercise of authority.'"  *Danos*, 652 F.3d at 583 (citation omitted).  They cannot carry this burden because § 3623 expressly grants BOP authority to determine whether a given transfer is in the public interest.  Further, the statute's "public interest" standard confers exceedingly broad discretion on the BOP Director.  To the extent the Court reviews the substance of BOP's public-interest finding in this case, it should uphold the finding as a permissible exercise of that discretion.

### A.    The Reasonableness Standard Articulated In *Jean* Does Not Apply Here.

To begin with, Plaintiffs lack an actionable claim.  As the Fifth Circuit has observed, the continued viability of a court-created "*ultra vires*" doctrine that provides an implied cause of action and waiver of sovereign immunity is doubtful after the 1976 Amendments to the Administrative Procedure Act.  *See Geyen*, 775 F.2d at 1307 (noting the "principal purpose" of the 1976 Amendments "was to do away with the *ultra vires* doctrine"); *see also Pennhurst*, 465 U.S. at 116 (noting that "the *ultra vires* doctrine [is] a narrow and questionable exception" to sovereign immunity).  While the D.C. Circuit continues to recognize *ultra vires* review—albeit as "a Hail Mary pass," *Fed. Express Corp.*, 39 F.4th at 765 (citation omitted—the Fifth Circuit has only "assume[d] for the sake of analysis" that the *ultra vires* "exception to sovereign

immunity may still apply," *Danos*, 652 F.3d at 582.  But there are good reasons to think that it

does not, as recognized in *Geyen*.  Indeed, here, in light of Congress's explicit decision to shield

the BOP's § 3623 decisions from the APA's provisions, *see* 18 U.S.C. § 3625, it would be

strange to read that legislative restriction on the availability of a cause of action and immunity

waiver into a license to use the *ultra vires* doctrine.  *Cf. Hernandez v. Mesa*, 140 S. Ct. 735, 747

(2020) ("[I]t would be 'anomalous to impute a judicially implied cause of action beyond the

bounds Congress has delineated for a comparable express cause of action." (alterations omitted)

(quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 736 (1975))).

In any event, Plaintiffs' challenge to BOP's transfer determination is not governed by the

standard of review from *Jean v. Gonzales*, 452 F.3d at 397, and *Pimentel v. Mukasey*, 530 F.3d

321 (5th Cir. 2008).  In neither case did the Fifth Circuit evaluate the government's discretionary

determination of the public interest under a particular set of facts.  Instead, those *ultra vires*

theories—both rejected—involved facial challenges to *policies* that the Attorney General created

to adjudicate groups of immigration cases.  *See Jean*, 452 F.3d at 396–97 (affirming validity of

"heightened standard . . . not articulated by the statutory provision); *Pimentel*, 530 F.3d at 325-26

(affirming validity of regulation under the *Chevron* framework).  In that limited context, the Fifth

Circuit determined that the broad "standards articulated by the Attorney General" were "rational

and connected to the statutory scheme."  *Jean*, 452 F.3d at 397; *see also Pimentel*, 530 F.3d at

325.

Here, by contrast, Plaintiffs challenge BOP's *application* of a statutory standard with

respect to their request that BOP transfer Mr. Hanson to State custody.  In this context, and in

light of the statutory text that the BOP Director shall determine "if . . . transfer would be in the

public interest," Plaintiffs must "establish that the officer was acting 'without any authority

whatever,' or without any 'colorable basis for the exercise of authority'" in concluding that transfer is not in the public interest.  *See Danos*, 652 F.3d at 583 (citation omitted); Op. at 9 ("[T]he Court [must] decide whether BOP has 'plainly act[ed] in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory.'" (quoting *Fed. Express Corp.*, 39 F.4th at 763)); *see also Changji*, 40 F.4th at 726 (observing that "ultra vires review is limited to '"facial" violations' of statutes, which 'typically raise issues—unrelated to the facts of the particular cases,'" and that "[c]onsidering the adequacy of the agency's explanation, or the degree of support for its factual findings" would improperly convert *ultra vires* review into "APA-style review").  As the Director of BOP has the express statutory authority to make a discretionary decision about transfer, such a showing is impossible.  *See* 18 U.S.C. § 3623(3) (transfers are to occur only "if . . . the Director finds that the transfer would be in the public interest").  That should end the *ultra vires* inquiry.

**B.      BOP's "Public Interest" Determination Was Not *Ultra Vires*.**

**1.      The "Public Interest" Under § 3623 Is Far Broader Than Plaintiffs Assert.**

As this Court has acknowledged, it is Plaintiffs' burden to establish that BOP "plainly act[ed] in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory" when it concluded that transfer was not in the public interest.  *See* Op. at 9 (quoting *Fed. Express Corp.*, 39 F.4th at 763).  Plaintiffs must establish that the Director was statutorily *required* to conclude that the requested transfer was in the public interest.  *Velaquez v. Sessions*, 713 F. App'x 282, 285 (5th Cir. 2017) ("If an act of a federal agency 'did not exceed the authority given to it by Congress,' the act is not *ultra vires*." (quoting *United States v. Underwood*, 61 F.3d 306, 311 (5th Cir. 1995)).  The text, structure, purpose, and legislative

history of § 3623(3)'s "public interest" provision all demonstrate that Plaintiffs cannot satisfy this burden.

In interpreting § 3623(3), the Court must once again "start with the text." *BNSF*, 775 F.3d at 751. The text provides that the BOP Director shall approve a State's transfer request "if . . . the Director finds that the transfer would be in the public interest." 18 U.S.C. § 3623. Plaintiffs wrongly assert that this "public interest" provision "limit[s] [BOP's] discretion," Pls.' Br. at 11, when in fact it does just the opposite.

Plaintiffs' erroneous conclusion flows from two attempts to rewrite the statute.

First, as discussed in Part I.B, *supra*, Plaintiffs invert the statutory text: Congress has not required transfer "unless" it is "contrary to 'the public interest,'" as Plaintiffs assert. *Id.* Congress could have written the provision this way, as it has done in drafting other criminal statutes. *Compare* 21 U.S.C. § 823(a) ("The Attorney General shall register an applicant to manufacture controlled substances in schedule I or II [drugs with a higher potential for abuse] *if* he determines that such registration is *consistent* with the public interest . . . .), *with* 21 U.S.C. § 823(d) ("The Attorney General shall register an applicant to manufacture controlled substances in schedule III, IV, or V [drugs with a lower potential for abuse], *unless* he determines that the issuance of such registration is *inconsistent* with the public interest.") (emphasis added). But § 3623 instead provides that a transfer shall occur *if* the Director concludes that transfer *is* in the public interest.

Second, without any grounding in the statutory text, Plaintiffs argue that the "public interest" means just one thing: "timely enforcement of the death penalty." Pls.' Br. at 9. Plaintiffs' argument disregards the "fundamental canon of statutory construction" that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common

meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979).  Congress did not define the term

"public interest" in § 3623 or anywhere in Title 18—let alone define it in the narrow way that

Plaintiffs suggest, despite the fact that it was just as possible then as it is now for a prisoner to

face a federal life sentence and state death sentence.  And the ordinary meaning of the "public

interest" is far broader than Plaintiffs' revision: it means "[t]he general welfare of a populace

considered as warranting recognition and protection" or "[s]omething in which the public as a

whole has a stake; esp., an interest that justifies governmental regulation."  Public Interest,

*Black's Law Dictionary* (11th ed. 2019); *see also* Public Interest, *Oxford English Dictionary*

(Sept. 2007) ("the benefit or advantage of the community as a whole; the public good.").

Congress left the term "public interest" particularly open-ended in § 3623.  Compare

Congress's use of the term in the immediately preceding statutory section, which sets forth the

circumstances in which a prisoner may be temporarily released by BOP.  Pursuant to § 3622,

BOP may temporarily release a prisoner "if such release appears to be consistent with the

purpose for which the sentence was imposed" and any relevant policy statements by the United

States Sentencing Commission, "if such release otherwise appears to be consistent with the

public interest and if there is reasonable cause to believe that a prisoner will honor the trust to be

imposed in him, by authorizing him, under prescribed conditions, to . . . visit a designated place"

for no more than 30 days for various purposes.  18 U.S.C. § 3622.  The statute then lists five

purposes (visiting a dying relative, attending a relative's funeral, obtaining otherwise unavailable

medical treatment, contacting a prospective employer, and establishing family or community

ties) as well as a catch-all sixth: "engaging in any other significant activity *consistent with the

public interest*."  *Id.* § 3622(a)(1)-(6) (emphasis added).  Perhaps then, in the context of § 3622,

Congress's reference to "*other*" activities "consistent with the public interest" indicates that the

term "public interest" is to be interpreted in light of the preceding list of five activities.  *See id.*

(emphasis added); *see also Easom v. U.S. Well Servs., Inc.*, 37 F.4th 238, 243 (5th Cir. 2022)

(concluding that a broad term should be read in the context of any examples of that term

specifically enumerated in the statutory text).  In § 3623, however, Congress offered no limiting

guideposts, affording the BOP Director broad latitude to determine whether transfer "would be in

the public interest."

Similarly, Congress did not enumerate specific factors for the BOP Director to consider

in exercising his discretion to assess whether transfer "would be in the public interest."  That

omission is noteworthy given that Congress knows how to shape the contours of a public-interest

inquiry when it wants to.  *See* 21 U.S.C. § 823(d) ("In determining the public interest [in

assessing whether to grant manufacturer CSA registration], the following factors shall be

considered: (1) maintenance of effective controls against diversion . . . ; (2) compliance with

applicable State and local law; (3) promotion of technical advances in the art of manufacturing

these substances and the development of new substances; (4) prior conviction record of applicant

under Federal or State laws relating to the manufacture, distribution, or dispensing of such

substances; (5) past experience in the manufacture, distribution, and dispensing of controlled

substances . . . ; and (6) such other factors as may be relevant to and consistent with the public

health and safety."); *see also* 21 U.S.C. § 958 ("In determining the public interest,

the factors enumerated in paragraph (1) through (6) of section 823(a) of this title shall be

considered."); 49 U.S.C. § 40101 ("[T]he Secretary of Transportation shall consider the

following [sixteen factors], among others, as being in the public interest and consistent with

public convenience and necessity . . . .").  These examples demonstrate that, even when Congress

provides guidance as to how a public-interest determination should unfold, the inquiry is still a

flexible one.  Where, as here, Congress has not even attempted to cabin the considerations

relevant to the BOP Director's public-interest decision, BOP has even greater discretion.  *See,*

*e.g.*, *Huawei Techs.*, 2 F.4th at 437–38 (explaining that the term "public interest" is "both broad

and vague" and an "open-textured term" that has been interpreted "expansively" by the Supreme

Court).

Plaintiffs nonetheless maintain that Congress's "decision to use the specific phrase

'public interest'" represents an attempt "to limit [BOP's] discretion."  Pls.' Br. at 11.  As

discussed in Part I.B, *supra*, numerous cases interpreting § 3623's predecessor—18 U.S.C.

§ 4085—establish that the opposite is true: Rather than cabining BOP's discretion, the "public

interest" provision codifies the broad discretion that the Supreme Court recognized in *Ponzi*.  *See*

*Heisler*, 390 P.2d at 848 (whether to transfer was "wholly a matter for the United States, through

its Attorney General to determine" prior to enactment of § 4085, and enactment of statute "in no

way lessened the Attorney General's discretionary power"); *Ciccone*, 417 F.2d at 162 ("Under

[§] 4085 the Attorney General has the authority" to transfer federal inmate; "[t]he exercise of this

authority is discretionary, however, and the Attorney General need not transfer a prisoner.");

*Poland*, 29 F. Supp. 2d at 10 n.1 (referring to the Attorney General's authority under § 4085 as

the unreviewable "discretionary decision to transfer a prisoner"); *Thomas v. Levi*, 422 F. Supp.

1027, 1033 (E.D. Pa. 1976) (describing § 4085 as "a statute allowing the Attorney General at his

discretion to turn over federal prisoners to state authorities"); *see also Lalla*, 463 S.W.2d at 799

(citing § 4085 and explaining that "return of this defendant to Missouri . . . would be purely

discretionary with the United States Attorney General").

The legislative history is in accord.  The Senate Judiciary Committee report on the

Sentencing Reform Act, through which Congress transferred the statute to its current location in

the U.S. Code, explained that the "last requirement of public interest places the entire transfer procedure directly within the discretion of the Director of the Bureau of Prisons."  S. Rep. No. 98-223 at 141.  "This granting of discretion to the Director follows closely Section 3621(b) which permits the Bureau to designate the place of the prisoner's confinement, whether or not such place is maintained by the federal government."  *Id.*; *see also id.* at 139 (describing the "public interest" provision in § 3622 at the "catch-all clause at the end of the subsection"). Congress insulated BOP's discretionary "public interest" determinations from APA review to "assure that [BOP] is able to make [such] decisions . . . without constant second-guessing."  *Id.* at 146.

The provision at issue—that transfer occurs "if . . . the Director finds that transfer would be in the public interest"—is therefore far broader than Plaintiffs suggest.  In the context of § 3623, it is for the BOP Director or his designee to determine whether transfer would be in the public interest.  Contrary to Plaintiffs' suggestion, no single factor necessarily controls where, as here, Congress invites an agency to assess what is and is not in the "public interest."  *See Mid-Texas Commc'ns Sys., Inc. v. AT&T*, 615 F.2d 1372, 1379 (5th Cir. 1980) (rejecting assertion that a single factor controls "public interest" determination under Communications Act). Instead, as when Congress delegates to any administrative agency to act in the "public interest," to the extent that determination is open to judicial review at all, BOP may weigh a variety of factors.  *See FCC v. WNCN Listeners Guild*, 450 U.S. 582, 596 (1981) ("[H]ow the public interest is best served is entitled to substantial judicial deference"; "the weighing of policies under the 'public interest' standard is a task that Congress has delegated to the Commission in the first instance.").

The relevant factors, and how they are weighed, will depend on the context of the particular § 3623 transfer request.  In deciding whether to transfer a federal inmate to State custody, BOP may consider, for example, whether transfer would effectuate the intent of the sentencing court, including whether that court intended for multiple sentences to run concurrently or consecutively.  *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 247 (3d Cir. 2005) (describing importance of recommendation of sentencing judge and explaining the high rate at which BOP follows judicial sentencing recommendations).  Additionally, BOP may consider some or all of the factors set forth in § 3621(b), which governs BOP's assessment of where to place inmates.  *See* 18 U.S.C. § 3621(b) (listing, among other factors, "recommendations of the sentencing court," including "any statement by the court that imposed the sentence . . . concerning the purposes for which the sentence to imprisonment was determined to be warranted" or "recommending a type of penal or correctional facility as appropriate"; whether the "correctional facility . . . meets minimum standards of health and habitability established by the Bureau"; and "any pertinent policy statement issued by the Sentencing Commission.").  Finally, BOP may also consider some or all of the "[f]actors to be considered [by sentencing courts] in imposing a sentence," which include, but are not limited to, "the nature and circumstances of the offense and the history and characteristics of the defendant", "the need . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  *See* 18 U.S.C. § 3553(a).

Because Congress set forth the above factors to guide BOP in the initial placement of inmates and sentencing courts in the imposition of an initial sentence, rather than to restrict BOP's discretion in assessing whether relinquishing primary jurisdiction is in the public interest, many of these factors may not apply or may apply differently in the context of a particular transfer request. And unlike in the § 3621 and § 3553 contexts, Congress did not specifically require that any or all of these factors be considered in § 3623. Nevertheless, they shed light on the wide array of considerations that, in any given transfer request, might play a role in evaluating whether "transfer would be in the public interest"—an assessment that includes much more than a simple determination as to whether transfer would result in "timely enforcement of the death penalty," Pls.' Br. at 9.

### 2.    A Rational Decisionmaker Could Conclude That Transferring Hanson To State Custody Is Not In The Public Interest At This Time.

This Court has ordered the parties to "address whether the BOP Director's decision under § 3623 was 'rational and connected to the statutory scheme.'" Op. at 9. However, as the D.C. Circuit recently explained, "[c]onsidering the adequacy of the agency's explanation, or the degree of support for its factual findings, would contravene . . . basic principles" of *ultra vires* review. *Changji*, 40 F.4th at 726; *see also Danos*, 652 F.3d at 583–84; *Fed. Express Corp.*, 39 F.4th at 765. Indeed, 18 U.S.C. § 3625's specification that the APA and its judicial-review provisions do not apply to BOP's decision under § 3623 expressly precludes this Court from "evaluating the agency's contemporaneous explanation in light of [an] administrative record," *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019). If this Court nevertheless intends to assess the "rational[ity]" of the BOP Director's denial of Plaintiffs' request to transfer Hanson, *see* Op. at 9, Defendants respectfully submit that the Court should apply the "rational basis" standard applicable to decisions that need not be accompanied by "articulat[ed] . . .

reasons" or "explain[ed] . . . 'on the record.'" *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–15 (1993). Under this standard, BOP's decision must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for [it]," regardless of "whether the conceived reason . . . actually motivated the [decisionmaker]." *Id.* at 313, 315.

At the outset, the Court should reject Plaintiffs' inaccurate characterizations of BOP's decision. BOP has not "commute[d] a death penalty sentence to life imprisonment," Pls.' Reply at 2, or "denie[d] any transfer of Hanson in perpetuity," Pls.' Br. at 13. BOP retains discretion to transfer Hanson to State custody at any time "prior to his release" from federal prison, 18 U.S.C. § 3623, and BOP's denial of Plaintiffs' transfer request in no way prevents a future decisionmaker from reaching a different conclusion regarding the public interest. In other words, BOP has decided not to transfer Hanson *at this time*, without prejudice to reconsideration in the future.

There are several "plausible reasons" for BOP's determination that transferring Hanson to State custody is not in the public interest at this time. *Beach Commc'ns*, 508 U.S. at 313–14. For example, as previously explained, the primary-jurisdiction doctrine recognizes that the first sovereign to detain a prisoner has the superior claim over the prisoner, and under "the inviolable rules of comity," has the right to retain custody of that prisoner "until through with him." *Zerbst*, 97 F.2d at 254; *see also supra* Part I.B. While the federal government undoubtedly *could choose* to release Hanson to Oklahoma's custody for imposition of a different sentence under conditions controlled by Oklahoma, the federal government is equally free to exercise its sovereign right to insist that Hanson serve his complete federal sentence—or at least a larger portion of it—in a BOP facility. Oklahoma's desire to carry out a different sentence on a timeline of its own choosing may reflect the State's own sovereign desires, but it does not control those of the

United States.  The "inviolable rules of comity" and the sovereign prerogatives they protect do not fall away simply because Oklahoma wishes its secondary claims to supersede the United States' primary jurisdiction—and respecting the proper balance of federal-state sovereignty plainly serves the public interest.  *See, e.g.*, *Doe v. Sundquist*, 106 F.3d 702, 707 (6th Cir. 1997).

In addition, the sentencing factors set forth by Congress in 18 U.S.C. § 3553 necessarily serve to advance the public interest.  Here, after considering the nature and circumstances of Hanson's offenses, his history and characteristics, and the purposes of sentencing, the federal sentencing judge determined that a term of life imprisonment in a BOP facility was the appropriate sentence for Hanson and would serve the objectives of sentencing.  *See* Judgment, *United States v. Hanson*, No. 4:99-cr-125-hdc (June 28, 2000).  Accordingly, a rational decisionmaker could find that the interest in effectuating the federal sentence outweighs the State's interest in executing Hanson.

A rational decisionmaker also could have determined that Hanson should not be transferred while the current moratorium on implementation of the federal death penalty remains in effect.  *See* Attorney General Memorandum, Moratorium on Federal Executions Pending Review of Policies and Procedures 1 (July 1, 2021), https://perma.cc/9F22-A7KB ("AG Memorandum").  Notably, Oklahoma's execution protocols permit use of the drug pentobarbital, *see* Okla. Dep't of Corrections, Execution of Inmates Sentenced to Death, OP-040301, Attachment D, § C, https://perma.cc/78WN-SZL4; *see also id.* § D (granting the Director of the Oklahoma Department of Corrections "sole discretion" to choose which chemicals, among three sets of options, shall be used in a given execution), but the Attorney General has suspended the use of pentobarbital in federal executions pending a further review of allegations of a risk of pain and suffering associated with its use, *see* AG Memorandum at 1–2.  A rational decisionmaker

could have concluded that the public interest would not be served by approving the transfer before this review has been completed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be denied.

Respectfully submitted,

CHAD E. MEACHAM
United States Attorney

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Director

*/s/ Joseph J. DeMott*
JOSEPH J. DEMOTT (Va. Bar No. 93981)
MICHAEL J. GAFFNEY
BRIAN C. ROSEN-SHAUD
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-5981
Email: joseph.demott@usdoj.gov

BRIAN W. STOLTZ
Assistant United States Attorney

*Counsel for Defendants*

<u>Certificate of Service</u>

On December 2, 2022, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties who have appeared in the case electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Joseph J. DeMott*
Joseph J. DeMott
Trial Attorney, U.S. Department of Justice